**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**-------------------------------------------------**
**Jeffrey Cordtz,**

                                    **Case 1:21-cv-02003-MHC-LTW**

**Plaintiff**
            **Versus**
**Johnson Legal Offices, LLC;**
**FCI Lender Services, Inc.;**
**And Larry W. Johnson**

**Defendants**
**---------------------------------------------------**


### PLAINTIFF'S MEMO OF LAW IN OPPOSITION TO JLO AND JOHNSON'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Shimshon Wexler
GA Bar No. 436163
S Wexler LLC
2244 Henderson Mill Rd, Ste 108
Atlanta, GA 30345
(212) 760-2400
(917) 512-6132 (FAX)
swexleresq@gmail.com

**Standard of Review for a Motion to Dismiss**

"All a plaintiff must do to survive a motion to dismiss is state a plausible claim on which relief can be granted. Not a surefire claim, not one likely to succeed. A plausible claim, supported by enough factual allegations for a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged."" *Pinson v. JPMorgan Chase Bank, National Association*, 942 F.3d 1200, 1215 (11th Cir. 2019) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

**FACTS**

Plaintiff Jeffrey Cordtz is an individual consumer residing in Georgia. He incurred a debt to borrow money. The debt emanated from a personal home equity loan. He defaulted on that debt due to circumstances beyond his control. Desiring to still pay his debt, he entered into a binding settlement agreement to settle the defaulted home equity loan for $9,875. But he has been unable to consummate the settlement ever since. JLO and Johnson have contributed to this by refusing to accept that the settlement agreement is valid. JLO and Johnson have engaged in false, deceptive, unfair, unconscionable, misleading and deceitful conduct. JLO and Johnson have claimed baselessly that Plaintiff is not entitled to the settlement agreement because he missed the thirty-day window to pay the settlement.

This Court should see the situation for what it is. Plaintiff has been ready, willing and able to pay the settlement amount but JLO and Johnson did not want the settlement amount. Instead, Johnson and JLO want 25 times the settlement amount in the Fulton lawsuit (and more than 35 times the settlement amount in a letter a few months later) so they unlawfully refuse to accept the settlement. Since the inception of the loan with Indy Mac Bank the loan has changed ownership and servicing from one entity to another over and over. This is likely being done to prevent Plaintiff from being able to pay the settlement amount.

A Fulton County State Court lawsuit was brought on January 22, 2021 by Johnson and JLO as attorneys for "Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust" against Jeffrey Cordtz. That case had a civil action file number of 21EVE000424. The Fulton County suit sought to collect upon the April 2006 loan originally issued by Indy Mac Bank F.S.B. That suit sought to collect an outstanding balance of $246,162.04 plus attorney's fees.

In Paragraph 14 of that lawsuit the allegation states "…. the [Gwinnett County Superior] Court…. entered a default judgment against [Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust] on July 27, 2020, which acted as a revival of the terms" of the binding settlement agreement to settle the defaulted home equity loan for $9,875. The Complaint goes on to allege that because the agreement provides only 30 days to pay and because it didn't receive

payment within 30 days it was entitled to be relieved from the settlement agreement. JLO and Johnson seem to be arguing that the judgment revived the exact terms of that offer and not that there is a settlement for $9,875. Under that logic, JLO and Johnson would have the payment be sent to a debt collector which seems to be out of business.

In fact, Plaintiff did everything in his power to try to complete the settlement but has been rebuffed. It is obvious that JLO and Johnson cannot refuse to accept payment and accuse Plaintiff of not paying and thereby relieving themselves of the settlement agreement. Plaintiff continues to have the settlement funds but doesn't have valid instructions to tender the settlement. In Paragraph 26 of the Fulton County Complaint, JLO and Johnson give notice of their intent to seek attorney's fees as provided for in the contract. This notice is frequently referred to as a 13-1-11 notice and it allows an attorney to collect attorney's fee in the amount of approximately 10% of the debt if the debt is not paid within 10 days from the notice.

Since this lawsuit was filed "Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust" filed a motion in February 2021 signed by JLO and Johnson that the real party in interest is in fact "Aspen Holdings Trust". The motion states "Unbeknownst to [Johnson and JLO], on or about January 14, 2021, this loan was transferred by [Aspen Properties Group, LLC as trustee of the APG

Holdings Revocable Trust] to Aspen Holdings Trust." To support this assertion Johnson and JLO attach a January 19, 2021 letter from Aspen Holdings Trust purporting to indicate a Truth in Lending Act Ownership Transfer Notice from APG Holdings Revocable Trust to Aspen Holdings Trust with a transaction date of January 14, 2021. The letter states that the servicer is FCI Lender Services, Inc.

