**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**------------------------------------------------**
**Jeffrey Cordtz,**

                                          **Case 1:21-cv-02003-MHC-LTW**

**Plaintiff**
                **Versus**
**Johnson Legal Offices, LLC;**
**FCI Lender Services, Inc.;**
**And Larry W. Johnson**

**Defendants**
**------------------------------------------------------**

## <u>PLAINTIFF'S MEMO OF LAW IN OPPOSITION<br>TO JLO AND JOHNSON'S MOTION TO DISMISS<br>PLAINTIFF'S AMENDED COMPLAINT</u>

Shimshon Wexler
GA Bar No. 436163
S Wexler LLC
2244 Henderson Mill Rd, Ste 108
Atlanta, GA 30345
(212) 760-2400
(917) 512-6132 (FAX)
swexleresq@gmail.com

**Standard of Review for a Motion to Dismiss**

"All a plaintiff must do to survive a motion to dismiss is state a plausible claim on which relief can be granted. Not a surefire claim, not one likely to succeed. A plausible claim, supported by enough factual allegations for a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged."" *Pinson v. JPMorgan Chase Bank, National Association*, 942 F.3d 1200, 1215 (11th Cir. 2019) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

**INTRODUCTION**

The FDCPA governs the method of collecting debts including the sending of debt collection letters and the filing of a debt collection lawsuit. Plaintiff has pointed to two different communications at two different points in time that he contends violates the FDCPA.

The first violative communication is the Fulton County lawsuit which was filed in mid-January 2021. That "the  FDCPA "imposes some constraints on a lawyer's advocacy on behalf of [his] client, it is hardly unique in our law"[.] [A]nd we do not think it absurd to require a debt-collecting attorney advancing the interests of his client to fulfill his "equally solemn duty to comply with the law." The FDCPA is nothing short of a straightforward statutory directive to hold debt

2

collectors accountable for abusive, deceptive, and unfair debt collection practices." *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1306 (11th Cir. 2015) quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600, 130 S.Ct. 1605, 1622, 176 L.Ed.2d 519 (2010).

*At the time of the filing of the Fulton County lawsuit*, Johnson and JLO made false statements concerning the ownership of the note and the ability of to enforce the note. Besides for the false claim that an entity owned the note when that entity did not own the note, *at the time of the filing of the lawsuit in mid-January 2021*, Johnson and JLO admitted that the Court entered a default judgment finding that an offer was made to settle Cordtz's debt for about $10,000. (See also JLO and Johnson's motion to dismiss Doc. 12, Page 4,5 of 17 citing *Stroud v. Elias*, 247 Ga. 191, 275 S.E.2d 46 (1981) "Georgia law is clear that a "judgment by default properly entered against parties sui juris operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration…." *Stroud* further states "The failure to answer or to appear at trial serves as an admission of the facts alleged in the complaint, but not of the conclusions of law contained therein."

*In the Fulton County lawsuit* Johnson and JLO acknowledge that an offer was made to settle the debt for $10,000. Cordtz was and is ready, willing and able

to pay that settlement amount. Indeed, one of the facts that were deemed admitted by virtue of the default judgment is that "Cordtz accepted [the] offer to enter into the Discounted Payoff Agreement before its expiration". (Para. 23 of the 2019 Gwinnett Complaint). **See attached Gwinnett Court Complaint- Exhibit A**. And another is "Cordtz stands ready, willing, and able to perform his obligations under the Discounted Payoff Agreement." (Para. 29 of the 2019 Gwinnett Complaint).

Prior to filing the Fulton lawsuit but after the Gwinnett lawsuit entered a default judgment, Johnson and JLO got involved in the case and made overtures to counsel for Cordtz in the Gwinnett County lawsuit- Rick Alembik- to attempt to settle after realizing that vacating the default judgment was not going to work. Mr. Alembik again offered to pay the settlement amount but Johnson and JLO refused. Instead, Johnson and JLO filed the Fulton lawsuit and advanced an unusual argument that was false. The argument goes as follows: because funds were not received within 30 days from the date of the judgment reviving the offer, and 30 days from the judgment was the deadline to receive the funds, the time had passed to accept the settlement amount and now a balance of over $246,162.04 plus attorney's fee are due.

In truth, the offer was accepted once the default judgment was entered *according to the Fulton lawsuit*. But Mr. Cordtz needs instructions on paying the settlement amount and Johnson and JLO refuse to acknowledge that there is a

settlement and refuse to provide instructions. The settlement letter provides outdated instructions from an owner and servicer who have transferred or sold the account. Perhaps JLO and Johnson's motive in not accepting the settlement and filing the Fulton lawsuit based on false, misleading and deceptive representations was because JLO and Johnson wanted more than twenty-four times (24X) the settlement amount plus attorney's fees of more than $24,000.

The FDCPA violation occurred *at the point in time* that the Fulton County lawsuit was filed. That the facts alleged in the Fulton Complaint were wrong (as JLO and Johnson claim) because of later events is of no moment. It is of no moment because the FDCPA violation occurred at the time the lawsuit was filed. JLO and Johnson motion to dismiss the amended complaint is replete with statements that there has been no final Gwinnett County judgment and Plaintiff's counsel appears to be deliberately specifically misleading the Court. See e.g. Doc. 12, Page 5 of 17 (Plaintiff's counsel herein keeps alleging that the Gwinnett Court has conclusively determined that any settlement agreement……. is valid and binding on the current holder. Such allegations are worse than misstatement of fact….). This characterization is wrong.

Plaintiff's counsel is simply relying on Johnson and JLO's own words in the Fulton County collection lawsuit. Whether that is an admission in judicio, and

if so, to who does it apply, is not a concern of this lawsuit. This lawsuit deals with what Johnson and JLO alleged in the Fulton lawsuit.

Filed by Johnson and JLO the Fulton County lawsuit states in paragraph 14 that "Plaintiff made multiple attempts to challenge the default and Defendant's allegations but the Court still entered a default judgment against Plaintiff on July 27, 2020, which acted as a revival of the terms of the 2012 alleged written offer…". Whether that allegation is an "admission" does not impact Plaintiff's allegations that Johnson and JLO alleged that the Gwinnett Court entered a default judgment reviving the settlement. Paragraph 5 of the Amended Complaint uses the word "admit" not as a term of art but in the vernacular: "JLO and Johnson admit the Court found that the $9,875 was a binding settlement offer." Although Plaintiff believes that the Court did find that settlement binding, that belief is not necessary to this FDCPA complaint against JLO and Johnson. What is necessary to this FDCPA Complaint are the allegations that JLO and Johnson made in the Fulton County lawsuit- specifically that the $10,000 settlement offer was revived.

After the filing the Fulton Court lawsuit JLO and Johnson dispute that the Gwinnett Court found that an offer was made to settle Cordtz's debt for about $10,000. That JLO and Johnson strenuously try and distance themselves from their own allegation that the offer was revived is indicative of their realization that *if* the settlement offer was revived, as they have alleged in the Fulton County lawsuit,

they have no non-baseless argument as to why they can continue to try to collect the settled debt. Instead, JLO and Johnson harp on events subsequent to the filing of the Fulton County lawsuit- 1) that the lawsuit was dismissed without prejudice because Johnson and JLO named the wrong Plaintiff; 2) that the Gwinnett Lawsuit was reopened after the Fulton County lawsuit was filed; 3) and that the default judgment that was entered was not final as evidenced by the continuation of the Gwinnett County lawsuit. All these events took place *after* the Fulton County lawsuit was filed and do not impact Plaintiff's FDCPA allegations that *at the time of the filing* of the Fulton County lawsuit, JLO and Johnson filed a baseless complaint acknowledging that the offer was revived but concocting a baseless argument about how JLO and Johnson's client could weasel out of the offer.

