UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

---

**Jeffrey Cordtz,**

**Plaintiff**

Versus

**Johnson Legal Offices, LLC;**
**FCI Lender Services, Inc.;**
**And Larry W. Johnson**

**Defendants**

Case 1:21-cv-02003-MHC-LTW

---

# [PROPOSED] SECOND AMENDED COMPLAINT- JURY TRIAL REQUESTED

## NATURE OF THE ACTION

1- Plaintiff Jeffrey Cordtz ("Cordtz") files this Fair Debt Collection Practices Act ("FDCPA") Complaint against Johnson Legal Offices, LLC ("JLO"), FCI Lender Services, Inc. ("FCI") and Larry W. Johnson ("Johnson") for unlawful debt collection practices.

2- Cordtz entered into a binding settlement agreement to settle a defaulted home equity loan for $9,875.

3- JLO and Johnson admit in a January 2021 lawsuit filed in Fulton County against Jeffrey Cortdtz that a Gwinnett County Superior Court entered a judgment concerning the home equity loan.

4- JLO and Johnson admit the Court found that the $9,875 was a binding settlement offer.

5- The complaint was seeking $246,162.04.

6- LWJ and JLO did not review any statements or account history to substantiate the balance rather he relied on the representation of Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust.

7- LWJ and JLO had no previous relationship with Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust and did not know how they maintain records or how they calculated the balance owed.

8- The lawsuit was for breach of a promissory note against Plaintiff Cordtz.

9- JLO and Johnson signed the complaint which listed the plaintiff as Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust.

10- Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust had transferred the alleged account prior to the lawsuit being brought.

11- Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust did not own the alleged account at the time the lawsuit was brought.

12- JLO and LWJ misrepresented that Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust owned the account.

13- It would be simple for JLO and/or LWJ to call or email Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust to confirm that it owned the loan prior to filing the lawsuit.

14- JLO and LWJ had no systems or procedures to prevent the filing of a lawsuit on behalf of an entity that did not own the loan.

15- JLO and Johnson filed the lawsuit per an unwritten understanding or agreement with McMichael Taylor & Grey, LLP.

16- McMichael Taylor & Grey, LLP represented the servicer of Plaintiff's loan FCI Lender Services, Inc. at the time JLO and LWJ commenced the Fulton lawsuit against Plaintiff.

17- McMichael Taylor & Grey, LLP represented the alleged owner of Plaintiff's loan Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust at the time JLO and Johnson commenced the Fulton lawsuit against Plaintiff.

18- Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust was not the real party in interest when JLO and Johnson commenced the lawsuit on its behalf against Plaintiff.

19- Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust did not own the account when JLO and Johnson commenced the lawsuit on its behalf against Plaintiff.

20- Johnson and JLO was paid at a rate of approximately $300 per hour for its services attempting to collect the Cordtz debt.

21- McMichael Taylor & Gray, LLP retained the debt collection services of JLO and LWJ because of a reputation as being excellent for this type of consumer debt collection case.

22- McMichael Taylor & Gray retained the services of JLO and Johnson to collect the debt from Cordtz because partners from the McMichael law firm had worked with LWJ years prior and believed that he could handle the case very well.

23- LWJ is listed on the website of Jauregui & Lindsey, LLC ("J&L") as an attorney. http://www.jandllawfirm.com/ (Last visited 9/14/21).

24- LWJ is of counsel at J&L.

25- LWJ is the registered agent for J&L.

26- J&L is a corporation licensed to do business in Georgia

27- Jauregui & Lindsey's practice includes "Default Services & Creditor's Rights" and one of the principal and primary purposes of, if not the only principal and primary purpose of the business of J&L is collecting defaulted consumer debt for lenders.

28- LWJ has a written profit-sharing relationship with J&L.

29- LWJ is the only lawyer of J&L who is licensed to practice law in Georgia.

30- The fees are shared for any case that JLO and J&L work on.

31- One third of the fees goes to JLO and two thirds to J&L.

32- LWJ's relationship with J&L dates back at least to 2015 when LWJ's collection law firm (RCO Legal) used J&L's services for its collection matters in Alabama.

33- After LWJ left RCO Legal, he began doing consumer debt collection work on his own.

34- In that regard, LWJ opened JLO shortly after.

35- LWJ and JLO use the consumer debt collection systems and infrastructure which J&L uses to do its collection work.

36- By way of a PACER search, Plaintiff found a form collection letter dated July 17, 2019 on J&L letterhead.

