E-FILED IN OFFICE - D
CLERK OF SUPERIOR COUR
GWINNETT COUNTY, GEORGI
19-A-10263-
10/10/2019 11:44 AN

CLERK OF SUPERIOR COUR

## GWINNETT COUNTY SUPERIOR COURT
## STATE OF GEORGIA

JEFFREY D. CORDTZ,

                          Plaintiff,

               vs.

ASPEN PROPERTIES GROUP, LLC
AS TRUSTEE OF THE APG
HOLDINGS REVOCABLE TRUST,

                        Defendant.

Civil Action File No.

19-A-10263-7

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, SPECIFIC PERFORMANCE, AND EQUITABLE ACCOUNTING

Plaintiff Jeffrey D. Cordtz ("Cordtz") brings this Complaint against named defendant Aspen Properties Group, LLC as Trustee of the APG Holdings Revocable Trust ("Aspen"), and respectfully shows as follows:

### THE PARTIES

1.

Aspen is a Maryland limited liability company with its principal place of business in Maryland; Aspen is registered with the Georgia Secretary of State as a Foreign Limited Liability Company.

2.

Aspen may be served in care of its registered agent for service of process in Georgia, to wit: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.



3.

Plaintiff Jeffrey D. Cordtz ("Cordtz") is a resident of Fulton County, Georgia, and a citizen of the State of Georgia.

## JURISDICTION

4.

The Court has subject matter jurisdiction.

5.

This Court's exercise of personal jurisdiction over Aspen would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution because Aspen purposefully established minimum contacts in Georgia and has had "continuous and systematic general business contacts" with Georgia such that the maintenance of this action would not offend traditional notions of fair play and substantial justice.[1]

6.

Alternatively, this Court's exercise of personal jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution because this cause of action "arise[s] out of or relate[s] to" Aspen's contacts with Georgia;[2] Aspen purposefully availed itself of the

---

[1] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984).

[2] See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

benefits of Georgia, and therefore can be said to have reasonably anticipated being haled into Georgia;[3] and, granting jurisdiction comports with "fair play and substantial justice."[4]

## VENUE

### 7.

Venue is proper in Gwinnett County because its is the county in which Aspen "maintains its registered office"[5]

## FACTS COMMON TO ALL COUNTS

### 8.

There is an actual controversy between the parties growing out of the following averments of fact.

### 9.

On April 3, 2006, Cordtz contracted with IndyMac Bank, F.S.B. ("IndyMac") to extend a line of credit (the"Loan" or the "Loan Agreement") to Cordtz.[6]

---

[3] *Burger King Corp.*, 471 U.S. at 472.

[4] Id.

[5] O.C.G.A. § 14-2-510, GA. CONST. ART. VI, § 2, ¶ VI.

[6] IndyMac Bank, F.S.B. was a federally regulated bank based in Pasadena, California until it was closed by the U.S. Treasury Department's Office of Thrift Supervision, and the FDIC was named its conservator on July 11, 2008. See https://tinyurl.com/y4samhos (last viewed Oct. 7, 2019).

10.

To memorialize the Loan Agreement Cordtz signed an instrument captioned "Home Equity Line of Credit" (the "HELOC").

11.

The Loan Agreement was collateralized by a security deed that was recorded in the Fulton County deed records and which encumbered Cordtz's Fulton County residence.

12.

One of the terms of the Loan Agreement was that Cordtz would pay IndyMac "the total principal of all loans made under [the terms of the HELOC], together with all finance charges, costs, expenses, and fees for which you are responsible under this Agreement" (the "Indebtedness").

13.

From June of 2006 through August of 2008, Cordtz made regular and conforming installment payments to IndyMac in accordance with the terms of the Loan Agreement.

14.

After IndyMac's closure by the Treasury Department in July of 2008, Cordtz continued to make regular and conforming installment payments in accordance with the terms of the Loan Agreement to loan servicer Faslo Solutions, LLC ("Faslo").

-4-

15.

In January of 2009, Cordtz began feeling financial pressure, and entered into an agreement with Faslo to modify the Loan Agreement.

16.

Faslo advised Cordtz that the balance of the Indebtedness would be reduced to $100,000 and, by mutual agreement, his monthly installment payments were reduced to $500.

17.

Cordtz continued to make the regular (albeit modified) installment payments under the (modified) Loan Agreement to Faslo until Faslo was dissolved.

18.

Cordtz was unaware of Faslo's dissolution and continued to send installment checks for several months — checks that were never cashed.

19.

