Exhibit 1

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **LARRY W. JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION FILE NO:** |
| **v.** ) | **21EV003542** |
| ) | |
| **JEFFREY D. CORDTZ, RICHARD S.** ) | |
| **ALEMBIK, and SHIMSHON WEXLER,** ) | |
| ) | |
| **Defendants.** ) | |

## SECOND DECLARATION OF DEFENDANT SHIMSHON WEXLER

I, Shimshon Wexler, declare as follows:

1.      I am a defendant in this matter, and I make this Declaration in support of my motion to strike Larry W. Johnson's Complaint pursuant to OCGA § 9-11-11.1, and I am familiar with and competent to testify as to all matters stated herein.

2.      I am a graduate of Touro College and New York Law School.

3.      I began working as a paralegal at the New York law offices of Herzfeld & Rubin, PC in June 2008, and then became an attorney—with part of my practice involving consumer law litigation—and continued to work there until I left in August of 2010.

4.      Since 2010, I have been a sole practitioner and have filed lawsuits under various consumer protection statutes.

5.      Since September 2010, I have been representing consumers in claims brought to enforce the federal Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

6.      In my practice, I frequently sue well-funded defendants who have more resources than I do.



EXHIBIT

*N*

7.    For example, I recently sued a debt collector in the United States District Court for the Southern District of New York for attempting to collect an unauthorized $15 fee. see SDNY Case No. 7:19-cv-08576-CS, *Quatinetz v. Optio Solutions LLC et al.*

8.    On July 16, 2021, the Court entered a judgment in favor of the Plaintiff for $1,500 and approximately 400 similarly situated individuals for $46.95 each.

9.    The Court also entered a judgment awarding attorney's fees and costs of $40,000 to my co-counsel and I.

10.   As part of my regular business activities, I speak with other lawyers about their cases and my own cases to gain different points of view.

11.   I also seek referrals and give referrals to obtain work.

12.   I brought the *Quatinetz* case after it was referred to me by another lawyer.

13.   A few years ago, I subleased an office from Mr. Richard S. Alembik.

14.   Mr. Alembik and I never had any formal relationship as co-practitioners of the law.

15.   At times, we spoke about our cases and we tried to refer cases to each other.

16.   After I left Mr. Alembik's office, we maintained a good working informal relationship.

17.   Prior to April of this year, I filed a few cases that Mr. Alembik referred to me.

18.   In April of this year, Mr. Alembik called to have an informal discussion about a letter he was going to send to Mr. Johnson while litigating a lawsuit in state court.

19.   He asked me to critique the letter.

20.   I was not engaged by Mr. Cordtz or Alembik nor was I paid to review the letter.

21.    I reviewed the letter for Mr. Alembik because it alleged Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.) ("FDCPA") violations and suing under the FDCPA is a regular part of my practice. (The *Quatinetz* case was an FDCPA case).

22.    I reviewed Mr. Alembik's letter and agreed with the contents.

23.    I did not authorize my name to be used in conjunction with the letter.

24.    My name was not used in conjunction with the letter.

25.    I did not give approval, go-ahead, blessing, endorsement or support for the letter.

26.    The letter does not indicate or convey that I gave approval, go-ahead, blessing, endorsement or support for the letter.

27.    However, my point of view was that the letter was professionally written and proper.

28.    While speaking to Mr. Alembik, I offered to speak to Mr. Cordtz regarding representation because I believe Mr. Johnson violated the FDCPA..

29.    I believe that the FDCPA Complaint, Amended Complaint and Second Amended Complaint filed by me on behalf of Mr. Cordtz against Larry W. Johnson and his law-firm have merit and will be successful.

30.    For example, the allegations are that Johnson filed a lawsuit in the name of an entity that did not own the loan.

31.    That is a true allegation not disputed by Mr. Johnson and is an FDCPA allegation.

32.    Another example is that Johnson communicated directly with Cordtz while knowing that he was represented by an attorney.

33.    This is a true allegation not disputed by Johnson and violates a specific section of the FDCPA 1692c(a)(2):

3

## (a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt .......

34.     To prepare the complaint, I reviewed caselaw including but not limited to *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1306 (11th Cir. 2015) quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600, 130 S.Ct. 1605, 1622, 176 L.Ed.2d 519 (2010) Heintz v. Jenkins, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) and *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 303 L. Ed. 2d 390 (2019).

35.     To review the facts for the Complaint, I reviewed the Gwinnett Court proceeding leading up to the default by Cordtz's Creditor, the January 2021 Fulton County debt collection Complaint, and the letter that Mr. Johnson sent to Mr. Alembik in April of 2021.