Then in April 2021 another motion was filed, this one in the Gwinnett County case, that stated that the real party in interest is "Wilmington Savings Fund Society F.S.B., not in its Individual Capacity but Solely as Owner Trustee of the Aspen Holdings Trust, a Delaware Statutory Trust". To support this assertion, Johnson and JLO attach an Assignment which states that the loan was transferred from "Aspen Properties Group, LLC as Trustee of APG Holdings Revocable Trust" to "Wilmington Savings Fund Society, FSB, Not In Its Individual Capacity but Solely as Owner Trust of the Aspen Holdings Trust, a Delaware Statutory Trust." Aspen Properties Group, LLC and APG Holdings Revocable Trust have the same Kansas City, Missouri address on the Assignment.

Prior to this transfer notice, FCI was also the servicer of this loan for a few years. Presumably Johnson and JLO was not hired by "Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust" to collect the debt as that entity would have at the very least notified him that they no longer owned the loan in January 2021. It is more plausible that FCI hired Johnson and JLO, and that is

why Johnson and JLO were not notified of the transfer as the servicer stayed the same even though the loan was allegedly transferred. While Johnson and JLO dispute any relationship with FCI as far as this loan is concerned, the allegations plausibly allege that JLO, Johnson was being directed by FCI to collect the debt.

Plaintiff was and is ready, willing and able to make the payment but Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust refused to consummate the settlement by not accepting payment and by not assisting in finalizing the settlement. Instead JLO and Johnson filed a Fulton County lawsuit in January 2021. On January 10, 2020, nearly a year before the Fulton lawsuit, a different counsel for Plaintiff- Richard Alembik- notified "Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust" that it was ready, willing and able to tender the settlement and the offer will remain open for acceptance indefinitely. FCI, Johnson and JLO knew about this offer. Further, on November 20, 2020 Richard Alembik notified FCI Lender Services that he had the funds in his trust account and was ready to make a tender. But whoever is directing the actions here is committing FDCPA violations by refusing to accept settlement for the loan once and for all.

On April 8, 2021, Johnson and JLO sent a letter directly to Cordtz telling him that he owes $327,917.83 in principal and interest even though they knew that he was represented by counsel. The letter stated that Aspen Holdings Trust is

"willing to accept that amount as the entire amount of principal and interest due and owing on the note at this time." In the letter JLO and Johnson stated as it had in the Fulton County lawsuit that it intended to seek attorney's fees. The letter stated "Georgia law under O.C.G.A. 13-1-11 requires that you be allowed ten (10) days from your receipt of this letter to pay the entire amount owed without having to pay attorney's fees." OCGA 13-1-11 only requires a single notice, not multiple notices, of intent to seek attorney's fees if the debt is not paid in 10 days. (OCGA 10-1-11(a)(3): "The holder of the note or other evidence of indebtedness or his or her attorney at law shall…. notify in writing the…. party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that [he or she] has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If [he or she] shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.") The principal and interest sought in this letter was $80,000 more than the January 2021 Fulton County lawsuit sought. The letter concluded "We look forward to hearing from you. Of course, if you have any questions or comments, or would like to discuss this matter further, please feel free to call me any time".

## The Purpose of the FDCPA

The Congressional findings and declaration of purpose of the FDCPA 1692 states:

(a) Abusive practices

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Inadequacy of laws

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Available non-abusive collection methods

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Interstate commerce

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce.

Even where abusive debt collection practices are purely intrastate in character, they

nevertheless directly affect interstate commerce.

(e) Purposes

It is the purpose of this subchapter to eliminate abusive debt collection

practices by debt collectors, to insure that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and to

promote consistent State action to protect consumers against debt collection

abuses.