The second communication at issue in this case is a letter mailed directly to Plaintiff even though he was represented by Mr. Alembik. The letter purported to be under OCGA 13-1-11. And according to JLO and Johnson this was because "OCGA 13-1-11 requires notice to be provided directly to the borrower." But the notice is only required for the party to seek attorney's fees. And this was the third 13-1-11 notice. The first was contained within the Fulton County lawsuit and the second contained within the Gwinnett County lawsuit a few months later. The law is that the 13-1-11 notice need only be given once, and it may be contained within

the lawsuit seeking to collect the debt. Besides JLO and Johnson cite no authority that the 13-1-11 notice can't be given to the borrower's attorney.

## FACTS

Plaintiff Jeffrey Cordtz is an individual consumer residing in Georgia. He incurred a debt to borrow money emanating from a personal home equity loan. He defaulted on that debt due to circumstances beyond his control. Desiring to still pay his debt, he entered into a binding settlement agreement to settle the defaulted home equity loan for $9,875 on September 14, 2012. But he has been unable to consummate the settlement ever since. JLO and Johnson have contributed to this by refusing to accept the settlement agreement by engaging in false, deceptive and deceitful conduct. JLO and Johnson have claimed that Plaintiff is not entitled to the settlement agreement because he missed the thirty-day window to pay.

This Court should see the situation for what it is. Plaintiff has been ready, willing and able to pay the settlement amount but JLO and Johnson did and do not want the settlement amount. Instead Johnson and JLO want 25 times the settlement amount in the Fulton lawsuit (and more than 35 times the settlement amount in a letter a few months later) so they unlawfully refuse to accept the settlement.

A Fulton County State Court debt collection lawsuit was brought on January 22, 2021 by Johnson and JLO as attorneys for Plaintiff "Aspen Properties

Group, LLC as trustee of the APG Holdings Revocable Trust" against Jeffrey

Cordtz. The lawsuit was signed on January 21, 2021 by Johnson and JLO. In

paragraph 4 of that Complaint it states that "Plaintiff is the holder of a Promissory

Note… which is the subject of this action…." This is an objectively false

statement. According to Johnson and JLO the loan had been assigned prior to the

initiation of the lawsuit and therefore it was not the holder of the promissory note.

Similarly, paragraph 7 of this Complaint states "Plaintiff is the current holder of

the Note and the proper entity entitled to enforce the instrument." This too is an

objectively false statement. According to Johnson and JLO the note had been

transferred prior to the initiation of the lawsuit and therefore the named Plaintiff

was not entitled to enforce the instrument. **See attached Motion to Substitute**

**Plaintiff with Real Party in Interest- Exhibit B**.

In Paragraph 14 of that lawsuit the allegation states despite JLO and

Johnson's protest "…. the [Gwinnett County Superior] Court still entered a default

judgment against [Aspen Properties Group, LLC as trustee of the APG Holdings

Revocable Trust] on July 27, 2020, which acted as a revival of the terms of the

2012 alleged written offer" to settle the defaulted home equity loan for $9,875. The

Complaint goes on to allege that because the offer provides only 30 days to pay

and because it didn't receive payment within 30 days it was entitled to be relieved

from the settlement agreement.

But Plaintiff did everything in his power to try to complete the settlement but has been rebuffed. It is obvious that JLO and Johnson cannot refuse to accept payment and accuse Plaintiff of not paying and thereby relieving themselves of the settlement agreement. Plaintiff continues to have the settlement funds but doesn't have valid instructions to send the settlement payment.

In Paragraph 26 of the Fulton County Complaint, JLO and Johnson give notice of their intent to seek attorney's fees as provided for in the contract. This notice is frequently referred to as a 13-1-11 notice and it allows an attorney to collect attorney's fee in the amount of approximately 10% of the debt if the debt is not.

Court records indicate that Johnson and JLO are attorneys for FCI in a different case. **See attached Docket sheet- Exhibit C**. An attachment to the Complaint in that case shows that JLO along with another law firm is seeking to collect a "total amount of the debt" of $65,809.55. **See attached collection letter-Exhibit D**. This is *another* case besides this one where JLO is seeking to collect a debt. Although the debt collection in that case appears to be done by means of a debt collection letter, that too qualifies as debt collection under the FDCPA.

FCI is currently the servicer of this loan and has been since early 2018. Presumably Johnson and JLO was not hired by "Aspen Properties Group, LLC as

trustee of the APG Holdings Revocable Trust" to collect the debt as that entity would have directed him not to file a lawsuit containing objectively false statements. It is more plausible that servicer FCI hired Johnson and JLO, and because they serviced the loan throughout the transfer period, they had given Johnson and JLO permission to file suit at his direction. While Johnson and JLO dispute any relationship with FCI as far as this loan is concerned, the allegations plausibly allege that JLO and Johnson was being directed by FCI to collect the debt. The alternative is that the Plaintiff who no longer owned the note directed Johnson and JLO to file suit on a note that it no longer owned. That is less plausible than FCI directing Johnson and JLO.

Instead JLO and Johnson filed a Fulton County lawsuit in January 2021. On January 10, 2020, nearly a year before the Fulton lawsuit Rick Alembik notified "Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust" that it was ready, willing and able to pay the settlement and the offer will remain open for acceptance indefinitely. FCI, Johnson and JLO knew about this offer. Further, on November 20, 2020, after finally giving up trying to undo the default Rick Alembik notified FCI Lender Services that he had the funds in his trust account and was ready to make payment.

On April 8, 2021, Johnson and JLO sent a letter directly to Cordtz telling him that he owes $327,917.83 in principal and interest even though they knew that

he was represented by counsel. The letter stated that Aspen Holdings Trust is "willing to accept that amount as the entire amount of principal and interest due and owing on the note at this time." In the letter JLO and Johnson stated (as it had in the Fulton County lawsuit and is it had in its Gwinnett County lawsuit) that it intended to seek attorney's fees based on 13-1-11. The letter stated "Georgia law under O.C.G.A. 13-1-11 requires that you be allowed ten (10) days from your receipt of this letter to pay the entire amount owed without having to pay attorney's fees." OCGA 13-1-11 only requires one notice of intent to seek attorney's fees if the debt is not paid in 10 days not multiple notices. (OCGA 10-1-11(a)(3): "The holder of the note or other evidence of indebtedness or his or her attorney at law shall…. notify in writing the…. party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that [he or she] has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If [he or she] shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.") The principal and interest sought in this letter was $80,000 more than the January 2021 Fulton County lawsuit sought. The letter concluded "We look forward to hearing from you. Of course, if you have any

questions or comments, or would like to discuss this matter further, please feel free to call me any time".

## THE FDCPA

The FDCPA is a consumer protection statute to be construed broadly in favor of consumers. *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir. 2016) citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998) (holding that a consumer protection statute "is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent"); see also *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, [courts] construe its language broadly, so as to effect its purpose." (internal citation omitted)).

## The Fulton County Lawsuit was a Communication in Connection with the Collection of a Consumer Debt and Violates the FDCPA

On pages 8-9, Johnson and JLO claim twice that "Plaintiff seems to be arguing that by properly and legally filing the Fulton lawsuit, Defendant JLO and Johnson violated the FDCPA." JLO and Johnson argue twice that this lawsuit is not in violation of the prior pending action doctrine. Plaintiff is not claiming this, and Plaintiff does not mention nor make any contentions about the prior pending action doctrine. On Pages 11-12 Johnson and JLO argue that "Plaintiff's prior

pending action argument is without merit". But as noted Plaintiff has not made any prior pending action argument and has not relied on the prior pending action doctrine.