37- That letter said the JLO was collecting the debt with J&L.

38- J&L and JLO were collecting on behalf of lender Park Tree Investments 20, LLC which allegedly owned a consumer debt.

39- This is but a single example of many where J&L collects consumer debts in Georgia using JLO as its attorney and giving him a one third cut of any fee obtained.

40- The Georgia Dream Homeownership Program was created to make homeownership possible for eligible low- and moderate-income Georgians by providing affordable financing options. https://www.dca.ga.gov/sites/default/files/ga_dream_faq.pdf (viewed 9/14/21).

41- State Home Mortgage is the servicing operation for the Georgia Dream Homeownership Program. https://www.dca.ga.gov/safe-affordable-housing/homeownership/state-home-mortgage-multi-family (viewed 9/14/21)

42- JLO is the attorney debt collector for State Home Mortgage.

43- On information and belief, State Home Mortgage is connected with the U.S. Secretary of Housing and Urban Development ("HUD") and JLO represents HUD.

44- State Home Mortgage servicing regularly uses the debt collection services of JLO.

45-  JLO and Johnson regularly collect for State Home Mortgage servicing.

46-  In JLO's role as attorney debt collector for State Home Mortgage, he uses the services and infrastructure of J&L for sending notices, doing advertisements, arranging the crying of the sale, arrange for title to be searched and generally record the deed if it goes back to the lender.

47-  McMichael Taylor & Gray, LLP paid JLO $11,582.06 for his debt collection services through at least 6 checks for the time period between February 4, 2021 and August 24, 2021.

48-  Prior to filing the Fulton County lawsuit against Cordtz Johnson did not remember looking at monthly statements to indicate that Plaintiff's balance was correct.

49-  LWJ and JLO did not know who the servicer of Plaintiff's loan was at the time he filed the Fulton County lawsuit.

50-  At the time of the January 2021 lawsuit, monthly statements were being sent by FCI Lender Services, Inc.

51-  In Paragraph 14 of that lawsuit the allegation states "…. the Court…. entered a default judgment against [Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust] on July 27, 2020, which acted as a

revival of the terms" of the binding settlement offer to settle the defaulted home equity loan for $9,875.

52- In Paragraph 26 of the Fulton County Complaint, JLO and Johnson give notice of their intent to seek attorney's fees as provided for in the contract.

53- This notice is frequently referred to as a 13-1-11 notice and it allows an attorney to collect attorney's fee in the amount of approximately 10% of the debt if the debt is not paid within 10 days from the notice.

54- Cordtz has accepted the settlement offer and is willing, ready and able to provide the settlement funds and has been since 2012.

55- He has been unable to consummate the settlement through no fault of his own.

56- Rather the owner of the loan and the servicer of the loan keep changing and have changed multiple times and new owners and servicers refuse to honor the settlement offer.

57- Desiring to obtain a windfall by not accepting the settlement, FCI continues to seek $180,327.19 (and possibly much more) by mailing Plaintiff monthly statements including numerous statements within the past year, since the Court ordered that the settlement was valid.

58- In an April 8, 2021 letter acting at the direction of FCI, on JLO letterhead, Johnson wrote a letter directly to Plaintiff even though he was represented by counsel.

59- The April 8, 2021 letter inexplicably sought $327,917.83 as the amount of principal and interest.

60- The $327,917.83 does not represent the balance as of that date as LWJ and JLO had claimed that the balance was $80,000 less just a few months prior.

61- JLO's client did not authorize him to seek $327,917.83.

62- The foreclosure law-firm of McMichael Taylor & Gray, LLP as well as JLO represented Cordtz's purported creditor.

63- FCI was the servicer of the loan for Cordtz's purported creditor.

64- FCI was necessary and integral to the foreclosure process while assisting Cordtz's creditor to collect the loan.

65- "McMichael Taylor & Gray, LLP", "Aspen Properties Group, LLC as trustee of the APG Holdings Revocable Trust", FCI, JLO and LWJ acted together and in concert as part of one unit in trying to collect the settled debt.

66- The principal purpose of FCI's business is the collection of debts for its clients who buy defaulted debt.

67- FCI regularly collects defaulted debts owed to its client.