Servicing of the Loan went into limbo after Cordtz discovered that the Loan Agreement had been transferred to DTA Solutions, LLC ("DTA") in the summer of 2012.

20.

In 2012, certain of Cordtz's installment payments under the (modified) Loan Agreement became past due.

21.

On September 14, 2012, DTA made an offer to Cordtz to participate in its "debt reduction program," by proposing that Cordtz enter into a Discounted Payoff Agreement.

22.

Under the terms of the Discounted Payoff Agreement, DTA proposed to Cordtz that Cordtz transmit a $9,875 payment within 30 days of the letter's date to resolve the entire balance of the Loan "at a discount."

23.

Cordtz accepted DTA's offer to enter into the Discounted Payoff Agreement before its expiration.

24.

Prior to transmitting the $9,875 payment Cordtz made efforts to confirm with DTA and with the owner of the loan, IndyMac's successor, One West Bank, F.S.B. ("OneWest"), that satisfaction of the Loan would also cancel the security deed encumbering his home.[7]

25.

In a letter dated December 10, 2013, Cordtz's wife, Sheila Cordtz, wrote to OneWest to attempt to make "arrangements to settle this Second Mortgage

---

[7] After IndyMac was closed by the Treasury Department, most of IndyMac's assets were transferred to IndyMac Federal Bank, F.S.B. On March 19, 2009, the FDIC sold IndyMac Federal Bank, FSB to OneWest Bank, F.S.B. See https://tinyurl.com/y4samhos (last viewed Oct. 7, 2019).

Note for $9,875.00 with the removal of IndyMac's Mortgage Lien on the 213 Southern Hill Drive property secured by this lien...."

26.

Sheila Cordtz's December 10, 2013 letter was followed by additional correspondence between the Cordtz family and IndyMac *Mortgage Services*, acting as a division of OneWest.

27.

In correspondence dated January 29, 2014, an employee of OneWest, one John D. Cockrell, advised the Cordtzes to again contact DTA "to discuss your request to settle of [sic] the debt and release of the lien."

28.

In October of 2014, the Cordtz family again contacted DTA to advise that they would "be happy to proceed with settlement if a letter can be created/issued by DTA indicating that upon settlement, the original IndyMac Note Lien will be removed from the property; we are concerned about DTA being able to provide a lien release on behalf of the now defunct IndyMac."

29.

DTA failed to respond to the Cordtzes.

30.

Cordtz attempted to contact DTA on several occasions up until 2016, with no response.

31.

In November of 2016, Cordtz contacted the FDIC to inquire into the status of the Discounted Payoff Agreement.

32.

The FDIC advised Cordtz to submit deed and lot information to its office in Dallas, Texas for the purpose of determining the status of the Loan Agreement.

33.

The Cordtzes later heard back from a new loan servicer: Value Recovery Group, who advised that it was taking over the Loan Agreement.

34.

In January 2017, Value Recovery Group advised Cordtz that the Loan Agreement was being sold to FCI Lender Services ("FCI").

35.

FCI began servicing the Loan effective as of February 20, 2018.

36.

Cordtz continued to seek FCI's cooperation with his efforts to perform under and to consummate the Discounted Payoff Agreement.

37.

On March 13, 2018, Cordtz was advised that the Loan Agreement had been again assigned to defendant Aspen Properties Group LLC, as Trustee for the APG Holdings Revocable Trust ("Aspen").

38.

Cordtz has since made efforts to secure Aspen's cooperation with his attempts to perform under and to consummate the Discounted Payoff Agreement.

39.

Cordtz has also made efforts to determine whether Aspen is a lawful assignee of the Loan Agreement and in privity with IndyMac.

40.

Cordtz, through his attorney, wrote a letter to Aspen on August 5, 2019, to pursue his inquiry into the bona fides of Aspen's claim and to determine whether Aspen intended to honor the Discounted Payoff Agreement.

41.

In the August 5, 2019 letter, Cordtz's attorney advised Aspen that the Loan Agreement failed to satisfy the definition of a "negotiable instrument" under Georgia's Uniform Commercial Code, which means that the Loan Agreement was "not negotiable."[8]

42.

In the August 5, 2019 letter, Cordtz's attorney advised Aspen that, because the Loan Agreement is not a negotiable instrument that it was controlled by

---

[8] See 11 Am. Jur. 2d Bills and Notes § 84 (2015); accord, *Synovus Bank v. Paczko,* 2015 WL 3455965 (Tenn. App., 2015) (note is not negotiable where the promise to pay "is not for a fixed amount of money but rather for 'the full amount of all advances'").