36.     I also was able to determine that Johnson knew Cordtz was represented by Alembik.

37.     My intent in filing the FDCPA lawsuit on behalf of Mr. Cordtz was to pursue Cordtz's rights under the FDCPA and to act as a private attorney general, which is the purpose of the FDCPA.

38.     I had no knowledge, information, or belief that any of the factual statements in the federal complaint or Mr. Alembik's letter were incorrect.

39.     I was not aware of anything factually incorrect about Mr. Johnson written in the letter or the Northern District of Georgia federal complaint.

40.     I had no thought or belief at any time that any factual misstatements were being made about Johnson.

41.     My only intent while speaking to Mr. Alembik about the content of the April 15, 2021 Letter was to provide feedback to another attorney with whom I often informally confer regarding consumer law issues while I conduct my law business, and assist him to obtain relief for a client under the FDCPA.

42.     I did not know Johnson or have any intent to make any false communication about him.

43.     In reviewing Johnson's Amended Complaint, I struggled to and was ultimately unable to identify anything that that Johnson has identified as defaming him which I or any other Defendant have said or written about him. Instead, the amended complaint concludes certain statements are defamatory or false while sidestepping illustrating how and why they are false.

44.     Referring to his defensive pleadings in the Federal FDCPA lawsuit has been equally unfruitful in determining what it is he is complaining about.

45.     Johnson has primarily focused his defense of the federal lawsuit on his claim that he is not subject to the FDCPA because he does not fit within the definition of a "debt collector", which is defined by the FDCPA as one having a principal purpose of collecting debts or regularly collecting debts for others.

46.     This is a factual and legal question that is one of the elements of an FDCPA claim, and which I **always** consider prior to filing an FDCPA claim.

47.     It is my regular procedure to determine whether a defendant is a "Debt Collector" as defined by the FDCPA before I file an FDCPA Complaint.

48.     I followed my regular procedure in the FDCPA Federal case.

49.     With regard to the FDCPA claim filed against Mr. Johnson, the question of whether he is a debt collector requires an analysis described in the case of *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004), which follows the Supreme Court, which "has made it clear that the FDCPA applies to attorneys "regularly" engaging in debt collection activity, including such activity in the nature of litigation. *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)." The Second Circuit determined that " the question of whether a lawyer or law firm "regularly" engages in debt collection activity within the meaning of section 1692a(6) of the FDCPA must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62–63 (2d Cir. 2004).

50.     This contested matter is before the Northern District of Georgia, but it is my belief that Mr. Johnson and his firm qualify as debt collectors. See Plaintiff's Memo of Law in Opposition to JLP and Johnson's Motion to Dismiss Plaintiff's Amended Complaint attached hereto as **Exhibit "1"** at 19-25.

51.     As previously noted, Mr. Johnson does not seriously contend that he hasn't violated the provisions of the FDCPA itself.

52.     At bottom, this case filed by Mr. Johnson is about allegations in a pending federal case where co-defendant Cordtz has asserted that Johnson has violated various provisions of the FDCPA.

53.     In his initial complaint, Johnson made a thinly veiled attempt to hide that this lawsuit is in retaliation for the pending FDCPA lawsuit by claiming that his lawsuit was based on Alembik's April 15, 2021 letter that preceded the filing of the FDCPA complaint.

6

54.     Based on Alembik's letter, in the initial complaint, Mr. Johnson claimed falsely that I had so much involvement in preparing the letter that I should be held liable for $4 million dollars in damages for defamation based on that letter.

55.     I asserted that Mr. Johnson was liable for reasonable attorney's fees under OCGA 9-11-11.1 for forcing me to defend his strategic lawsuit against public participation, which deserved to be dismissed.

56.     Instead of having a Court dismiss the lawsuit, Mr. Johnson amended his complaint and removed the defamation claim against me.

57.     The Amended Complaint has forced me to expend more time and energy dealing with this textbook example of a sloppy frivolous case seeking "up to and including $4 million", See Paragraph 39.

58.     The Amended Complaint is contradictory on its face in that on the one hand it states in Paragraph 24 "A true and correct copy of the Complaint filed by Plaintiff in civil Action No. 1:21-cv-02003-MHC-LTW in the U.S. District Court for the Northern District of Georgia, Gwinnett Judgment Motion (sic.) is attached hereto as **Exhibit "2"** and is incorporated by reference...... *and to be clear, Plaintiff is not suing for those statements*."