**JLO and Johnson are Debt Collectors as defined by the FDCPA**.

In their final Section on pages 8-9, Johnson and JLO argue that they are not

debt collectors. Not so. *Obduskey* found only that while an entity is engaged in the

act of non-judicial foreclosure, *during that engagement*, the entity is not subject to

the FDCPA except for 1692f(6). *Cooke v. Carrington Mortg. Services*, 2019 WL

3241128, at *2 (D. Md. July 18, 2019) ("The Supreme Court's holding in

Obduskey extends only to security-interest enforcers engaged in nonjudicial

foreclosure proceedings in a manner required by state law."). Obduskey did not

address the situation, which JLO and Johnson claim is present here, where an

entity is collecting money from a consumer (not enforcing a security interest) when

the entity happens to be primarily engaged in nonjudicial foreclosure. JLO and Johnson have not cited any cases in support of their reading of *Obduskey*.

Pursuant to 15 U.S.C. § 1692a(6) the *primary* definition, as *Obduskey* calls it, of "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In addition, the third sentence of a(6) provides a limited-purpose definition, as Obduskey calls it, that "[f]or the purpose of section 1692f(6) of [the FDCPA], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id*. In turn, 1692f(6) prohibits "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under various circumstances.

The Fulton County lawsuit contained one count- Breach of Promissory Note. The lawsuit sought a money judgment. The lawsuit did not mention foreclosure. This is quintessential debt collection. The FDCPA applies to money debt collection. JLO and Johnson do not argue otherwise.

JLO and Johnson on Page 8 state that "the FDCPA does not apply to law firms whose principal purpose is non-judicial foreclosure proceedings". This is an inaccurate statement of the law.

An accurate statement of law is:

The FDCPA does not apply to law firms whose principal purpose is non-judicial foreclosure proceedings *"where the business is engaged in no more than the kind of security-interest enforcement at issue here—nonjudicial foreclosure proceedings." Obdusky at 1034*. And that is not what happened here. JLO and Johnson attempted to collect money based on a note.

JLO and Johnson further state that "the US Supreme Court clearly held in Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 303 L. Ed. 2d 390 (2019) that those whose "principal purpose…. is the enforcement of security interests" are outside the scope of the primary "debt collector" definition." Obdusky did not hold this.

Rather, *Obduskey* holds that:

"*those who engage in only* nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [FDCPA]" other than for purposes of 1692f(6).

*Id*. at 1038

JLO and Johnson state that they are not FDCPA debt collectors because their "business is engaged in no more than …. nonjudicial foreclosure proceedings." But in this case JLO and Johnson sought to collect money based on a breach of contract theory. That means that they *are* engaged *in more* than nonjudicial foreclosure. Although Obduskey holds that "one who does no more than enforce security interests does not fall within the scope of the general definition", that statement does not apply to Johnson and JLO because they do more than enforce security interests. In this case they sought to collect a debt without seeking to enforce any security interest either judicially or nonjudicially.

The Complaint alleges the following:

20. JLO is a law firm whose primary and principal purpose is collecting defaulted debt for its clients such as FCI.

21. Johnson is a lawyer whose primary and principal business is collecting defaulted debt for others.

22. Johnson and JLO regularly and frequently collect defaulted debts for others.

23. On information and belief, Johnson and JLO derive at least 50% of their income by means of collecting defaulted debt for others.

In deciding this motion to dismiss the Court is required to "accept the allegations in the complaint as true and draw all reasonable inferences in the

plaintiff's favor." *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021) citing *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

It is noteworthy that in the motion to dismiss, neither Johnson nor JLO dispute that they

1) Have a primary and principal purpose of collecting defaulted debts for others; and

2) Regularly and frequently collect defaulted debts for others.

Either of these allegations alone are enough to plausibly allege that JLO and Johnson are debt collectors as defined by the FDCPA.

Furthermore, while JLO and Johnson make an unsupported factual argument that the Fulton County lawsuit is the only lawsuit that it has filed in the last year seeking a judgment on a consumer debt and comprises less than 2% of its legal practice, JLO and Johnson do not dispute that they derive at least 50% of their income by means of collecting defaulted debt for others. And that qualifies them as a debt collector under the FDCPA.

**Johnson and JLO's Initial Arguments**

On Page 2 of its motion to dismiss Johnson and JLO claim that they have not been hired by FCI. But whether FCI hired Johnson is not essential to the allegations in the Complaint as to Johnson and JLO. Besides, Plaintiff is entitled to discovery as to who hired Johnson and JLO and who is giving him instructions.