Plaintiff's key allegations concerning Johnson and JLO's FDCPA violations concerning the Fulton County lawsuit are as follows:

39. The lawsuit misrepresents a key fact, namely that the settlement agreement is not binding even though a Court found that it was.

40. The lawsuit is based on a blatant lie that Plaintiff has not complied with the settlement which a Court of competent jurisdiction found binding.

41. The lawsuit was a false, deceptive and misleading means to collect the debt in violation of 1692e.

42. The lawsuit falsely represents the character, amount and legal status of the debt by failing to acknowledge the settlement agreement in violation of 1692e(2)(A).

The FDCPA prohibits debt collectors from bringing or threatening to bring what they know or should know to be false claims. 1692(e) Further, the Supreme Court has made clear that the FDCPA applies to lawyers regularly engaged in consumer debt collection activity on behalf of creditors, "even when that activity

consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

In *Heintz*, the consumer defaulted on a loan from a bank and the bank sued to recover the debt. *Id*. at 293, 115 S.Ct. 1489. The consumer sued Heintz under §§ 1692e(2) and 1692f, alleging that the amount included a sum owed for insurance that was not authorized by the loan agreement. *Id*. The Supreme Court found that such conduct fell within the range of reasonable interpretations of the FDCPA's express language. *Id*. at 298, 115 S.Ct. 1489.

The FDCPA allows claims alleging false statements and unfair acts during state court proceedings. Numerous circuits including the 11th Circuit already have addressed this issue, and often in nearly identical reasoning, have concluded that pleadings or filings in court fall within the purview FDCPA. See, e.g., *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 176–77 (3d Cir. 2015); *Goldman v. Cohen*, 445 F.3d 152, 155–56 (2nd Cir. 2006); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007); *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 449–50 (6th Cir. 2014), as amended (Dec. 11, 2014); *Powers v. Credit Mgmt. Servs., Inc*., 776 F.3d 567, 573–74 (8th Cir. 2015); *Donohue v. Quick Collect, Inc*., 592 F.3d 1027, 1031–32 (9th Cir. 2010); *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013); *Miljkovic v. Shafritz & Dinkin, P.A*., 791 F.3d 1291, 1297–1300 (11th Cir. 2015). Plaintiff has alleged that JLO and Johnson misrepresent key facts

in the Fulton County Lawsuit. Specifically, that Plaintiff has failed to comply with the settlement and that therefore Johnson and JLO can sue for the full balance. In fact, Plaintiff is ready, willing and able to comply with the settlement and has been ever since the settlement was accepted. In addition, JLO and Johnson brought the Fulton County lawsuit in the name of a Plaintiff that did not own the loan despite making numerous allegations indicating that Plaintiff did own the loan. Lastly, the lawsuit seeks to collect amounts of money not allowed by the contract and not allowed by law as $246,000 has no basis.

Johnson and JLO are refusing to accept the settlement because they would rather seek in excess of $246,000 plus attorney's fees rather than accepting the amount of the binding settlement offer of $10,000. Trying to weasel their way out of the binding settlement is deceitful and violates the FDCPA's prohibition against false, misleading or deceptive acts. Plaintiff alleges actual damages resulting from this lawsuit in that he suffered from mental anguish, and spent time and money trying to have JLO and Johnson accept the binding settlement agreement. Plaintiff is entitled to compensation if he can prove his claims. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1212-13 (11th Cir. 2019). Plaintiff was confused, stressed, upset and worried that he couldn't sleep. Plaintiff also had a hard time concentrating on anything but the lawsuit. These are natural consequences of a

lawsuit which seeks in excess of $200,000 when Plaintiff had a binding settlement agreement to settle for $10,000.

## JLO and Johnson violated the FDCPA by sending an OCGA 13-1-11 letter directly to Plaintiff seeking a balance not owed

Johnson and JLO mailed a letter attempting to collect a debt directly to Plaintiff in April 2021 after it knew that he was represented by an attorney. Johnson and JLO do not dispute this. Rather, Johnson and JLO argue that they were required under state law (OCGA 13-1-11) to communicate directly with Plaintiff even after knowing that he was represented by an attorney. Johnson and JLO also argue that this debt collection letter is an inherent part of debt collection lawsuits.

These arguments fail for multiple reasons:

1) The debt collection letter was not required under Georgia law.

2) The debt collection letter is not inherently part of debt collection.

3) The debt collection letter was extraneous as JLO and Johnson could have been entitled to attorney's fees had they asked for it in the Complaint not in a separate letter.

4) Johnson and JLO had on a previous occasion requested attorney's fees and under OCGA 13-1-11 one request is enough to satisfy the statute.

"§ 1692c specifically provides that, where a debt collector knows that a consumer is represented by an attorney, he or she shall direct all communications to the consumer's attorney, absent permission to communicate directly with the consumer. See 15 U.S.C. § 1692c(a)(2). Section 1692c, as a whole, regulates debt collectors' communications with consumers. See id. § 1692c; see also id. § 1692b(2)." *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1295 (11th Cir. 2015). This allows the consumer to decide the time, place and manner he will discuss the debt. "A debtor who does not want to be pestered by demands for payment, settlement proposals, and so on, need only tell his lawyer not to relay them." *Tinsley v. Integrity Financial Partners, Inc.*, 634 F.3d 416, 419 (7th Cir. 2011).

§ 1692n "Relation to State laws" provides that the FDCPA "does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."

Johnson and JLO could have easily contacted Plaintiff's attorney and asked him to accept service of the letter for Plaintiff rather than violating the FDCPA by communicating directly with Plaintiff.

"[N]otice under [OCGA 13-1-11] may be given any time between the maturity of the obligation and ten days prior to judgment." Lockwood v. Fed. Deposit Ins. Corp., 330 Ga.App. 513, 515–516(1), 767 S.E.2d 829 (2014). Thus, even without the letter Johnson and JLO could have sought attorney's fees. For instance, a common practice is to put the 13-1-11 notice in the lawsuit. Indeed, Johnson and JLO did just that in the Fulton County lawsuit. This way the communication does not violate the FDCPA. Notice under OCGA 13-1-11 is sufficient under the statute if it is contained in a complaint. *Lockwood v. Fed. Deposit Ins. Corp.*, 330 Ga.App. 513, 515(1) n. 7, 767 S.E.2d 829 (2014) citing numerous cases.

**JLO and Johnson are Debt Collectors as defined by the FDCPA**.

Johnson and JLO argue that they are not debt collectors relying exclusively on *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 303 L. Ed. 2d 390 (2019). This reliance is misplaced.

The petition for certiorari was granted in *Obduskey* "[i]n light of different views among the Circuits about application of the FDCPA to nonjudicial foreclosure proceedings".

Obduskey stated that the FDCPA has multiple definitions for what the term "debt collector" means. The "primary definition" says the term "debt collector"

19

"means any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another." The opinion states "As a preliminary matter, we concede that if the FDCPA contained only the primary definition, a business engaged in nonjudicial foreclosure proceedings would qualify as a debt collector for all purposes."

However, Obduskey stated that because there is a "limited-purpose definition" which applies only to entities engaged in no more than security-interest enforcement, a business that engages in only security-interest enforcement is only subject to the limited purpose definition. Obduskey gave 3 reasons for this textual reading.

The first reason for only applying a certain section of the FDCPA to an entity engaged in solely judicial foreclosure is that the language of the statute states "*[f]or the purpose of section 1692f(6)*" a debt collector "*also* includes" a business, like McCarthy, "the principal purpose of which is the enforcement of security interests." § 1692a(6). (emphasis by the Court). The Court said that this language means that while engaged in the act of being a security-enforcer only 1692f(6) applies. This does not mean that the primary definition does not apply to an entity when not engaged in security enforcement even though it usually engages in security enforcement. In this case, Johnson and JLO fall under the primary

definition because they attempted to collect a debt not by means of security-enforcement.