68- FCI is a debt collector as defined by the FDCPA. *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015); *Diaz v FCI Lender Services*, SDNY Case No. 17-CV-8686 (AJN), 2018 WL 4681013 *1 (September 28, 2018) (Denying Motion to Dismiss FDCPA claim) ("According to Plaintiff, FCI "holds itself out as a 'special servicer,' or 'specialty loan servicer,'" which Plaintiff describes as having "expertise in handling defaulted loans for their owners and effectively integrating" such loans "onto its servicing platform." [ ] Many of the loans in FCI's servicing portfolio "are in default when FCI first becomes involved with them." [ ] In the past, FCI explained its activities on its website as "rapidly turn[ing] Delinquent Loans and Loan Pools into cash by facilitation the restructure of loans, or by foreclosing so the Lender can sell the properties." [ ] It now describes its activities somewhat differently, including, inter alia: "acting at the direction of its Lender Clients ... to address Delinquent Loans by facilitating the restructure of loans per Lender directions" and "coordinating Lender's foreclosure of the Loan if workouts are not possible" so that the Lender can sell the property.")

69- See also https://www.myfci.com/AboutUs.html ("FCI created a Specialty Loan Servicing Division in 2003 to specifically serve Clients who were buying Non-Performing Loans.")

70- FCI provides an entire fee schedule for its buyers of defaulted debt under the Specialty Loan Servicing Section.

https://www.myfci.com/SpecialtyLoanServicing.html

71- FCI is liable for the actions of LWJ and JLO under state law agency principals.

72- This case is but an example of FCI, Johnson and JLO not owning the debts that they seek to collect; rather, collecting the debts for others.

73- JLO and LWJ regularly and systematically attempt to collect defaulted debt by means of lawsuits and United States Postal Service letters.

74- On information and belief, LWJ was formerly of the Johnson & Freedman, LLC foreclosure law firm and regularly collected defaulted debts for clients such as Fannie Mae. *RCO Legal, P. S. v. Johnson*, 347 Ga. App. 661, 667 (2) (b), 820 S.E.2d 491 (2018).

75- After leaving Johnson & Freedman, LLC, LWJ formed JLO.

76- JLO is a law firm who regularly attempts to collect defaulted debt.

77- LWJ is a lawyer who regularly collects defaulted debt for others.

78- JLO regularly and frequently collects defaulted debts for others.

79- Despite the binding settlement, FCI has claimed in letters written directly to Plaintiff that he owes $284,403.87.

80- Indeed, even after this lawsuit was started FCI mailed Plaintiff a letter directly even though it knew Plaintiff is represented by counsel.

81- The FCI letter has a report date of May 21, 2021 and is cryptic.

82- The FCI letter states that the past due amount is $190,058.53 and the current payment amount is $2,754.05 for a minimum payment due of $192,812.58.

83- Under Account Activity the FCI letter states balance forwarded of $284,403.87 and seems to say because of a $1,062.99 finance charge the balance is $285,466.86.

84- Plaintiff believes the account is subject to a settlement agreement.

85- In all events Plaintiff is unsure why if the loan has been accelerated what is the reason for there being a current payment and minimum payment due amount that is unknown. Further, Plaintiff is unsure what the $285,466.86 represents and whether it includes part or the full amount of the $190,058.53.

86- JLO, FCI and Johnson are causing emotional distress to Cordtz and his wife by denying the settlement's validity.

87- JLO, FCI and Johnson are also causing Cordtz to incur thousands and thousands of dollars in legal expenses to prevent JLO, FCI and Johnson from refusing to honor the binding settlement agreement.

88-     Cordtz has a special-needs child and a warmer year-round climate would be helpful to his physical condition.

89-     Plaintiff has been unable to sell his house because of the actions of JLO, FCI and Johnson.

90-     Plaintiff brings this action to put an end to this abuse once and for all.

## PARTIES

91-     Plaintiff Jeffrey Cordtz is a citizen and resident of Georgia and he is alleged to owe a personal debt to FCI's lender client.

92-     Cordtz is alleged to owe a debt arising from a home equity loan which was used in conjunction with buying a personal home.

93-     Plaintiff defaulted on that debt due to circumstances beyond his control.

94-     Defendant JLO is a limited liability company with offices at 138 Hammond Drive, Suite B, ATLANTA, GA, 30328.

95-     Defendant Larry W. Johnson is an attorney debt collector subject to the FDCPA.

96-     JLO is a debt collector as defined by the FDCPA

97-     FCI is a California corporation with a registered agent in Fulton County.

98- FCI is a debt collector as defined by the FDCPA.

99- FCI's registered agent is Cogency Global Inc. at 900 Old Roswell Lakes Parkway, suite 310, Roswell, GA 30076.

**JURISDICTION & VENUE**

100- Jurisdiction and venue are proper in this Honorable Court under 28 USC § 1391(b)(2) because the events giving rise to the allegations occurred within this district.