"general common law principles rather than the UCC," and that, as such, it lost many of the properties and defenses provided by a negotiable instrument.

43.

In the August 5, 2019 letter, Cordtz's attorney further advised Aspen that:

> For a loan that is not a negotiable instrument, indorsements on a note alone will not effectuate a lawful assignment. The assignee must satisfy the "doctrine of privity," which mandates that "only parties to a contract may bring suit to enforce it." See *Wirth v. Cach, LLC*, 300 Ga. App. 488, 489 (2009) (citations omitted); see O.C.G.A. § 9-2-20(a) (claim for breach of contract may only be "brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent").

44.

In the August 5, 2019 letter, and citing *Green v. Cavalry Portfolio Servs., LLC*, 305 Ga. App. 843 (2010), Cordtz's attorney advised Aspen that, since the Loan Agreement was not a negotiable instrument, Aspen could not have acquired

> ...an interest or contractual right in or to the Loan Agreement without an 'unbroken chain of written assignments,' which would put Aspen in contractual privity with IndyMac or any successor of IndyMac.

45.

In the August 5, 2019 letter, Cordtz's attorney requested that Aspen "supply admissible evidence of an unbroken 'chain of written assignments ... to establish that [it is] the real party in interest to enforce the terms of the Loan.'"

46.

In lieu of accepting proof of an "unbroken 'chain of written assignments ... to establish that [Aspen was] the real party in interest to enforce the terms of the Loan,'" Cordtz's attorney proposed, alternatively, to consummate the Discounted Payoff Agreement with a payment of $9,875 in exchange for a full mutual release.

47.

Other than to acknowledge receipt of the August 5, 2019 letter, Aspen has, to date, failed to responded to Cordtz's request ... or to contradict the analysis set forth in the August 5, 2019 letter.

48.

Aspen has failed to provide an accounting to Cordtz for his (many years of) installment payments under the Loan Agreement.

49.

Cordtz stands ready, willing, and able to perform his obligation under the Discounted Payoff Agreement.

50.

Cordtz respectfully applies to this Court for leave to tender $9,875 into the registry of the Court.

## FIRST CLAIM
(Declaratory Judgment)

### 51.

Cordtz incorporates the foregoing ¶¶ 1 through 50 as if fully set forth herein.

### 52.

Cordtz seeks a declaration of legal rights and relations as between the interested parties identified in this Complaint.

### 53.

Cordtz and Aspen have a justiciable and actual controversy concerning their relative obligations and rights under the Loan Agreement.

### 54.

A declaratory judgment will directly affect future conduct by the parties as described in the issues identified in the following ¶¶ 55, 56, and 57

*Whether Aspen is in privity with IndyMac.*

### 55.

Aspen's failure to identify admissible evidence of an unbroken chain of written assignments raises the issue of its standing as a privy of IndyMac and as a contracting party with respect to the Loan Agreement.

*Whether Aspen must accept Cordtz's tender.*

56.

Assuming Aspen is a legitimate privy of IndyMac, Cordtz seeks direction regarding his right to consummate the Discounted Payoff Agreement by making a proper tender of the sum of $9,875 as a full accord, satisfaction, and cancellation of the Indebtedness and termination of the Loan Agreement.

*Whether Aspen must provide an accounting for the Loan.*

57.

Assuming Aspen is the legitimate privy of IndyMac, but that Cordtz's tender of $9,875 will not consummate the Discounted Payoff Agreement, Cordtz is unsure about and seeks direction regarding an accurate accounting for the balance due under the Loan Agreement, and all other material rights and obligations related thereto.

58.

Facts, circumstances, and issues are presented whereby Cordtz is in a position of uncertainty or insecurity regarding his rights and obligations under the Loan Agreement.

59.

Cordtz must take future action that is properly incident to the determination of his rights and obligations under the Loan Agreement.

-13-

60.

Without direction from this Court to guide his way, Cordtz's interests may reasonably be jeopardized.

61.

The entry of a declaratory judgment will serve as guide for future conduct by the parties, and terminate the uncertainty, insecurity, and controversy giving rise to this action.

## SECOND CLAIM
## (Specific Performance)

62.

Cordtz incorporates the foregoing ¶¶ 8 through 50 as if fully set forth herein.

63.

Since the subject matter of Cordtz's claims regarding his relationship with Aspen arise from the enforcement of the Discounted Payoff Agreement, an award of money damages would be an inadequate legal remedy.

64.