59.     On the other hand, Paragraph 51 of the Amended Complaint shows that Mr. Johnson is suing for statements made in the FDCPA lawsuit claiming that I have made "false statements and accusations with respect to Plaintiff, including but not limited to *wrongly alleging that Plaintiff represented FCI with respect to Defendant Cordtz and claiming that Plaintiff's communications and actions caused FCI to have liability* all while Defendants knew or should

have known that Plaintiff did not represent FCI regarding Defendant Cordtz, although Plaintiff has represented FCI in other matters."[1]

60.     In fact, the only time the allegations listed in Paragraph 51 of Johnson's amended complaint have been made is in the pending FDCPA lawsuit.

61.     Specifically, Paragraph 7 of the FDCPA complaint states that Mr. Johnson was "acting at the direction of FCI", Paragraph 9 of the FDCP complaint states that FCI and Mr. Johnson "acted in concert in trying to collect the settled debt", Paragraph 10 states "Upon information and belief, FCI has an agreement or understanding with [Mr.] Johnson to help it collect defaulted debts" and Paragraph 15 of the FDCPA complaint states that "FCI is liable for the action of [Larry W.] Johnson... under state law agency principles"

62.     In Paragraph 52 of Johnson's amended Complaint, he states that "The Defendants falsely claimed that Plaintiff represented FCI regarding Defendant Cordtz and that the actions of the Plaintiff bound FCI causing liability therefor when such representation was not true and there was no factual basis for such allegation".

63.     But, as noted, the only time that claim was made was within the federal FDCPA lawsuit and specifically in Paragraphs 7, 9, 10 and 15.

64.     Further, the Amended Complaint seeks to hold me liable for the letter written solely by Alembik on April 15, 2021.

65.     The Amended Complaint states in Paragraph 14 that I knew that the letter would be published.

---

[1] It also bears mention that evidence revealed in discovery seems to indicate that Plaintiff was subcontracted by law firm McMichael Taylor Gray, LLC, who represented FCI and the Creditor, but he was only subcontracted for the Creditor while McMichael Taylor did not subcontract the FCI representation, so his argument regarding falsity of this statement is a bit of a stretch. Further, FCI sent a collection letter directly to Cordtz, which violated the FDCPA, so the issue of vicarious liability is a red herring.

8

66.     I did not know that the letter was going to be sent to anyone other than Mr. Johnson.

67.     I did not write the April 15, 2021 letter.

68.     I did not direct how the letter should be written.

69.     The FDCPA is one of the most, if not the most, litigated consumer protection statutes.

70.     The FDCPA was enacted in 1978.

71.     In the same month the FDCPA lawsuit was filed against Mr. Johnson in May 2021, there were 608 other FDCPA lawsuits filed against debt collectors. https://webrecon.com/webrecon-stats-for-may-2021-hunsteinmania/

72.     The FDCPA applies to any individual or company that attempts to collect a debt which arose from a consumer transaction.

73.     A Westlaw search on July 22, 2021 for all cases within the 11th Circuit (Florida, Georgia and Alabama) with the term "FDCPA" brings up 5,654 cases.

74.     I have filed many cases under the FDCPA.

75.     I constantly keep updated on cases addressing that law and while not formally qualified as an expert on that area of law, I do consider myself an expert on the FDCPA.

76.     In that regard, Mr. Alembik asked me for my opinion of the April 15, 2021 letter.

77.     I was not paid to provide my opinion and I was not taking responsibility for the letter.

78.     That being said, I fully agree with the letter, which is true generally and specifically, for the reasons stated below.

9

79.     First, it must be said that both Mr. Johnson and Jeffrey D. Cordtz agree that there was a written offer to settle Cordtz's debt for $9,875 on July 27, 2012. A true and accurate copy of this settlement offer is attached hereto as **Exhibit "3"**.

80.     Cordtz and Johnson both know that Cordtz desired and did settle the debt for $9,875. Indeed, he brought a lawsuit in Gwinnett County Superior Court for that precise relief on October 10, 2019. A true and accurate copy of Cordtz's Complaint is attached hereto as **Exhibit "4"**.

81.     Cordtz accepted the $9,875 settlement offer and tendered the $9,875, which he continues to do, so all that is left to happen is for Johnson to accept the money which he has refused to do.

82.     Yet Johnson baselessly contended in the January 2021 lawsuit that Cordtz missed the opportunity to comply with the $9,875 settlement.