On Page 3 of the motion to dismiss JLO and Johnson engage in a discussion about their version of the happenings of the Gwinnett Lawsuit and state that there has been no final ruling regarding anything. This contradicts Paragraph 14 of the Fulton County lawsuit when Johnson alleged that despite " multiple attempts to challenge the default and [Cordtz's] allegations [ ] the [Gwinnett County Superior] Court still entered a default judgment against [Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust] on July 27, 2020, which acted as a revival of the terms of the 2012 alleged written offer".

Also, on Page 3 of the motion to dismiss JLO and Johnson engage in a discussion of their version of the happenings in the Fulton County lawsuit. It is noteworthy that despite these discussions about these case Johnson and JLO do not deny that they alleged in the Fulton County lawsuit that the Gwinnett County Court entered a default judgment stating that there was a binding settlement agreement.

**The Fulton County Lawsuit was a Communication in Connection with the
Collection of a Consumer Debt and Violates the FDCPA**

On pages 4-5, Johnson and JLO claim twice that "Plaintiff seems to be
arguing that by properly and legally filing the Fulton lawsuit, Defendant JLO and
Johnson violated the FDCPA." JLO and Johnson argue twice that this lawsuit is
not in violation of the prior pending action doctrine. However, Plaintiff is not
arguing what JLO and Johnson claim that Plaintiff is arguing. And Plaintiff does
not mention nor make any contentions about the prior pending action doctrine. On
Pages 7-8 Johnson and JLO argue that "Plaintiff's prior pending action argument is
without merit". But as noted Plaintiff has not made any prior pending action
argument and has not relied on the prior pending action doctrine.

Plaintiff's key allegations concerning Johnson and JLO's FDCPA violations
concerning the Fulton County lawsuit are as follows:

39. The lawsuit misrepresents a key fact, namely that the settlement
agreement is not binding even though a Court found that it was.

40. The lawsuit is based on a blatant lie that Plaintiff has not complied with
the settlement which a Court of competent jurisdiction found binding.

41. The lawsuit was a false, deceptive and misleading means to collect the
debt in violation of 1692e.

42.The lawsuit falsely represents the character, amount and legal status of the debt by failing to acknowledge the settlement agreement in violation of 1692e(2)(A).

The FDCPA prohibits debt collectors from bringing or threatening to bring what they know or should know to be false claims. 1692(e) Further, the Supreme Court has made clear that the FDCPA applies to lawyers regularly engaged in consumer debt collection activity on behalf of creditors, "even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

In *Heintz*, the consumer defaulted on a loan from a bank and the bank sued to recover the debt. *Id*. at 293, 115 S.Ct. 1489. The consumer sued Heintz under §§ 1692e(2) and 1692f, alleging that the amount included a sum owed for insurance that was not authorized by the loan agreement. *Id*. The Supreme Court found that such conduct fell within the range of reasonable interpretations of the FDCPA's express language. *Id*. at 298, 115 S.Ct. 1489.

The FDCPA allows claims alleging false statements and unfair acts during state court proceedings. Numerous circuits including the 11th Circuit already have addressed this issue, and often in nearly identical reasoning, have concluded that pleadings or filings in court fall within the purview FDCPA. See, e.g., *Kaymark v.*

*Bank of Am., N.A.*, 783 F.3d 168, 176–77 (3d Cir. 2015); *Goldman v. Cohen*, 445

F.3d 152, 155–56 (2nd Cir. 2006); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226,

231 (4th Cir. 2007); *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443,

449–50 (6th Cir. 2014), as amended (Dec. 11, 2014); *Powers v. Credit Mgmt.*

*Servs., Inc.*, 776 F.3d 567, 573–74 (8th Cir. 2015); *Donohue v. Quick Collect, Inc.*,

592 F.3d 1027, 1031–32 (9th Cir. 2010); *James v. Wadas*, 724 F.3d 1312, 1316

(10th Cir. 2013); *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297–1300

(11th Cir. 2015). Plaintiff has alleged that JLO and Johnson misrepresent key facts

in the Fulton County Lawsuit. Specifically, that Plaintiff has failed to comply with

the settlement and that therefore Johnson and JLO can sue for the full balance. In

fact, Plaintiff is ready, willing and able to comply with the settlement and has been

ever since the settlement was accepted.