Second, the Court noted that "we think Congress may well have chosen to treat security-interest enforcement differently from ordinary debt collection in order to avoid conflicts with state nonjudicial foreclosure schemes". This reasoning does not apply to this case which does not involve security-interest enforcement. That is why the primary definition and all the FDCPA's provisions apply to JLO and Johnson in this instance. If the primary definition does not cover Johnson and JLO in this case then it would be free to collect not subject to any provisions of the FDCPA. That makes no sense. The subsection to which the limited-purpose definition refers, § 1692f(6), prohibits a "debt collector" from "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property.." The text of the primary definition fits perfectly making Johnson and JLO an FDCPA "debt collector" in this case. The only exception to that definition does not apply because Johnson and JLO are not engaged in security enforcement.

Third, the Court noted that legislative history contained different versions of the FDCPA being proposed the Court noted that one bill would have included enforcement of security interests in the definition of debt collector and one would have excluded enforcement of security interests. The Court noted the current definition of debt collector has all the earmarks of compromise that "The

prohibitions contained in § 1692f(6) will cover security-interest enforcers, while the other "debt collector" provisions of the Act will not. But here Johnson and JLO are not subject to the FDCPA because they are security enforcers rather they are subject to the FDCPA because they fit neatly into the primary definition of having a "principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another". The definition does not exclude those who also enforce security interests. Rather, when an entity is enforcing a security interest it need not comply with anything but 1692f(6). Buttressing this is the Court's conclusion that repetitive nighttime calls which are not prohibited by 1692f(6) would be an FDCPA violation even for a security enforcer because that action has nothing to do with security enforcement. "This is not to suggest that pursuing nonjudicial foreclosure is a license to engage in abusive debt collection practices like repetitive nighttime phone calls; enforcing a security interest does not grant an actor blanket immunity from the Act".

While an entity is engaged in the act of non-judicial foreclosure, *during that engagement*, the entity is not subject to the FDCPA except for 1692f(6). *Cooke v. Carrington Mortg. Services*, 2019 WL 3241128, at *2 (D. Md. July 18, 2019) ("The Supreme Court's holding in Obduskey extends only to security-interest

enforcers engaged in nonjudicial foreclosure proceedings in a manner required by state law.").

The Fulton County lawsuit contained one count- Breach of Promissory Note. The lawsuit sought a money judgment. The lawsuit did not mention foreclosure. This is quintessential debt collection. The FDCPA applies to money debt collection. JLO and Johnson do not argue otherwise.

JLO and Johnson on Page 8 state that "the FDCPA does not apply to law firms whose principal purpose is non-judicial foreclosure proceedings". This is an inaccurate statement of the law.

An accurate statement of law is:

The FDCPA does not apply to law firms whose principal purpose is non-judicial foreclosure proceedings *"where the business is engaged in no more than the kind of security-interest enforcement at issue here—nonjudicial foreclosure proceedings." Obdeusky at 1034.* That is not what happened here. JLO and Johnson attempted to collect money when there was a settlement agreement in place.

JLO and Johnson further state that "the US Supreme Court clearly held in Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 303 L. Ed. 2d 390 (2019) that those whose "principal purpose…. is the enforcement of security interests" are

outside the scope of the primary "debt collector" definition." Obdusky did not hold this.

Rather, *Obduskey* holds that: "*those who engage in only* nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [FDCPA]" other than for purposes of 1692f(6). *Id*. at 1038

JLO and Johnson state that they are not FDCPA debt collectors because their "business is engaged in no more than …. nonjudicial foreclosure proceedings." But in this case JLO and Johnson sought to collect money based on a breach of contract theory that means that they *are* engaged *in more* than nonjudicial foreclosure. Although Obduskey holds that "one who does no more than enforce security interests does not fall within the scope of the general definition", that statement does not apply to Johnson and JLO because they do more than enforce security interests. In this case they sought to collect a debt without seeking to enforce any security interest either judicially or nonjudicially. The Amended Complaint alleges

29. JLO is a law firm whose primary and principal purpose is collecting defaulted debt for its clients such as FCI.

30. Johnson is a lawyer whose primary and principal business is collecting defaulted debt for others.

31. Johnson and JLO regularly and frequently collect defaulted debts for others.

32. On information and belief, Johnson and JLO derive at least 50% of their income by means of collecting defaulted debt for others.

In deciding this motion to dismiss the Court is required to "accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021) citing *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). JLO and Johnson make an unsupported factual argument that the Fulton County lawsuit is the only lawsuit that it has filed in the last year along with the newly filed Gwinnett County lawsuit seeking a judgment on a consumer debt. JLO and Johnson claim that they derive less than 2% of their income by means of collecting consumer debt- however this percentage does not include amounts when JLO and Johnson are collecting consumer debt through nonjudicial foreclosure. Similarly, when JLO and Johnson claim that their income on collecting defaulted debts is less than 2% that amount does not include from nonjudicial foreclosure. And *Obduskey* held that non judicial foreclosure is a form of consumer debt collection. And while JLO and Johnson claim that this is their "SOLE foray" into seeking to collect a consumer debt, Doc 12, Page 13 of 17, that does not appear to be true. **See attached collection letter from JLO and another law-firm- Exhibit D.**

25

Johnson and JLO claim that they have not been hired by FCI. But whether

FCI hired Johnson is not essential to the allegations in the Complaint as to Johnson

and JLO. Besides, Plaintiff is entitled to discovery as to who hired Johnson and

JLO and who is giving them instructions.

## Conclusion

JLO and Johnson's motion to dismiss should be denied.


Dated: June 22, 2021

> */s/ Shimshon Wexler*
> Shimshon E. Wexler
> Georgia Bar No. 436163

S Wexler, LLC
2244 Henderson Mill Road Suite 108
Atlanta, GA 30345
(p):    (212) 760-2400
(fax): (678) 609-1482
email: swexleresq@gmail.com

# **Gwinnett Court Complaint- Exhibit A**

E-FILED IN OFFICE - DP
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**19-A-10263-7**
**10/10/2019 11:44 AM**

~~signature~~
CLERK OF SUPERIOR COURT

## GWINNETT COUNTY SUPERIOR COURT
## STATE OF GEORGIA

JEFFREY D. CORDTZ,

                Plaintiff,

      vs.

ASPEN PROPERTIES GROUP, LLC
AS TRUSTEE OF THE APG
HOLDINGS REVOCABLE TRUST,

                Defendant.

Civil Action File No.

**19-A-10263-7**

### VERIFIED COMPLAINT FOR DECLARATORY
### JUDGMENT, SPECIFIC PERFORMANCE,
### AND EQUITABLE ACCOUNTING

Plaintiff Jeffrey D. Cordtz ("Cordtz") brings this Complaint against named

defendant Aspen Properties Group, LLC as Trustee of the APG Holdings

Revocable Trust ("Aspen"), and respectfully shows as follows:

### THE PARTIES

1.

Aspen is a Maryland limited liability company with its principal place of

business in Maryland; Aspen is registered with the Georgia Secretary of State

as a Foreign Limited Liability Company.

2.

Aspen may be served in care of its registered agent for service of process in

Georgia, to wit: Corporation Service Company, 40 Technology Parkway

South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

3.

Plaintiff Jeffrey D. Cordtz ("Cordtz") is a resident of Fulton County,
Georgia, and a citizen of the State of Georgia.