101- This Court has jurisdiction over the state law claims under the supplemental jurisdiction doctrine.

**Count I- VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT- ALL DEFENDANTS**

102- 15 USC 1692 titled "Congressional findings and declaration of purpose" states the purpose of the FDCPA:

(a)Abusive practices

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b)Inadequacy of laws

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Available non-abusive collection methods

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Interstate commerce

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) Purposes

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

103- As noted, Plaintiff entered into a binding settlement agreement with the owner of his home equity loan to settle his home equity loan for approximately $10,000.

104-   As noted, JLO and Johnson at the direction of McMichael refuse to consummate the settlement agreement.

105-   As noted, JLO and Johnson at the direction of McMichael filed a lawsuit seeking to collect more than $200,000.

106-   The lawsuit is an attempt by FCI, Johnson and JLO to extract more than two hundred thousand dollars than the clear terms of the settlement allow.

107-   The lawsuit misrepresents a key fact, namely that the settlement agreement is not binding even though a Court found that it was.

108-   The lawsuit is based on a blatant lie that Plaintiff has not complied with the settlement which a Court of competent jurisdiction found binding.

109-   The lawsuit was a false, deceptive and misleading means to collect the debt in violation of 1692e.

110-   The lawsuit falsely represents the character, amount and legal status of the debt by failing to acknowledge the settlement agreement in violation of 1692e(2)(A).

111-   On April 8, 2021, JLO and Johnson at the direction of FCI sent a letter directly to Plaintiff seeking to collect a debt of $327,917.83.

112-   The letter was purportedly sent under OCGA 13-1-11 giving Plaintiff 10 days to pay the balance before he would be charged attorney's fees.

113-    However, the letter violated the FDCPA because JLO, Johnson and FCI knew that Plaintiff was represented by an attorney and despite knowing that, communicated with him anyways in violation of 1692c(a)(2).

114-    FCI, Johnson and JLO could have filed the lawsuit that it did and at that that point give Plaintiff 10 days to pay the debt without incurring attorney's fees.

115-    FCI, Johnson and JLO knew at the time the lawsuit was filed that the lawsuit would just serve to irritate, annoy, abuse and harass plaintiff and plaintiff would continue to insist that there was a settlement agreement in place as found by the Court.

116-    The April 8, 2021 letter was just a continuation of the harassment and abuse of Plaintiff by Defendants.

117-    As noted above FCI communicated directly with Plaintiff after this lawsuit had begun even though it knew he was represented by counsel.

118-    Plaintiff suffered emotional distress as a result of the wrongful lawsuit.

119-    Plaintiff suffered emotional distress as a result of the direct communication to him as he became worried and agitated and felt helpless to protect himself from the legal system.

120-   Plaintiff has been unable to sell the house to care for his son who receives SSI benefit due to among other reasons a prosthetic hip.

121-   Plaintiff wants to sell the house so that he can move his family to a warmer climate where he can take care of his son better.

122-   Plaintiff suffered money damages because he had to pay a lawyer to attempt to enforce the binding settlement agreement and stop JLO and LWJ from pursuing frivolous claims against him.

## COUNT II- VIOLATIONS OF THE FAIR BUSINESS PRACTICES ACT (FCI ONLY)

123-   As noted, FCI violated the FDCPA.

124-   A violation of the FDCPA is a per se violation of the Fair Business Practices Act.

125-   FCI's FDCPA violations of communicating with Plaintiff when he was represented and attempting to collect a settled debt for more than two-hundred-thousand dollars than Plaintiff really owes caused Plaintiff damages of emotional distress as noted above.

126-   Plaintiff is entitled to treble and punitive damages and attorney's fees.

WHEREFORE, the premises considered, Plaintiff prays that this Court grant Plaintiff the following relief:

(a) Statutory damages and actual damages pursuant to 15 U.S.C. §1692k under the FDCPA;

(b) Litigation costs and attorneys' fees under the FDCPA;

(c) Treble damages, Actual damages, and Punitive Damages under the Fair Business Practices Act; and

(d) Any other relief as may be just and proper.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED this 15th day of September 2021.

By: s/ Shimshon Wexler
Georgia Bar No. 436163
ATTORNEY FOR PLAINTIFF
S Wexler, LLC
2244 Henderson Mill Rd, Suite 108
Atlanta, Georgia 30345
T: (212) 760-2400
F: (678) 609-1482
swexleresq@gmail.com