The terms of the Discounted Payoff Agreement are memorialized by a written document.

65.

The Discounted Payoff Agreement is certain.

66.

The Discounted Payoff Agreement is fair.

67.

The Discounted Payoff Agreement is for adequate consideration.

68.

The Discounted Payoff Agreement is capable of being performed.

69.

This Court is authorized to declare and decree that the Discounted Payoff Agreement be specifically performed.

70.

Cordtz is entitled to a decree that directs Aspen to accept the discounted payoff figure in consideration for the satisfaction of the Indebtedness.

71.

Cordtz is entitled to the remedy of specific performance of the Discounted Payoff Agreement.

72.

Cordtz is entitled to such other and further equitable and injunctive relief as may be required to implement the requested decree.

## THIRD CLAIM
### (Equitable Accounting)

73.

Cordtz incorporates the foregoing ¶¶ 1 through 50 as if fully set forth

herein.

### 74.

This case presents issues regarding "matters of account" related to complicated and intricate accounting procedures.

### 75.

In the event the Court finds that Aspen is a legitimate privy of IndyMac, and that the Discounted Payoff Agreement need not be specifically performed, the Loan Agreement would present issues regarding "matters of account" related to complicated and intricate accounting procedures.

### 76.

Cordtz is entitled to an equitable accounting for all funds it has paid under the Loan Agreement, and an accounting for the balance due.

## DEMAND FOR JUDGMENT

WHEREFORE, Cordtz prays for judgment against Aspen in the following particulars:

(a)  On the First Claim for Declaratory Judgment, that the Court determine, adjudge, decree, and declare whether Aspen is in privity with IndyMac, and thus a legitimate party to the Loan Agreement;

(b)  On the First Claim for Declaratory Judgment, and assuming that Aspen is a legitimate party to the Loan Agreement, that the Court determine, adjudge, decree, and declare whether Aspen must honor the Discounted Payoff Agreement and accept Cordtz's payment as a

full accord, satisfaction, and cancellation of the Indebtedness;

(c)     On the First Claim for Declaratory Judgment, and assuming that Aspen is a legitimate party to the Loan Agreement, and that it is not obligated to honor the Discounted Payoff Agreement, that the Court decree that Aspen is obligated to an accurate accounting for and determination of the balance due under the HELOC and Loan Agreement;

(d)     On the Second Claim for Specific Performance and Other Injunctive Relief, a decree directing Aspen to cooperate with Cordtz's efforts to consummate the Discounted Payoff Agreement and to accept the discounted payoff figure in consideration for the satisfaction of the Indebtedness and cancellation of the Loan;

(e)     On the Second Claim for Specific Performance and Other Injunctive Relief, an Order directing the Clerk of Court to accept into the registry of the Court the sum of $9,875 to perfect Cordtz's tender of the sums required under the Discounted Payoff Agreement;

(f)     On the Third Claim for Equitable Accounting, a decree directing Aspen to account for all funds and installments that Cordtz has paid under the Loan Agreement and the balance due thereunder;

(g)     For TRIAL BY JURY on any issue so triable; and,

(h)     For such other and further relief as the Court may deem equitable and just in the premises.

Respectfully submitted,

Jeffrey Cordtz
213 Southern Hill Dr.
Duluth, GA  30097
TEL: (678) 467-1096
jcordtz@yahoo.com

/s/  Jeffrey D. Cordtz
Jeffrey D. Cordtz,
Plaintiff_ pro se

"Signed or attested
before me on
OCt   10 , 20 19

Julie amaso

-18-

STATE OF _____          19-A-10263-7

                                                COUNTY OF _____

## VERIFICATION

Personally appeared before the undersigned, Jeffrey D. Cordtz, who, being duly sworn, states under oath as follows:

1. I am the Plaintiff_ identified in the foregoing Complaint. I am over the age of 21, *sui juris* and otherwise competent to testify to the facts set forth in the foregoing Complaint.

2. I have personal knowledge of the facts set forth in the foregoing Complaint unless otherwise suggested by the context.

3. Each fact or opinion set forth in the foregoing Complaint is true and accurate —unless it is qualified (expressly or impliedly) as being "on information and belief," in which case the fact or opinion is true to the best of my knowledge, information, and belief formed after reasonable inquiry.

Sworn to and subscribed before          **AFFIANT:**
me this __10__ day of __Oct__.
_____, 2019.

NOTARY PUBLIC,                    JEFFREY D. CORDTZ, PLAINTIFF
State of __GA__
My commission expires:
__July 24__, 20__20__