83.     In a January 2021 lawsuit against Cordtz, Johnson admitted that these terms were binding when he alleged that "[Johnson's creditor client] made multiple attempts to challenge the default [to Cordtz's Complaint for relief in the form of finding the $9,875 offer binding] and [Cordtz's] allegations [in the Gwinnett County Superior Court] but the [Gwinnett County Superior] Court still entered a default judgment against [Johnson's creditor client] on July 27, 2020, which acted as a revival of the terms of the 2012 alleged written offer [to settle the debt for $9,875]"... A true and accurate copy of Mr. Johnson's admission that there is a binding settlement agreement is attached hereto as **Exhibit "5"**.

84.     Despite the undisputed fact that the debt was settled for $9,875, in the January 2021 lawsuit against Cordtz, Johnson alleged that "There exists a total outstanding balance of $246,162.04, of which includes $197,500.00 due on principal, $672.40 on unpaid interest,

10

$42,752.58 on deferred unpaid interest, and unpaid late fees, due through November 5, 2018, whereas interest continues to accrue at a per diem rate of $44.75." A copy of Mr. Johnson's Complaint is attached hereto as **Exhibit "6"**.

85.    Somehow, Plaintiff came to a grossly increased total less than three (3) months later, on April 8, 2021, when Johnson wrote "Currently, your loan has been accelerated and you owe $327,917.83 in principal and interest." A copy of Mr. Johnson's April 8, 2021 letter is attached hereto as **Exhibit "7"**.

86.    However, because of the revived settlement, the balance on the loan is at most $9,875.

87.    While the April 8, 2021 Letter assuredly, and the January 2021 lawsuit almost certainly, seeks an inflated balance, Johnson is precluded from seeking the $246,162.04 purported balance unless he can provide a reason why an enforceable settlement agreement should not be enforced, and is precluded from seeking more than that balance unless he can provide a compelling reason why the balance increased by more than $80,000 between January and April of this year.

88.    No reason has been provided why the balance sought in the April letter is more than $80,000 more than the amount sought in the January lawsuit.

89.    On May 11 2021, a federal lawsuit was filed against Johnson under the FDCPA by co-defendant Cordtz with me representing him. See **Exhibit "2"**.

90.    I spoke with Mr. Johnson about the FDCPA lawsuit on the phone on May 14, 2021.

91.    Apparently, Mr. Johnson was served with the FDCPA lawsuit on that day.

92.    That was the first time I ever spoke with Mr. Johnson.

93.    The lawsuit alleges that Mr. Johnson initiated a lawsuit in Fulton County in January on this debt seeking $80,000 less than the letter sought three months later. Assuming that the

lawsuit has the correct amount of the debt, as Johnson alleged in the Fulton lawsuit, there is no way that the debt increased by more than $80,000 or 30% in three months. Therefore, demanding $327,917.83 is a false, deceptive *and* misleading representation in connection with the collection of a debt.

94.     Clearly, misrepresenting the amount of the debt by more than $80,000 is falsely representing the character, amount or legal status of the debt.

95.     There is no evidence that the $327,917.83 sought in the letter is allowed by law or expressly authorized by the agreement creating the debt. Just three months earlier, Mr. Johnson claimed that the balance was $80,000 less.

96.     Threatening to bring a lawsuit on a debt arising from a consumer transaction for more than the actual amount of the debt is a threat to take an action that cannot legally be taken.

97.     Additionally, a collection letter from Mr. Johnson dated April 8, 2021 does not provide the notice required by 1692e(11), which is required in each debt collection communication.

98.     On June 2, 2021, Mr. Johnson sent co-defendant Mr. Alembik and I an email with an undated and unsigned draft complaint that is substantially similar, if not identical, to the one he actually filed in the instant case.

99.     In the email he wrote "Before filing, I wanted to give you both an opportunity to see if you wanted to resolve this matter".

100.    After some email correspondence concerning the lawsuit asking for clarification of the claims, Mr. Johnson wrote "I do not know how to be any clearer, and the dismissal of the federal case against me is not negotiable, so if you (or Rick) do not have authority to discuss that with me on behalf of yourselves and Mr. Cordtz, then I am not sure what else we need to say other

than you (and Rick) should put your carrier(s) on notice. I would be happy to do a conference call with all 3 of you to discuss this matter further, however, if you want to do that."

101.     In Exhibit B to the Amended Complaint, Mr. Johnson attaches a letter showing that at the time that he received the Alembik April 15 letter he merely "disagree[d] with the content in the letter".

102.     Far from showing that the April 15 letter gives rise to a $4 million claim based on defamation, negligent and intentional infliction of emotional distress, conspiracy and interference with contractual rights and business relation, Mr. Johnson's own letter shows that on the same day that he received the letter he did not say that the content is false or gives rise to any damages or request a retraction; rather, he stated that he disagreed with the content of that letter.