Johnson and JLO are refusing to accept the settlement because they would

rather seek in excess of $325,000 plus attorney's fees of approximately $30,000

rather than accepting the amount of the binding settlement offer of $10,000. In

Paragraph 14 of the Fulton County Lawsuit, JLO and Johnson allege "…. the

[Gwinnett County Superior] Court…. entered a default judgment against [Aspen

Properties Group, LLC as trustee of the APG Holdings Revocable Trust] on July

27, 2020, which acted as a revival of the terms" of the binding settlement

agreement to settle the defaulted home equity loan for $9,875. Trying to weasel

their way out of the binding settlement is deceitful and violates the FDCPA's prohibition against false, misleading or deceptive acts. Plaintiff alleges actual damages resulting from this lawsuit in that he suffered from mental anguish, and spent time and money trying to have JLO and Johnson accept the binding settlement agreement. Plaintiff is entitled to compensation if he can prove his claims. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1212-13 (11th Cir. 2019). Plaintiff was confused, stressed, upset and worried that he couldn't sleep. Plaintiff also had a hard time concentrating on anything but the lawsuit. These are natural consequences of a lawsuit which seeks in excess of $200,000 when Plaintiff had a binding settlement agreement to settle for $10,000.

**JLO and Johnson violated the FDCPA by sending a debt collection letter directly to Plaintiff seeking a balance not owed**

Johnson and JLO mailed a letter attempting to collect a debt directly to Plaintiff in April 2021 after it knew that he was represented by an attorney. Johnson and JLO do not dispute this. Rather, Johnson and JLO argue that they were required under state law (OCGA 13-1-11) to communicate directly with Plaintiff even after knowing that he was represented by an attorney. Johnson and JLO also argue that this debt collection letter is an inherent part of debt collection lawsuits.

These arguments fail for multiple reasons:

1) The debt collection letter was not required under Georgia law.

2) The debt collection letter is not inherently part of debt collection.

3) The debt collection letter was extraneous as JLO and Johnson could have been entitled to attorney's fees had they asked for it in the Complaint not in a separate letter.

4) Johnson and JLO had on a previous occasion requested attorney's fees and under OCGA 13-1-11 one request is enough to satisfy the statute.

 "§ 1692c specifically provides that, where a debt collector knows that a consumer is represented by an attorney, he or she shall direct all communications to the consumer's attorney, absent permission to communicate directly with the consumer. See 15 U.S.C. § 1692c(a)(2). Section 1692c, as a whole, regulates debt collectors' communications with consumers. See id. § 1692c; see also id. § 1692b(2)." *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1295 (11th Cir. 2015). This provision allows the consumer to hire a lawyer and decide the time, place and manner he will discuss the debt. In discussing this provision a Court noted "A debtor who does not want to be pestered by demands for payment, settlement proposals, and so on, need only tell his lawyer not to relay them." *Tinsley v. Integrity Financial Partners, Inc.*, 634 F.3d 416, 419 (7th Cir. 2011).

§ 1692n "Relation to State laws" provides that the FDCPA "does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."

Johnson and JLO could have easily contacted Plaintiff's attorney and asked him to accept service of the letter for Plaintiff rather than violating the FDCPA by communicating directly with Plaintiff.

"[N]otice under [OCGA 13-1-11] may be given any time between the maturity of the obligation and ten days prior to judgment." *Lockwood v. Fed. Deposit Ins. Corp.*, 330 Ga.App. 513, 515–516(1), 767 S.E.2d 829 (2014). Thus, even without the letter Johnson and JLO could have sought attorney's fees. For instance, a common practice is to put the 13-1-11 notice in the lawsuit. Indeed, Johnson and JLO did just that in the Fulton County lawsuit. This way the communication does not violate the FDCPA. "It is well settled that notice under OCGA 13-1-11 "may be given any time between the maturity of the obligation and ten days prior to judgment." *Lockwood v. Fed. Deposit Ins. Corp.*, 330 Ga.App. 513, 515(1) n. 7, 767 S.E.2d 829 (2014) citing numerous cases.

**<u>Conclusion</u>**

JLO and Johnson's Motion to Dismiss should be denied.

RESPECTFULLY SUBMITTED this 16th day of June 2021.

By: s/ Shimshon Wexler
Georgia Bar No. 436163
ATTORNEY FOR PLAINTIFF
S Wexler, LLC
2244 Henderson Mill Rd, Suite 108
Atlanta, Georgia 30345
T: (212) 760-2400
F: (678) 609-1482
swexleresq@gmail.com