## JURISDICTION

4.

The Court has subject matter jurisdiction.

5.

This Court's exercise of personal jurisdiction over Aspen would not violate
the Due Process Clause of the Fourteenth Amendment to the United States
Constitution because Aspen purposefully established minimum contacts in
Georgia and has had "continuous and systematic general business contacts"
with Georgia such that the maintenance of this action would not offend
traditional notions of fair play and substantial justice.[1]

6.

Alternatively, this Court's exercise of personal jurisdiction would not
violate the Due Process Clause of the Fourteenth Amendment to the United
States Constitution because this cause of action "arise[s] out of or relate[s] to"
Aspen's contacts with Georgia;[2] Aspen purposefully availed itself of the

---

[1] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,
416, 104 S. Ct. 1868, 1873 (1984).

[2] See *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *Hanson
v. Denckla*, 357 U.S. 235, 253 (1958).

benefits of Georgia, and therefore can be said to have reasonably anticipated being haled into Georgia;[3] and, granting jurisdiction comports with "fair play and substantial justice."[4]

## VENUE

7.

Venue is proper in Gwinnett County because its is the county in which Aspen "maintains its registered office"[5]

## FACTS COMMON TO ALL COUNTS

8.

There is an actual controversy between the parties growing out of the following averments of fact.

9.

On April 3, 2006, Cordtz contracted with IndyMac Bank, F.S.B. ("IndyMac") to extend a line of credit (the"Loan" or the "Loan Agreement") to Cordtz.[6]

---

[3] *Burger King Corp.*, 471 U.S. at 472.

[4] Id.

[5] O.C.G.A. § 14-2-510, GA. CONST. ART. VI, § 2, ¶ VI.

[6] IndyMac Bank, F.S.B. was a federally regulated bank based in Pasadena, California until it was closed by the U.S. Treasury Department's Office of Thrift Supervision, and the FDIC was named its conservator on July 11, 2008. See https://tinyurl.com/y4samhos (last viewed Oct. 7, 2019).

10.

To memorialize the Loan Agreement Cordtz signed an instrument captioned "Home Equity Line of Credit" (the "HELOC").

11.

The Loan Agreement was collateralized by a security deed that was recorded in the Fulton County deed records and which encumbered Cordtz's Fulton County residence.

12.

One of the terms of the Loan Agreement was that Cordtz would pay IndyMac "the total principal of all loans made under [the terms of the HELOC], together with all finance charges, costs, expenses, and fees for which you are responsible under this Agreement" (the "Indebtedness").

13.

From June of 2006 through August of 2008, Cordtz made regular and conforming installment payments to IndyMac in accordance with the terms of the Loan Agreement.

14.

After IndyMac's closure by the Treasury Department in July of 2008, Cordtz continued to make regular and conforming installment payments in accordance with the terms of the Loan Agreement to loan servicer Faslo Solutions, LLC ("Faslo").

15.

In January of 2009, Cordtz began feeling financial pressure, and entered into an agreement with Faslo to modify the Loan Agreement.

16.

Faslo advised Cordtz that the balance of the Indebtedness would be reduced to $100,000 and, by mutual agreement, his monthly installment payments were reduced to $500.

17.

Cordtz continued to make the regular (albeit modified) installment payments under the (modified) Loan Agreement to Faslo until Faslo was dissolved.

18.

Cordtz was unaware of Faslo's dissolution and continued to send installment checks for several months — checks that were never cashed.

19.

Servicing of the Loan went into limbo after Cordtz discovered that the Loan Agreement had been transferred to DTA Solutions, LLC ("DTA") in the summer of 2012.

20.

In 2012, certain of Cordtz's installment payments under the (modified) Loan Agreement became past due.

21.

On September 14, 2012, DTA made an offer to Cordtz to participate in its "debt reduction program," by proposing that Cordtz enter into a Discounted Payoff Agreement.

22.

Under the terms of the Discounted Payoff Agreement, DTA proposed to Cordtz that Cordtz transmit a $9,875 payment within 30 days of the letter's date to resolve the entire balance of the Loan "at a discount."

23.

Cordtz accepted DTA's offer to enter into the Discounted Payoff Agreement before its expiration.

24.

Prior to transmitting the $9,875 payment Cordtz made efforts to confirm with DTA and with the owner of the loan, IndyMac's successor, One West Bank, F.S.B. ("OneWest"), that satisfaction of the Loan would also cancel the security deed encumbering his home.[7]

25.

In a letter dated December 10, 2013, Cordtz's wife, Sheila Cordtz, wrote to OneWest to attempt to make "arrangements to settle this Second Mortgage

---

[7] After IndyMac was closed by the Treasury Department, most of IndyMac's assets were transferred to IndyMac Federal Bank, F.S.B. On March 19, 2009, the FDIC sold IndyMac Federal Bank, FSB to OneWest Bank, F.S.B. See https://tinyurl.com/y4samhos (last viewed Oct. 7, 2019).

-6-

Note for $9,875.00 with the removal of IndyMac's Mortgage Lien on the 213 Southern Hill Drive property secured by this lien…."

26.

Sheila Cordtz's December 10, 2013 letter was followed by additional correspondence between the Cordtz family and IndyMac *Mortgage Services*, acting as a division of OneWest.

27.

In correspondence dated January 29, 2014, an employee of OneWest, one John D. Cockrell, advised the Cordtzes to again contact DTA "to discuss your request to settle of [sic] the debt and release of the lien."

28.

In October of 2014, the Cordtz family again contacted DTA to advise that they would "be happy to proceed with settlement if a letter can be created/issued by DTA indicating that upon settlement, the original IndyMac Note Lien will be removed from the property; we are concerned about DTA being able to provide a lien release on behalf of the now defunct IndyMac."

29.

DTA failed to respond to the Cordtzes.

30.

Cordtz attempted to contact DTA on several occasions up until 2016, with no response.

31.

In November of 2016, Cordtz contacted the FDIC to inquire into the status of the Discounted Payoff Agreement.

32.

The FDIC advised Cordtz to submit deed and lot information to its office in Dallas, Texas for the purpose of determining the status of the Loan Agreement.

33.

The Cordtzes later heard back from a new loan servicer: Value Recovery Group, who advised that it was taking over the Loan Agreement.

34.

In January 2017, Value Recovery Group advised Cordtz that the Loan Agreement was being sold to FCI Lender Services ("FCI").

35.

FCI began servicing the Loan effective as of February 20, 2018.

36.

Cordtz continued to seek FCI's cooperation with his efforts to perform under and to consummate the Discounted Payoff Agreement.

37.

On March 13, 2018, Cordtz was advised that the Loan Agreement had been again assigned to defendant Aspen Properties Group LLC, as Trustee for the APG Holdings Revocable Trust ("Aspen").

38.

Cordtz has since made efforts to secure Aspen's cooperation with his attempts to perform under and to consummate the Discounted Payoff Agreement.

39.

Cordtz has also made efforts to determine whether Aspen is a lawful assignee of the Loan Agreement and in privity with IndyMac.

40.

Cordtz, through his attorney, wrote a letter to Aspen on August 5, 2019, to pursue his inquiry into the bona fides of Aspen's claim and to determine whether Aspen intended to honor the Discounted Payoff Agreement.

41.

In the August 5, 2019 letter, Cordtz's attorney advised Aspen that the Loan Agreement failed to satisfy the definition of a "negotiable instrument" under Georgia's Uniform Commercial Code, which means that the Loan Agreement was "not negotiable."[8]

42.