103.     I did not make any false statements about Mr. Johnson.

104.     I communicated with the US District of the Northern District of Georgia by filing an FDCPA complaint against Mr. Johnson and his law firm.

105.     My Complaint in the federal action is governed by FRCP 8 which governs "General Rules of Pleading".

106.     My Complaint in the federal action is also governed by FRCP 11 which states in part

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

13

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

107.    I did not violate Rule 8 or Rule 11 when I filed the FDCPA Complaint.

108.    Mr. Johnson has filed a motion to dismiss my amended FDCPA complaint under FRCP 12, yet he has not filed a motion for sanctions under FRCP 11, even though the Rules explicitly permit him doing so, if he follows the proper procedure for the same.

109.    Mr. Johnson has instead filed a motion to dismiss claiming that he is not subject to the FDCPA because he is not a debt collector that is subject to the Act.

110.    Notably, this argument avoids him having to show that the substantive facts of the allegations in the April 15, 2021 letter are false.

111.    In support of Mr. Johnson's argument that he is not a debt collector he argues for an interpretation of the FDCPA that supports his position but does not claim that an alternative interpretation of the FDCPA that would find him subject to the FDCPA is baseless.

112.    Mr. Johnson does not dispute the statement made in opposition to the motion to Dismiss, Page 2 and 3 of 57, that "the FDCPA imposes some constraints on a lawyer's advocacy on behalf of [his] client … a debt-collect[or] advancing the interests of his client [is required] to fulfill his equally solemn duty to comply with the law. *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1306 (11th Cir. 2015) quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 600, 130 S.Ct. 1605, 1622, 176 L.Ed.2d 519 (2010).

14

113.    Mr. Johnson does not dispute that he violated the FDCPA by filing a lawsuit in the Fulton county when he made "false statements concerning the ownership of the note and the ability to enforce the note" by stating that one entity owned the debt when it actually didn't.

114.    Mr. Johnson also does not dispute that he communicated with a represented party even though the FDCPA prohibits communicating with a consumer who is represented by an attorney with certain exceptions not applicable here.

115.    I acted in good faith concerning Mr. Johnson.

116.    I simply wanted to assert my client's rights under the consumer protection law, the FDCPA, because I felt that he was subjected to violations of his federal statutory rights.

117.    I did not discuss Mr. Johnson's debt collection activity with anyone but Mr. Alembik who asked me for my opinion about whether Mr. Johnson's conduct violated the FDCPA.

118.    My opinion is that Mr. Johnson violated the FDCPA and I have in good faith tried to do my job in initiating and continuing Mr. Cordtz's FDCPA case.

119.    While I expected Mr. Johnson to deny that he violated the FDCPA, I did not expect Mr. Johnson to claim that I defamed him, inflicted emotional distress, committed a conspiracy and tortiously interfered with his contractual and business relations.

120.    I never met Mr. Johnson in person, never shook his hand, and I did not cause him physical injury.

15

121.   I only filed a run of the mill FDCPA consumer protection lawsuit in federal court in good faith.

122.   There is nothing extreme or outrageous about the FDCPA complaint as the FDCPA is a strict liability statute and any violation, whether intentional or not, gives rise to liability.

123.   Mr. Johnson has not described any emotional distress with particularity and certainly not severe emotional distress.

124.   I believe that Mr. Johnson is confusing his displeasure with the pending FDCPA lawsuit and his frustration over trouble in attempting to collect a debt for severe emotional distress.

125.   I did not act in concert in any way to defame Mr. Johnson as I was not responsible for the letter sent by Mr. Alembik nor am I aware of any defamatory statements.

126.   I took no improper actions towards Mr. Johnson.

127.   I engaged in no wrongful conduct towards Mr. Johnson.

128.   I did not intend to injure Mr. Johnson and I did not act with malice in any action related to Mr. Johnson.

129.   The Amended Complaint does not allege that I induced a breach of any contract between Mr. Johnson and a third party.

130.   The Amended Complaint does not allege that any third party failed to enter into an anticipated relationship with Mr. Johnson.

131.   There is no allegation in the Amended Complaint that my conduct was the proximate cause in damaging Mr. Johnson.

132.    There is no allegation in the Amended Complaint that any action taken by and Defendant has damaged him in any way.

133,    There is no allegation in the Amended Complaint that any statement made by any Defendant impugned Plaintiff as an attorney.


Signed this  5  day of October, at  Atlanta  , Georgia.


_____
SHIMSHON WEXLER


Sworn to and subscribed before me
this  5  day of October, 2021.

_____
Notary Public



17