In the August 5, 2019 letter, Cordtz's attorney advised Aspen that, because the Loan Agreement is not a negotiable instrument that it was controlled by

---

[8] See 11 Am. Jur. 2d Bills and Notes § 84 (2015); accord, *Synovus Bank v. Paczko,* 2015 WL 3455965 (Tenn. App., 2015) (note is not negotiable where the promise to pay "is not for a fixed amount of money but rather for 'the full amount of all advances'").

"general common law principles rather than the UCC," and that, as such, it
lost many of the properties and defenses provided by a negotiable instrument.

43.

In the August 5, 2019 letter, Cordtz's attorney further advised Aspen that:

> For a loan that is not a negotiable instrument, indorsements on a note
> alone will not effectuate a lawful assignment. The assignee must
> satisfy the "doctrine of privity," which mandates that "only parties
> to a contract may bring suit to enforce it." See *Wirth v. Cach, LLC*,
> 300 Ga. App. 488, 489 (2009) (citations omitted); see O.C.G.A. §
> 9-2-20(a) (claim for breach of contract may only be "brought in the
> name of the party in whom the legal interest in the contract is vested,
> and against the party who made it in person or by agent").

44.

In the August 5, 2019 letter, and citing *Green v. Cavalry Portfolio Servs.,
LLC*, 305 Ga. App. 843 (2010), Cordtz's attorney advised Aspen that, since
the Loan Agreement was not a negotiable instrument, Aspen could not have
acquired

> ...an interest or contractual right in or to the Loan Agreement
> without an 'unbroken chain of written assignments,' which would
> put Aspen in contractual privity with IndyMac or any successor of
> IndyMac.

45.

In the August 5, 2019 letter, Cordtz's attorney requested that Aspen
"supply admissible evidence of an unbroken 'chain of written assignments ...
to establish that [it is] the real party in interest to enforce the terms of the
Loan.'"

46.

In lieu of accepting proof of an "unbroken 'chain of written assignments …
to establish that [Aspen was] the real party in interest to enforce the terms of
the Loan,'" Cordtz's attorney proposed, alternatively, to consummate the
Discounted Payoff Agreement with a payment of $9,875 in exchange for a full
mutual release.

47.

Other than to acknowledge receipt of the August 5, 2019 letter, Aspen has,
to date, failed to responded to Cordtz's request … or to contradict the analysis
set forth in the August 5, 2019 letter.

48.

Aspen has failed to provide an accounting to Cordtz for his (many years of)
installment payments under the Loan Agreement.

49.

Cordtz stands ready, willing, and able to perform his obligation under the
Discounted Payoff Agreement.

50.

Cordtz respectfully applies to this Court for leave to tender $9,875 into the
registry of the Court.

## FIRST CLAIM
### (Declaratory Judgment)

### 51.

Cordtz incorporates the foregoing ¶¶ ∑ through ᴿᵁ as if fully set forth herein.

### 52.

Cordtz seeks a declaration of legal rights and relations as between the interested parties identified in this Complaint.

### 53.

Cordtz and Aspen have a justiciable and actual controversy concerning their relative obligations and rights under the Loan Agreement.

### 54.

A declaratory judgment will directly affect future conduct by the parties as described in the issues identified in the following ¶¶ 55, 56, and 57

### *Whether Aspen is in privity with IndyMac.*

### 55.

Aspen's failure to identify admissible evidence of an unbroken chain of written assignments raises the issue of its standing as a privy of IndyMac and as a contracting party with respect to the Loan Agreement.

*Whether Aspen must accept Cordtz's tender.*

56.

Assuming Aspen is a legitimate privy of IndyMac, Cordtz seeks direction regarding his right to consummate the Discounted Payoff Agreement by making a proper tender of the sum of $9,875 as a full accord, satisfaction, and cancellation of the Indebtedness and termination of the Loan Agreement.

*Whether Aspen must provide an accounting for the Loan.*

57.

Assuming Aspen is the legitimate privy of IndyMac, but that Cordtz's tender of $9,875 will not consummate the Discounted Payoff Agreement, Cordtz is unsure about and seeks direction regarding an accurate accounting for the balance due under the Loan Agreement, and all other material rights and obligations related thereto.

58.

Facts, circumstances, and issues are presented whereby Cordtz is in a position of uncertainty or insecurity regarding his rights and obligations under the Loan Agreement.

59.

Cordtz must take future action that is properly incident to the determination of his rights and obligations under the Loan Agreement.

60.

Without direction from this Court to guide his way, Cordtz's interests may reasonably be jeopardized.

61.

The entry of a declaratory judgment will serve as guide for future conduct by the parties, and terminate the uncertainty, insecurity, and controversy giving rise to this action.

## SECOND CLAIM
### (Specific Performance)

62.

Cordtz incorporates the foregoing ¶¶ 8 through 50 as if fully set forth herein.

63.

Since the subject matter of Cordtz's claims regarding his relationship with Aspen arise from the enforcement of the Discounted Payoff Agreement, an award of money damages would be an inadequate legal remedy.

64.

The terms of the Discounted Payoff Agreement are memorialized by a written document.

65.

The Discounted Payoff Agreement is certain.

66.

The Discounted Payoff Agreement is fair.

67.

The Discounted Payoff Agreement is for adequate consideration.

68.

The Discounted Payoff Agreement is capable of being performed.

69.

This Court is authorized to declare and decree that the Discounted Payoff Agreement be specifically performed.

70.

Cordtz is entitled to a decree that directs Aspen to accept the discounted payoff figure in consideration for the satisfaction of the Indebtedness.

71.

Cordtz is entitled to the remedy of specific performance of the Discounted Payoff Agreement.

72.

Cordtz is entitled to such other and further equitable and injunctive relief as may be required to implement the requested decree.

**THIRD CLAIM**
**(Equitable Accounting)**

73.

Cordtz incorporates the foregoing ¶¶ ⸱ through ⸱⸱ as if fully set forth

herein.

74.

This case presents issues regarding "matters of account" related to complicated and intricate accounting procedures.

75.

In the event the Court finds that Aspen is a legitimate privy of IndyMac, and that the Discounted Payoff Agreement need not be specifically performed, the Loan Agreement would present issues regarding "matters of account" related to complicated and intricate accounting procedures.

76.

Cordtz is entitled to an equitable accounting for all funds it has paid under the Loan Agreement, and an accounting for the balance due.

**DEMAND FOR JUDGMENT**

WHEREFORE, Cordtz prays for judgment against Aspen in the following particulars:

(a)   On the First Claim for Declaratory Judgment, that the Court determine, adjudge, decree, and declare whether Aspen is in privity with IndyMac, and thus a legitimate party to the Loan Agreement;

(b)   On the First Claim for Declaratory Judgment, and assuming that Aspen is a legitimate party to the Loan Agreement, that the Court determine, adjudge, decree, and declare whether Aspen must honor the Discounted Payoff Agreement and accept Cordtz's payment as a

-16-

full accord, satisfaction, and cancellation of the Indebtedness;

(c)     On the First Claim for Declaratory Judgment, and assuming that Aspen is a legitimate party to the Loan Agreement, and that it is not obligated to honor the Discounted Payoff Agreement, that the Court decree that Aspen is obligated to an accurate accounting for and determination of the balance due under the HELOC and Loan Agreement;

(d)     On the Second Claim for Specific Performance and Other Injunctive Relief, a decree directing Aspen to cooperate with Cordtz's efforts to consummate the Discounted Payoff Agreement and to accept the discounted payoff figure in consideration for the satisfaction of the Indebtedness and cancellation of the Loan;

(e)     On the Second Claim for Specific Performance and Other Injunctive Relief, an Order directing the Clerk of Court to accept into the registry of the Court the sum of $9,875 to perfect Cordtz's tender of the sums required under the Discounted Payoff Agreement;

(f)     On the Third Claim for Equitable Accounting, a decree directing Aspen to account for all funds and installments that Cordtz has paid under the Loan Agreement and the balance due thereunder;

(g)     For TRIAL BY JURY on any issue so triable; and,

(h)     For such other and further relief as the Court may deem equitable and just in the premises.

Respectfully submitted,

Jeffrey Cordtz
213 Southern Hill Dr.
Duluth, GA  30097
TEL: (678) 467-1096
jcordtz@yahoo.com

/s/  Jeffrey D. Cordtz
Jeffrey D. Cordtz,
Plaintiff_ pro se

"Signed or attested
before me on
Oct   10 , 20 19

-18-

STATE OF _____    **19-A-10263-7**    COUNTY OF _____

## VERIFICATION

Personally appeared before the undersigned, Jeffrey D. Cordtz, who, being duly sworn, states under oath as follows:

1. I am the Plaintiff_ identified in the foregoing Complaint. I am over the age of 21, *sui juris* and otherwise competent to testify to the facts set forth in the foregoing Complaint.

2. I have personal knowledge of the facts set forth in the foregoing Complaint unless otherwise suggested by the context.

3. Each fact or opinion set forth in the foregoing Complaint is true and accurate —unless it is qualified (expressly or impliedly) as being "on information and belief," in which case the fact or opinion is true to the best of my knowledge, information, and belief formed after reasonable inquiry.

Sworn to and subscribed before    **AFFIANT:**
me this ___10___ day of __Oct.__
_____, 2019.

_____        _____
NOTARY PUBLIC,                                   JEFFREY D. CORDTZ, PLAINTIFF
State of ___DC___
My commission expires:
__July 24__, 20~~T~~ 20

**<u>Motion to Substitute Plaintiff with Real Party in Interest- Exhibit B</u>**.

IN THE STATE COURT OF FULTON COUNTY

STATE OF GEORGIA

ASPEN PROPERTIES GROUP, L.L.C.,  )
As Trustee of the APG Holdings   )
Revocable Trust,                 )
                                 )
        Plaintiff,               )
                                 )   CIVIL ACTION FILE
vs.                              )
                                 )   NUMBER 21EV000424
JEFFREY D. CORDTZ,               )
                                 )
        Defendant.               )

## MOTION TO SUBSTITUTE PLAINTIFF WITH REAL PARTY IN INTEREST

COMES NOW ASPEN PROPERTIES GROUP, L.L.C., As Trustee of the APG Holdings Revocable Trust ("Aspen Properties"), the Plaintiff in the above-styled civil action, and hereby files its Motion to Substitute Plaintiff with Real Party in Interest and shows this honorable Court in support thereof as follows:

O.C.G.A. § 9-11-17 provides that "[e]very action shall be prosecuted in the name of the real party in interest." This case was filed on January 21, 2021. Unbeknownst to the undersigned, on or about January 14, 2021, this loan was transferred by Plaintiff to Aspen Holdings Trust. A true and correct copy of the applicable Truth in Lending Act Ownership Transfer Notice is attached hereto as Exhibit "A" and is incorporated herein by reference. In Rogers v. Deutsche Bank

National Trust Co., 343 Ga. App. 655, 808 S.E. 2d 233 (2017), the lender (Ameriquest) had transferred the loan to Deutsche Bank more than two years before it had filed its complaint. Nevertheless, while looking at O.C.G.A. § 9-11-25 that provides for the substitution of a party where there is a transfer of interest, the court stated that O.C.G.A. § 9-11-17 controlled where, as in this case, the transfer occurred PRIOR to the lawsuit being filed.    In order to add or drop parties under O.C.G.A. § 9-11-17, "the trial court must exercise its discretion in determining the change of status of parties."   Foskey v. Vidalia City School, 258 Ga. App. 298, 303, 574 S.E. 2d 367 (2002).   See also Smith v. Vencare, Inc., 238 Ga. App. 621, 519 S.E. 2d 735 (1999); Hodgskin v. Markatron, Inc., 185 Ga. App. 750, 365 S.E. 2d 494 (1988); Fleming v. Caras, 170 Ga. App. 579, 317 S.E. 2d 600 (1984).   Among the factors a trial must consider in exercising its discretion is the prejudice to any litigant and the reasons and justifications for the failure to include the parties in the original suit.   Smith v. Vencare, Inc., 238 Ga. App. 621, 519 S.E. 2d 735 (1999).   See also Franklyn Gesner Fine Paintings, Inc. v. Ketcham, 252 Ga. 537, 314 S.E. 2d 903 (1984) (defendant was not misled or deceived).

    Here, there would be no prejudice to the Defendant and the Defendant has not been misled or deceived.   In fact, the time has not even run for his answer to be filed and it was his

attorney who alerted counsel for Plaintiff of the transfer. There would be no prejudice to the Defendant at this point and Plaintiff's counsel was unaware of the transfer until he was recently notified pursuant to the attached Truth in Lending Act Ownership Transfer Notice provided by counsel for the Defendant herein. Consequently, this Court should exercise its discretion in substituting Aspen Holdings Trust for Plaintiff herein.

WHEREFORE, Plaintiff requests that this honorable Court substitute Aspen Holdings Trust (as the real party in interest herein) for Plaintiff in this matter and for such other and further relief as this honorable Court deems just and proper.

Respectfully submitted this 11th day of February, 2021.

JOHNSON LEGAL OFFICES, L.L.C.

By: /s/ Larry W. Johnson
    Larry W. Johnson
    Georgia Bar No. 394896
    Attorney for Plaintiff

138 Hammond Drive, Suite B
Atlanta, GA 30328
Telephone: (404)486-2361
Facsimile: (404)393-0826
Email: LJohnson@SuretyBondsAgency.com
CordtzAspenSubstituteMotion01

- 3 -

01/19/2021

## TRUTH IN LENDING ACT OWNERSHIP TRANSFER NOTICE

JEFFREY D CORDTZ
213 SOUTHERN HILL DRIVE
DULUTH, GA 30097

**Re Loan Number: 9160032062**
**Property: 213 SOUTHERN HILL DRIVE, DULUTH, GA 30097**

**Transaction Date: 1/14/2021**

**Dear JEFFREY D CORDTZ**

On or about 1/14/2021, the ownership of your mortgage loan in the original principal sum of $ 200,000.00 secured by 213 SOUTHERN HILL DRIVE, DULUTH, GA 30097 has been transferred by APG Holdings Revocable Trust to Aspen Holdings Trust. Our name and contact information is as follows:

### Aspen Holdings Trust

1221 W. 103rd St #108, Kansas City, MO 64114

Phone: 800-326-5799  Fax:

The assignment, sale or transfer of the mortgage loan does not affect any terms or conditions of the Mortgage, Deed of Trust and/or Note. We, or our agents, recorded or will be recording the transfer of interest in your loan in the official records of Gwinnett County, GA.

**PARTIAL PAYMENT:** Partial payments are accepted by your new lender, but are held by servicer (FCI Lender Services, Inc. as servicing agent for your lender) in a suspense account until a full payment is received. At that point, the full payment will be applied first to the interest due and then to principal, or as otherwise referenced in your Note and/or Security Instrument. If this loan is sold to another lender, they may have a different partial payment policy.

Please be advised that the loan will be serviced for our benefit by our servicer, FCI Lender Services, Inc., whose contact information is set forth below.

Should you have any questions regarding your loan, please contact our Servicer, FCI Lender Services, Inc., PO BOX 28720, Anaheim, CA 92809-0112, or call them at 800-931-2424 (toll free). Our servicer is authorized to collect payments on our behalf, and to resolve issues concerning payments on your loan.

NOTE: There is a distinction between the Creditor who is the owner of your loan, and the Servicer who is an agent that handles the servicing (payment processing) of your loan for the Creditor. **Please contact the Servicer with any questions regarding your loan.**

Sincerely,
Aspen Holdings Trust



TILA OWNERSHIP TRANSFER NOTICE - 20140730

**<u>Docket sheet with JLO and Johnson representing FCI- Exhibit C</u>**

# Ohai v. Delta Community Credit Union (1:20-cv-02220)

## District Court, N.D. Georgia

🔍 Search this Docket (/?type=r&q=docket_id%3A18242265)   🏷 Tags ▾   🔔 Get Alerts (/alert/docket/toggle/) ▾

⎘ View on PACER (https://ecf.gand.uscourts.gov/cgi-bin/DktRpt.pl?277260) ▾

Last Updated: June 24, 2021, 1:24 p.m. EDT

Assigned To: Steve CarMichael Jones (/person/1670/steve-carmichael-jones/)

Referred To: Alan J. Baverman (/person/9189/alan-j-baverman/)

Date Filed: May 26, 2020

Date of Last Known Filing: Jan. 19, 2021

Cause: 15:1692 Fair Debt Collection Act (/?type=r&cause="15:1692 Fair Debt Collection Act")

Nature of Suit: 480 Consumer Credit (/?type=r&nature_of_suit="480 Consumer Credit")

Jury Demand: Both (/?type=r&q=juryDemand:"Both")

Jurisdiction Type: Federal Question

≡ Docket Entries (/docket/18242265/ohai-v-delta-community-credit-union/)

👥 Parties and Attorneys (/docket/18242265/parties/ohai-v-delta-community-credit-union/)

ℹ FJC Integrated Database (/docket/18242265/idb/ohai-v-delta-community-credit-union/)

## 👤 Defendant

| | | |
|---|---|---|
| Daniel I. Singer | REPRESENTED BY | **Daniel I. Singer**<br>📞 (949) 449-1574<br><br>Daniel I. Singer<br>2222 Martin<br>Suite 214<br>Irvine, CA 92612 |
| Dean Engle | REPRESENTED BY | **Larry W. Johnson**<br>📞 (404) 486-2361<br>Fax: (404) 393-0826<br><br>Johnson Legal Offices, L.L.C.<br>138 Hammond Drive<br>Suite B<br>Atlanta, GA 30328<br><br>*ATTORNEY TO BE NOTICED* |
| Delta Community Credit Union | REPRESENTED BY | **Charles Hale Van Horn**<br>📞 (404) 261-7711<br>Fax: (404) 233-1943<br><br>Berman Fink Van Horn, P.C. Atl<br>3475 Piedmont Rd., N.E.<br>Suite 1100<br>Atlanta, GA 30305 |

*LEAD ATTORNEY*

Daniel H. Park

📞 (404) 261-7711
Fax: (404) 233-1943

Berman Fink Van Horn, P.C. Atl
3475 Piedmont Rd., N.E.
Suite 1100
Atlanta, GA 30305

*ATTORNEY TO BE NOTICED*

Katherine Merriam Silverman

📞 (404) 261-7711

Berman Fink Van Horn, P.C. Atl
3475 Piedmont Rd., N.E.
Suite 1100
Atlanta, GA 30305

*ATTORNEY TO BE NOTICED*

*LEAD ATTORNEY*

| | | |
|---|---|---|
| FCI Lender Services, Inc. | REPRESENTED BY | |

Larry W. Johnson

📞 (404) 486-2361
Fax: (404) 393-0826

Johnson Legal Offices, L.L.C.
138 Hammond Drive
Suite B
Atlanta, GA 30328

*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| Jaregui, Lindsey, Longshore & Tingle | REPRESENTED BY | |

Larry W. Johnson

📞 (404) 486-2361
Fax: (404) 393-0826

Johnson Legal Offices, L.L.C.
138 Hammond Drive
Suite B
Atlanta, GA 30328

*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| Microbilt Corporation | REPRESENTED BY | |

Bruce S. Luckman

📞 (856) 663-1503
Fax: (856) 488-4744

Sherman Silverstein Kohl Rose and
Podolsky
308 Harper Drive
Suite 200
Moorestown, NJ 08057

*ATTORNEY TO BE NOTICED*

*LEAD ATTORNEY*

*PRO HAC VICE*

Megan P. Mitchell

📞 (404) 873-8500

# Collection letter from JLO and another law-firm- Exhibit D.

Appendix B10



July 17, 2019

Emmanuel O. Ohai
2715 Tradd Ct.
Snellville, GA 30039

Luminate Ohai
2715 Tradd Ct.
Snellville, GA 30039

RE: 2715 Tradd Ct., Snellville, GA 30039

Dear Emmanuel O. Ohai and Luminate Ohai:

This law firm, along with Johnson Legal Offices, LLC, represents Park Tree Investments 20, LLC, the creditor on the above-referenced loan. This letter is to advise you that we have been retained to collect the loan secured by the above-referenced property, which may involve foreclosure proceedings against said property. The total amount of the debt owed to the creditor consists of the unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and miscellaneous charges. As of the date of this letter you owe $65,809.55. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence if you pay this amount, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing the payment for collection. For further information and/or assistance as to the total current amount needed to either bring your loan current or to pay off your loan in full contact our office at (205) 970-2233 (or toll free 888-233-8845). We may also be able to provide you with information as to alternatives to avoid foreclosure.

Unless you notify us within thirty (30) days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid. If you notify us in writing of a dispute, we will obtain verification of the debt and mail it to you. If the creditor named' in this letter is not the original creditor, and you make a written request to this law firm within thirty (30) days from receipt of this notice, then the name and address of the original creditor will be mailed to you by this law firm. We may commence the foreclosure action without waiting thirty (30) days, if so requested by our client. **If you have filed for bankruptcy or have been discharged in Bankruptcy subsequent to incurring this debt, please furnish us with the Bankruptcy information.**

If you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because Park Tree Investments 20, LLC has not been notified of your bankruptcy case. If the foregoing applies to you, it is IMPORTANT that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed. If you have received a Chapter 7 discharge under the Bankruptcy Code of the United States or if your mortgage is the type which has been discharged pursuant to a completed Chapter 13 plan, this notice is not intended and does not constitute an attempt to collect a debt against you personally. If the foregoing applies to you, this notice is sent to you only as a required preliminary step under state law to foreclosure on the mortgage against the above-referenced property. Provisions may also be contained within your mortgage/deed of trust that require notice prior to foreclosure. As such, if the foregoing applies to you, this is not an attempt to assert that you have any personal liability for this debt.



Case 1:20-cv-02889-SCJ-AJB Document 15 Filed 05/26/20 Page 55 of 57
Case 1:21-cv-02889-MHC-LRW Document 15 Filed 08/24/21 Page 57 of 57
Appendix B10

If you have not recently filed bankruptcy or received a bankruptcy discharge, you are hereby notified that this an attempt to collect a debt, and any information obtained will be used for that purpose.

If you are currently or have within the last nine (9) months been in the military service AND joined after signing the Security Deed now in foreclosure, please notify this office immediately. You may be entitled to relief under the Servicemembers Civil Relief Act. When contacting this office as to your military service, you must provide us with positive proof as to your military status. If you do not provide this information, we will assume that you are not entitled to protection under the above-mentioned Act.

For further information about this matter you may contact this office at the number above.

Sincerely,

Jauregui & Lindsey, LLC

244 Inverness Center Drive
Suite 200
Birmingham, AL 35242

Phone: (888) 233-8845
Fax: (205) 970-3886
www.jandllawfirm.com