

**FCI Lender Services, Inc.**
Loan Servicing • Specialty Servicing • Default
800-931-2424  (714) 282-2424  Fax: 714-282-5775

# SPECIALTY LOAN SERVICING AGREEMENT
(Limited Collection Servicing Program)

Loan Account: **See Addendum**              Lender Account: ▉

| Borrower | Lender |
|---|---|
| See Addendum | APG Holdings Revocable Trust |

This Specialty Loan Servicing Agreement (the "Agreement") is dated **03/01/2018** and is entered into by and between FCI Lender Services, Inc., a California corporation licensed as a Real Estate Broker by the California Bureau of Real Estate ("Servicer"), and the Lender(s), or Obligee(s) whose signature(s) appear below and in counterparts to this Agreement (collectively, "Client").

Servicer is the servicing agent ("Servicing Agent") for the Client with respect to any obligations performed or undertaken pursuant to this Agreement. Servicer is acting as a sub-servicer wherein control of servicing decisions lies with the Client, Client is the lender, originator, owner of a partial or entire interest, holder, obligee, landlord, or transferee of certain promissory notes or other written contractual obligations (collectively the "Notes") which may be secured by Deeds of Trust (the "Deeds of Trust"), mortgages (the "Mortgages), or other security instruments ("Security Instrument"), including the loan account number and Borrower referenced above and/or referenced in attached exhibit listing Loans subject to this agreement, if more than one Note, for its own account, or private and institutional investors or lenders (collectively "Lenders") and is duly licensed as a mortgage broker or other entity, license number _____ or is exempt from licensure in the state which laws govern the Notes. Client understands and agrees that Servicer may have additional agreements including sub servicing or fee arrangements with other Obligees, brokers ("Brokers") or other entities related to the Notes and Security Instruments comprising the loans (the "Loans") subject to this Agreement, but any such agreements will have no effect on the servicing of the Loans under this Agreement. Client hereby authorizes and instructs Servicer, and Servicer agrees to service the Loans subject to the terms of this Agreement, and in that connection, to do the following:

**1.0   Scope.** Client retains Servicer as Client's agent to employ commercially reasonable and prudent practices to collect all scheduled payments on all Loans subject to this Agreement including the enforcement of specific Lenders' rights of processing demands, processing or coordinating foreclosures, and prepare, execute and record reconveyances/releases and Substitution of Trustee on behalf of Client. At time of Loan boarding with Servicer or immediately upon request of Servicer, Client must supply to Servicer all available relevant documents of the Loan file including, but not limited to Notes, Deed/Mortgages, Modification Agreements, Forbearance Agreements, Assignments or any other document effecting condition of title or payment distribution and showing the correct Beneficiary, needed by Servicer to complete its tasks, including but not limited to, file setup, servicing functions, and to satisfy regulatory requirements, before servicing functions will be performed, continued, or funds distributed. Client must supply to Servicer immediately upon request any information or documentation needed by Servicer to satisfy any State, Federal or similar audit requests, or needed to respond to any legal actions. Upon any occurrence that could impact servicing functions, including but not limited to, Assignment of Beneficial Interest, modification of Loan terms, Client must notify Servicer immediately of such occurrence and provide copies of relevant documents before servicing functions will be performed, continued, or funds distributed. Servicer shall follow instructions from Client if Client is majority owner of Loans, and/or from originating Broker in accordance with a Master Servicing Agreement with such originating Broker, unless directed in writing or by email by Client otherwise. If the Loan is owned by multiple Lenders (a "Multi-Lender Loan"), Servicer shall attempt to consult with all Lenders but shall follow instructions Majority. A Majority is determined by 51% or more ownership of the Note. A default upon any interest in the Note shall constitute a default upon all interests. The Majority may determine and direct the actions to be taken on behalf of all Lenders in the event of default or with respect to other matters requiring the direction or approval of Lenders, including but not limited to, designation of brokers, servicing agents or others acting on their behalf and the sale, encumbrance or lease of any real or personal properties which may be owned by Lenders as the result of foreclosure or receipt of a deed in lieu of foreclosure, or modification or forbearance of the Loans. Servicer shall consult with Client, Majority, and/or originating Broker, as the case may be, on non-routine collection matters. Servicer shall not, however, enter into any modification or forbearance of the Loans with any borrower without the express written permission of the Lenders (or a Majority of Lenders in a Multi-Lender Loan).

**1.1   Analyzed Trust Account Disclosure.** Client authorizes Servicer to deposit all funds received in connection with this Agreement into an analyzed trust account at an FDIC insured bank. The analyzed trust account accrues credits that are used to offset bank service charges assessed to Servicer, which provides a financial benefit to Servicer. Any unused credits not used to offset bank service charges will not benefit Client in any manner.

**1.2   Duties and Responsibilities.** All of Servicer's duties are specified within this Agreement. If the duty is not specifically addressed within this Agreement, Servicer has not undertaken the particular duty. Duties and functions not specified in this Agreement are the responsibility of the Client.

**1.3   Required Documentation and Information.** Client or Client's designee must notify servicer in writing or by email of any change in status of Loan at the time of change in status, including but not limited to foreclosure proceedings, bankruptcy, payoff or sale of Loan. Client or Client's designee must provide to Servicer copies of any documents, or information not in Servicer's possession, and required by Servicer to respond to, or satisfy any regulatory, State, Federal, licensing, foreclosure, audit, legal action or similar requests. Any costs, including but not limited to,

Loan Account: See Addendum                9 Pages Total                Servicer initial: TOS   Client initial: ___
Limited Servicing Agreement - 20170901
FCI • PO BOX 27370 • Anaheim • CA 92809-0112 • NMLS#4920 • BRE 01022780 • www.trustfci.com
24

fines, attorney fees, and court costs incurred as a result of Client or Client's designee not timely notifying Servicer and supplying requested or required documents or information will be paid by Client or Client's designee.

**2.0** <u>Term and Termination.</u> This Agreement shall begin on the date set forth above. The appointment of Servicer as Servicing Agent hereunder shall continue until each Loan is paid in full, servicing is transferred, or 30 days after either party to this Agreement gives written notice or email notice to the other of its intent to terminate this Agreement, at which time all servicing responsibility will be transferred from Servicer to Client or Client's designee. On an individual Loan basis, this Agreement shall terminate as to that Loan when any of these events occur: (a) payment in full of the Loan and reconveyance of the related Security Instrument securing the related Loan; (b) 30 days' written notice by Servicer to Client; (c) 30 days' written notice by Client to Servicer (unless a shorter period of time is permitted under certain circumstances as provided in this Agreement or applicable law), or (d) recordation of a Trustee's Deed or Sheriff's Deed following a foreclosure of the Loan. All rights and authority under this Agreement shall continue upon written authorization by the Client for Servicer to handle the property management and property liquidation resulting from foreclosure.

When Loans are purchased or transferred, transferee ("Purchaser") shall be entitled to all payments of principal and interest and all other funds or recoveries on the Loans received or receivable by Client as seller ("Seller") and/or Purchaser on and after the related Closing Date (regardless of when due), and Seller agrees that it will transfer all such amounts received by Seller to Purchaser within ten (10) Business Days after receipt thereof. Principal prepayments received by Seller on or before the Closing Date shall belong to Seller only to the extent that such principal prepayment was not included in the amount set forth in the Loan Schedule as the Cut-Off Date Principal Balance.

**2.1** Upon termination of this Agreement in its entirety or as to any one Loan, Servicer shall deliver to Client all of Client's funds, an appropriate accounting and all necessary documentation. At termination of all Loans or a terminated Loan, Client shall reimburse Servicer for any outstanding advances made pursuant to paragraph 4.0 within twenty (20) days upon written demand by Servicer to Client.

**2.2** If Client terminates or requests that Servicer transfer servicing on any of the Loans subject to this Agreement to another servicer or other entity (the "Transferee Servicer"), Client must first pay in full all servicing and related fees due Servicer under this Agreement, as well as a $90 per Loan Servicing Termination/Transfer fee (collectively, the " Termination Fees"). After all Termination Fees have been received by Servicer, then Servicer will create and send the corresponding RESPA "Goodbye Letters" and Master Reports and will transfer Escrow/Impound accounts, if any, to Transferee Servicer. Client will provide documentation to Servicer evidencing the fact that the Transferee Servicer has all requisite licensing to service loans and/or other obligations. In the event that Servicer determines in its sole discretion that the intended Transferee Servicer is not licensed in accordance with applicable state and/or federal law, Servicer has the right to refuse to transfer the files to the Transferee Servicer but will instead transfer the files to the Client directly. Client agrees to indemnify Servicer for any and all claims, damages, costs, expenses, suits, actions, causes of action, losses, debts and/or other liabilities, including, without limitation, attorneys' fees and costs resulting from the transfer of the servicing to: (a) Client; (b) the Transferee Servicer; and/or (c) Client but with a subsequent or simultaneous transfer to the Transferee Servicer. Additional requests may be subject to customary and reasonable additional charges. If any Loan being serviced by Servicer is government regulated, such as an existing HAMP loan, then Servicer will only transfer beneficial interest in the Loan and/or servicing to a Lender and/or servicer meeting the regulatory requirements. Servicer's compensation in any area is subject to change upon 30 days written notice to Client; Client may avoid changes by terminating this Agreement in writing at any time during said 30 day period, and Client shall not be liable for the foregoing transfer fee. **Invoices to Client for services provided by Servicer, or arranged through Servicer, are due upon receipt and payable within 20 days, after which time they will be considered delinquent and subject to a 10% past due charge; provided, however, that if Client disputes any amounts reflected in such invoices, Client and Servicer agree to work together in good faith to resolve such disputes. If Client's account becomes delinquent, all activities of Servicer on behalf of Client may cease.**

**2.3** <u>Servicers Right of Interpretation.</u> In accordance with various and changing State and/or Federal Laws, State and/or Federal Case Law, and Servicer's interpretation of such laws, proper procedures and risks, Servicer reserves the right to: (a) determine how advances and/or late charges are assessed and to adjust all unpaid late charges or assessments of late charges accordingly; (b) apply the default interest rate only after the foreclosure has been recorded on owner occupied Loans; or (c) determine the interpretation and application of other terms and conditions of the Note. Servicer shall notify Client in writing or by email of such changes within 20 days of implementation. By continuing to hire Servicer to service the Loan, Client agrees that Servicer may decline to enforce certain provisions of the Note as noted above. By declining enforcement of certain provisions, Servicer may effectively waive those provisions on behalf of Client. Client agrees to such waiver by continual hire of Servicer and shall have no cause of action against Servicer due to Servicer's determination not to act in accordance with this section.

If Servicer determines that a Loan is predatory in nature, or the Loan does not comply with federal or state requirements, or at any time during servicing of the Loan becomes predatory in nature or does not comply with federal or state requirements, Servicer can refuse to accept the Loan for servicing or can cancel any existing servicing or functions by Servicer related to the Loan as provided above by giving thirty (30) day's written notice. Servicer reserves the right not to pursue or continue any foreclosure on any asset it services if Servicer reasonably believes that foreclosure, or the terms and conditions provided or established by Client, will violate state or federal law or company policy.

**2.4** <u>Fund Accounts.</u> Servicer shall not: (a) commingle Servicer's assets with Lender's or Borrower's payments. All Lender and Borrower funds will be held in a segregated, monthly reconciled, quarterly audited, non-interest bearing trust account.

**2.5** <u>Servicer Notices and Audit.</u> Servicer as servicing agent for notes or interest sold pursuant to California Business and Professions Code 10238, upon which payments due during any period of three consecutive months in the aggregate exceed one hundred twenty-five thousand dollars ($125,000) or the number of persons entitled to the payments exceeds 120, Servicer shall file the notice required by subdivision (a) with the commissioner within 30 days after becoming the servicing agent. Said Servicer is required to have all trust accounts audited by a CPA and those results forwarded to the California Department of Real Estate.

**3.0    Loan Documents.**  Client or its custodian shall retain custody of the original Note and Deed of Trust or Mortgage for the Loans (or assignment thereof), unless Servicer is specifically authorized by Client and agrees to retain such documentation.  If Servicer is to maintain custody of the original Note and Security Instruments for the Loans (or assignment thereof), there will be an additional housing fee of $250 per Loan per year.

**4.0    Protective Advances.**  Client or Lender may make such advances as approved by the Majority or, if Client is the only owner of the Loans, such advances that are necessary and prudent to protect and to collect Client's interest in the Loans.  If the Loan is a Multi-Lender Loan, and Client fails to make advances approved by the Majority, other owners of the Loan are authorized to advance the amount Client failed to advance and to receive payment in full before any further payments to Client. Client must immediately notify Servicer in writing or by email of any such advances. As a normal course of business, Servicer will not advance any funds on Client's behalf and Servicer hereby agrees to and shall obtain Client's prior written or emailed approval before incurring any financial obligations on behalf of Client.

**5.0    LIMITED COLLECTION PROGRAM Specific Functions.**  Servicer shall in accordance with industry standards and applicable laws, rules and regulations:  (a) issue periodic payment statements in accordance with the terms of the Note for each Loan directing Loan repayment to Servicer; (b) issue Late Notices calculating in any late fees due; (c) issue Final Notices warning of the possibility of foreclosure if payment is not received; (d) handle inbound phone calls to assist borrower in making proper contact with Client or Client's designee; (e) make one outgoing phone call to borrower introducing Servicer and notifying borrower that Client is the new owner of the Loan and that borrower should contact Client or their designee, using the Client's given contact information, to discuss Loan workout options; (f) issue payoff demands, beneficiary statements and mortgage ratings; (g) demand, receive and collect all Loan payments, deposit them immediately or by the next business day into Servicer's trust account maintained in accordance with California BCP 10238(k) within the provisions for trust accounts of licensed real estate brokers, and upon sufficient time to clear funds, transfer by bank wire, ACH, or check Lender's and/or Client's share of such funds (net proceeds) in accordance with instructions provided to Servicer, normally within 10 days of receipt or upon sufficient time to clear funds (but not more than three (3) business days from the time funds have been cleared, unless disputed by any related party); (h) issue annual income tax statements (1098 and 1099-INT) to all borrowers and Lenders as determined by Servicer to be required; (i) execute and deliver on Client's behalf and in Client's name any documents necessary or convenient for the exercise of any rights or duties which Client may have as servicing agent under the Security Instruments, including but not limited to preparing and issuing Request for Reconveyance or Release, recording a Full or Partial Reconveyance or Release and Beneficiary Statements; (j) convey Payoff Demands within three business day of receipt by Servicer to Client for written or email approval, and if Client's written or email approval is not received by Servicer within the following two business days, Servicer shall possess the right to assume the Payoff Demand to be correct and accept it; (k) upon receipt of funds sufficient to satisfy the Payoff in accordance with Servicer's payoff demand statement, Servicer is authorized to prepare the Full or Partial Reconveyance or Release and coordinate recording of such; and (l) if Servicer receives any notices from any party related to insurance, taxes, foreclosure or other like legal notices with respect to any Loan, Servicer shall make a reasonable effort to deliver a copy of such notice to Client within 5 business days, and Servicer is not responsible for the consequences of non-delivery of such notices.  **Client understands that Client or its designee is responsible for active collection efforts including outgoing collection calls, skip trace, borrower negotiations, letters of understanding, loan modifications, forbearance agreements, short pay negotiations, short sale coordination, property management, evictions, and bankruptcy tracking.  On a national basis, excluding California, Client understands that Servicer has the exclusive right to coordinate all foreclosures within its attorney network, or with the Client's attorney if approved by Servicer, and Client can never start or coordinate a foreclosure on any Loan in Servicer's servicing.  Client must give Servicer exclusive right to coordinate all California real estate related foreclosures with respect to such Loans, and failure to comply could result in cancellation of Loan servicing by Servicer on specified Loans or on all Loans, at Servicer's discretion.**.  Foreclosure fees shall not exceed state statute for foreclosure fees.  Administrative fees and/or deposits are required from Client in order for Servicer to coordinate the initiation of foreclosures.   When Loans submitted as delinquent are brought current, fees on those loans will be charged according to the Standard Loan Servicing Program (Basic Performing) fee schedule, which has a $15 base monthly servicing fee.

**6.0    LIMITED COLLECTION PROGRAM Compensation.**  For its services, Servicer shall earn a monthly servicing fee on each Loan in the Servicer's system of $15 per Loan that is not in foreclosure coordination, or an additional $30 now $45 base) per Loan that is in foreclosure coordination by Servicer, for one Lender plus $15 per month per additional Lender, billed equally to Lenders or to Client as agreed; Servicer will be entitled to an additional $5 per month per Lender for a HELOC or Variable Loan;  Loans over $1,000,000 unpaid principal balance are subject to an additional servicing fee of $20 per million or portion thereof per month (for example a $3,000,000 Loan not in foreclosure coordination would be $15 + $20 + $20 = $55 per month). There is a one time Loan Setup and File Scrubbing Fee of $55 per fixed rate, single Lender, non escrow/impounded Loan, reduced to $30 per such Loan if 10 or more such Loans are submitted at one time, plus $10 per Lender over one Lender, plus $5 per Loan for ARM or HELOC, plus $15 per Loan for escrow/impounds, or $150 per active Bankruptcy or Forbearance Plan Loan that is to be included before setup. Servicer shall be entitled to a $55 administration fee for resetting a Loan due to Assignment, disbursement, draw, modification, program change or similar situation, reduced to $30 per Loan if 10 or more Loans are reset at one time.   Servicer will retain:  (a) 50% of paid monthly late charges on Loans to $500,000, 25% of paid monthly late charges on Loans $500,000 to $2,000,000, 15% of paid monthly late charges on Loans over $2,000,000; (b) all fees for payoff demand statements and related documents, and returned check charges, if applicable; (c) 100% of the standard monthly loan servicing fee based on each and every Loan as long as the Loan is in Servicer's servicing system, including during the foreclosure process, bankruptcy relief, and payment process.  The monthly servicing fee earned by Servicer and all hard costs incurred in the normal transaction of business, including but not limited to actual attorney's fees, foreclosure costs, property valuations, title fees, property preservation costs, municipal charges, taxes, and agent fees may be deducted from Client or Lender's proceeds, deducted from an established expense Reserve Account, or may be billed separately, as determined by Servicer.  All hard costs in excess of $100 must be approved by Client in writing, or by email, before being incurred by Servicer. Extraordinary activity and special requests, as reasonably determined by Servicer, are subject to an additional charge of $150 per hour, or portion thereof for staff time, and $350 per hour, or portion thereof for management time.  Loans defined as High Cost Mortgage Loans (HCL) or as Higher Priced Mortgage Loans (HPML) under governing law may be subject to additional fees and costs charged to the Client.  Servicer's compensation is subject to change upon 30 days written notice to Client; Client and Lenders may avoid changes by terminating this Agreement in writing at any time during said 30 day period.  Fees for certain documents and services, if available, will be charged according to the General Fee Schedule listed on www.trustfci.com .

**6.1    Regulatory Compliance Action Compensation.**  If the Loan is secured by a consumer primary residential property that is subject to the Dodd Frank Final Rules and the Loan is considered current (i.e. current within 25 days of the payment due date):  (a) In the event the Loan becomes

Loan Account: See Addendum                      9 Pages Total                Servicer initial: TCS   Client initial: _____
Limited Servicing Agreement - 20170901
FCI • PO BOX 27370 • Anaheim • CA 92809-0112• NMLS#4920 • BRE 01022780 • www.trustfci.com

25 days delinquent, in order for Servicer to fulfill additional servicing requirements, there will be an additional $20 per month per Loan charged for collection services for two months; (b) if Client has notified Servicer that it offers any Foreclosure Prevention Alternatives ("FPA") to the Borrower, and in the event the FPA services must be provided by Servicer to Borrower, then Client will be charged Servicer's current fees for providing the services offered to the Borrower.

7.0     **This section intentionally left blank.**

8.0     **This section intentionally left blank.**

9.0     **Optional ESCROW/IMPOUNDS SERVICE.** To the extent required by the Loan documents, Servicer can provide the following property insurance, property tax and other entity service for first position Loans for $15 per Loan per month for two entities, add $2.50 per Loan per month per entity over two entities. This fee will be added to the monthly loan servicing fee and prorated to the respective Lenders.

If this optional service is requested in writing or by email by Client and accepted in writing or by email by Servicer, and if all required information is supplied per the FCI Loan Servicing Checklist at setup, and associated fees are paid, when the Borrower's monthly payment includes amounts for the payment of insurance and/or property taxes, Servicer will collect and hold those proceeds in a trust account insured by the Federal Deposit Insurance Corporation and disburse the scheduled payments to the respective authority as scheduled. Any funds remaining in the account after full repayment of the Loan shall be released to the Borrower. Servicer accepts no responsibility for the consequences of incorrect information supplied by Client or Lender. Client is responsible to continually provide Servicer with property tax bills and/or insurance renewals for payment from the escrow/impound account, as requested by Servicer. Servicer is not responsible for the consequences of any non-payment of insurance, property taxes or other escrow/impound entities. If any interest on the balances aggregated is required by applicable law to be paid to the Borrower for impounding Borrower's monies, Client will be responsible to pay such interest on demand by Servicer. If a Borrower's escrow/impound funds are insufficient to pay insurance, property taxes, or other escrow/impound items, Client shall immediately advance to Servicer's escrow/impound account funds sufficient to cover the shortage upon Servicer's request; if the Loan is secured by a Borrower's primary residential property that is subject to the Dodd Frank Final Rules, and if funds are required to be advanced by Servicer to maintain insurance, as determined by Servicer's understanding of the Final Rules, then Client must immediately advance such required funds to Servicer upon request; Client's failure to do so may jeopardize Client's lien position due to the failure of insurance and/or property taxes, and Servicer accepts no responsibility for Client's failure to make such an advance provided such failure was not the result of an act or omission of Servicer or its agents, employees or vendors. If funds requested by Servicer to cover escrow/impound shortages for a specific Loan are not paid by Client within 10 business days of written or emailed request, then $10 will be added to the monthly servicing fee for that Loan to cover tracking and reporting. Servicer will attempt to identify all notices received by Servicer regarding delinquent property taxes, lien notices and/or insurance cancellations on Loans that are escrowed/impounded for property taxes and/or insurance. In the event Servicer is unable to associate any notice received on an active escrow/impound loan being serviced, Servicer will not be held liable by Client for any subsequent damage, loss, or hardship, etc. sustained by Clients absence of notification. Client will absorb all responsibility and release Servicer of all liability for any notification received on any previously serviced or inactive Loan serviced by Servicer.

9.1     **Insurance and Property Taxes.** If the Borrower's monthly payment does not include amounts for the payment of insurance and/or property taxes, it is the responsibility of the Client to: a) have Client's name and address listed as mortgagee on all insurance policies and verify insurance coverage annually or use an Insurance Servicer. Servicer should not receive any notice(s) of insurance notification including but not limited to policy changes, delinquencies, cancellations, or other insurance related information. In the event, Servicer does receive such information, Servicer may forward, but is not required to forward, such notification to Client. Servicer is not responsible for the consequences of any non-payment of insurance or insurance cancellation on loans that are not escrowed/impounded for insurance; b) check on status for payment of property taxes annually or use a Property Tax Service. Client should make sure the local tax jurisdiction has Client on record as the lienholder. Servicer should not receive any notice(s) of property tax notification including but not limited to ownership changes, delinquencies, lien notifications, property tax sales, or other property tax related information. In the event, Servicer does receive such information, Servicer may forward, but is not required to forward, such notification to Client. Servicer is not responsible for the consequences of any non-payment of property taxes. Servicer accepts no responsibility for the consequences of incorrect information supplied by Client.

9.2     **Insurance Claim (Loss Draft).** Client is responsible for managing any and all Insurance Claim(s) (Loss Draft) that may arise from property damage. Client shall work directly with the consumer to manage any necessary repairs and manage the release of all claim funds. Servicer will not manage any such claims and will not hold funds on behalf of the Client.

10.0    **No Additional Obligations of Servicer.** Client acknowledges that Servicer has no obligation, other than described elsewhere in this Agreement, to make any payment (other than the forwarding of a borrower's payment) to or on behalf of Client, to senior liens or to otherwise protect or enforce the Client's security or rights hereunder. In the event any payment collected for the benefit of Client is returned NSF or uncollectible in Servicer's Trust Account, Client will immediately upon notification from Servicer, return Servicer's uncashed Trust Check, or immediately reimburse Servicer's Trust Account the full amount received from Servicer's Trust Check. In no event is Servicer obligated to cover or make good Borrower's shortages in Servicer's Trust Account. Servicer is hereby authorized to place a "Stop Payment" on Client's Trust Check from Servicer, or reverse any ACH (Electronic Funds Transfer) whenever the representing funds are returned NSF or uncollectible in Servicer's Trust Account. Servicer may deduct such amounts from any proceeds due Lenders. Servicer is not liable for any losses related to Loan adjustments from variable rate, HELOC, or other similar type Loans, or changes in Loan terms due to modification unless notified in writing by the Client or Lender of the adjustment. Servicer does not offer senior lien monitoring, but can refer Client to an independent service provider. Client is responsible on junior liens for verifying insurance coverage and tax payments with senior liens. It is the responsibility of the Client to track maturity dates and, if desired, request Servicer to prepare a Maturity Notice to the Borrower for a fee. Changes shall become effective no sooner than two weeks after this notification is received by Servicer. It is the responsibility of the Client or Lender to periodically monitor Loan Data, Borrower payments and servicing activity by using the Servicer's web Customer Login at www.trustfci.com, or by reading the monthly report sent by Servicer. If Client requires or requests additional

Loan Account: See Addendum          9 Pages Total          Servicer initial: TCS    Client initial: BF
Limited Servicing Agreement - 20170901      27
FCI • PO BOX 27370 • Anaheim • CA 92809-0112 • NMLS#4920 • BRE 01022780 • www.trustfci.com

reporting beyond what is provided by Servicer using its standard reporting and web login, there will be additional reasonable charges for setup, custom report templates, programming, maintenance, and regular distribution of such information.

**10.1** **Notice of Change of Loan Status by Lender.** Client or Client's designee must notify Servicer promptly, in writing, of any "change in status" of Client's Loans. Change in status includes, but is not limited to, sale of the Loan by Client, commencement of judicial or non-Judicial foreclosure, completion of a foreclosure sale, loan modification, bankruptcy filing by borrower, or change in bankruptcy status. Client or Client's designee shall immediately supply supporting documentation and/or information regarding such change in status to Servicer, whenever such change in status was initiated or handled by someone other than Servicer. Client or their designate, if other than Servicer, that initiated or handled any of the above mentioned change of status items must be aware of, and comply with any related State or Federal compliance requirements.

**11.0** **Indemnification.** Servicer shall indemnify, defend and hold Client and its officers, employees, representatives, members, directors, parent companies, affiliates, subsidiaries, successors and assigns harmless from any and all claims, demands, causes of action, losses, damage, fines, penalties, liabilities, costs and expenses, including reasonable attorney's fees and court costs, sustained or incurred by Client by reason of or arising directly from third party claims that were caused by or resulted from (a) any actions or omission by Servicer, Servicer's sub servicers, contractors, or agents, that are outside the scope of its authority hereunder except to the extent Client has approved of the action in writing that was outside the scope of its authority and/or (b) taking any action, or refraining from taking any action, with respect to any Loan or property, by Servicer, Servicer's sub servicers, contractors, or agents, that results from the malfeasance, willful misconduct, gross negligence, breach of this Agreement or a failure by Servicer to act in compliance with the terms of this Agreement. The foregoing indemnification shall survive the termination of this Agreement.

Client shall indemnify, defend and hold Servicer and its officers, employees, representatives, members, directors, parent companies, affiliates, subsidiaries, successors and assigns harmless from any and all claims, demands, causes of action, losses, damage, fines, penalties, liabilities, costs and expenses, including but not limited to reasonable attorney's fees and court costs, sustained or incurred by Servicer by reason of or arising directly from third party claims or actions that were caused by or resulted from but not limited to (a) any actions or omissions in respect of any Loan or property of any prior servicer, sub-servicer, owner or originator of a Loan or property, and/or (b) taking any action, or refraining from taking any action, with respect to any Loan or property, that results from the malfeasance, willful misconduct or gross negligence of Client, Client's sub servicers, contractors, or agents, or from the failure of the Client to provide Servicer the necessary Loan documents and authorizations in order to allow Servicer sufficient time to timely process satisfactions, payoffs and releases, and/or (c) any and all liability related to the information provided by Client and contained herein or provided separately by Client, and the accuracy of such information. The foregoing indemnification shall survive the termination of this Agreement.

**12.0** **Licenses.** Servicer represents and warrants to Client that it, any agent, employee, or any vendor hired by Servicer, holds all required and applicable federal, state and/or local licenses, certificates and other permits as may be necessary to conduct the activities required by its engagement and this Agreement and that the Servicer's performance of such services will not conflict with or violate any applicable agreement, law or regulation applicable to the Servicer. Servicer further represents and warrants to Client that it is and will continue to be in compliance with all applicable federal, state and local laws, ordinances and regulations pertaining to its business. Servicer further represents and warrants to Client that it is not subject to any court or administrative judgments, orders, injunctions and/or rulings which would have an adverse effect on its ability to service the Loans and perform under this Agreement. Servicer further represents and warrants to Client that neither the Servicer nor any of its directors, officers or principals have been sued by any of the Servicer's present or former clients, partners, co-venturers or other persons and that the Servicer is not involved in any litigation which if resolved adversely to the Servicer would negatively impact its ability to perform its obligations hereunder. Client represents and warrants to Servicer that it, any agent, employee, or any vendor hired by Client, holds all required and applicable federal, state and/or local licenses, certificates and other permits as may be necessary to conduct the activities required for Client to receive payments and proceeds collected by Servicer.

**12.1** **Data.** Servicer shall maintain (i) off site backup storage for the data files used in connection with the services provided under this Agreement and (ii) customary security to protect client's proprietary information.

**13.0** **Independent Contractor.** At all times during the term of this Agreement, Servicer shall be an independent contractor and not an employee of Client. Client shall have the right to control Servicer only pursuant to this Agreement. Client shall not have the right to control the means by which Servicer accomplishes its services and duties pursuant to this Agreement. Servicer shall, at its sole cost and expense, furnish all facilities, materials and equipment that may be required for furnishing services pursuant to this Agreement.

**14.0** **Servicer Not Agent.** Except as otherwise provided herein or as Client may specify in writing, Servicer shall have no authority, express or implied, to act on behalf of Client in any capacity whatsoever as an agent. Servicer shall have no authority, express or implied, to bind Client to any obligation whatsoever.

**15.0** **Assignment or Subcontracting.** No assignment or subcontracting by Servicer of any of its obligations under this Agreement or of funds to be received under this Agreement shall be of any force or effect unless the assignment or subcontract has had the prior written approval of Client. Except as otherwise provided herein or as Client may specify in writing, Client may terminate this Agreement rather than accept any proposed assignment or subcontracting and Client shall not be liable for any transfer fee.

**16.0** **Equal Employment Opportunity.** During the performance of this Agreement, Servicer agrees as follows:

a. Servicer shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin or mental or physical disability. Servicer shall ensure that applicants are employed and that employees are treated during employment without regard to their race, color, religion, sex, national origin, or mental or physical disability. Such actions shall include, but not be limited to the following: employment upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other

Loan Account: See Addendum   9 Pages Total   Servicer initial: TCS   Client initial: _____

forms of compensation and selection for training, including apprenticeship. Servicer agrees to post in conspicuous places, available to employees and applicants for employment, a notice setting forth provisions of this non-discrimination clause.

b.  Servicer shall, in all solicitations and advertisements for employees placed by, or on behalf of Servicer, state that all qualified applicants will receive consideration for employment without regard to their race, color, religion, sex, national origin, or mental or physical disability.

c.  Servicer shall cause the foregoing paragraphs (a) and (b) to be inserted in all subcontracts for any work covered by this Agreement, provided that the foregoing provisions shall not apply to subcontracts for standard commercial supplies or raw materials.

**17.0  Conflicts of Interest.**  Servicer agrees that it shall not make, participate in the making, or in any way attempt to use its position to influence any decision of Client in which Servicer knows or has reason to know that Servicer, its officers, partners, or employees have a financial interest as defined in Section 87103 of the Government Code.

**18.0  Insurance.**

a.  Servicer shall carry workers compensation insurance as required by law for the protection of its employees during the progress of the work. The insurer shall waive its rights to subrogation against Client and Lenders, their officers, agents and employees and shall issue a certificate to the policy evidencing same upon request.

b.  Servicer shall maintain during the life of this Agreement: (a) Errors and Omissions insurance of $3 million per occurrence with a $3 million aggregate; (b) General Liability insurance of $2 million per occurrence with a $4 million aggregate; (c) Fidelity Bond of $500,000.

c.  Servicer shall promptly notify the Client if any required insurance lapses or is otherwise modified and cease performance of this Agreement unless otherwise directed by the Client. In such case, the Client may procure insurance or self insure the risk and charge Servicer for such costs and any and all damages resulting therefrom, by way of set-off from any sums owed Servicer.

**19.0  Audit of Records.**  In accordance with generally accepted accounting principles and industry standards, Servicer shall maintain reasonably full and complete records of the cost of and completion of services performed under this Agreement. During the term of this Agreement and for a period of two years after termination or completion of this Agreement, Client shall have the right to inspect and/or audit Servicer's records pertaining to the performance of this Agreement at Servicer's office. Servicer agrees to make available all records for inspection or audit at it offices during normal business hours and upon seven (7) days notice from Client.

**20.0  Compliance with all Laws.**  Servicer shall be knowledgeable of and comply with all local, state and federal laws, rules and regulations that may apply to the performance of this Agreement.

**21.0  Governing Law.**  This Agreement shall be construed in accordance with and governed by the laws of the State of California and Servicer and Client agree to submit to the jurisdiction of California courts sitting in the County of Orange.

**22.0  Waiver of Breach.**  Any waiver by any party or a breach of any provision of this Agreement shall be in writing and will not operate as or be construed to be a waiver of any other breach of such provision or any other provision of this Agreement will not be considered a waiver or deprive any party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement. In addition, in granting any waiver, the waiving party will exercise its best efforts to ensure that all Parties continue to have substantially equivalent rights, benefits, privileges, duties and responsibilities.

**23.0  Confidentiality and Soliciting Borrowers or Investors**.  The Servicer acknowledges and agrees that Client and its affiliates possess and will possess information, whether or not in writing or other tangible form, that is disclosed to or learned by Servicer as a consequence of or through performance of the services, whether or not related to the Servicer's specific work that is important to Client's business (including the names and addresses of the Client's and its affiliates' investors and borrowers) ("Proprietary Information"). Servicer agrees that (a) such Proprietary Information constitute trade secrets of the Client, (b) all Proprietary Information shall be the sole property of Client (or its affiliates, as applicable) and (c) the sale, unauthorized use, or disclosure of any Proprietary Information or other trade secrets obtained by the Servicer during or after the term of this Agreement constitutes unfair competition and an unauthorized use of such Proprietary Information or other business trade secrets. The Servicer promises and agrees not to engage in any unfair competition with the Client and promises and agrees to not engage in any unauthorized use of the Client's Proprietary Information. Servicer shall protect the Proprietary Information with the same degree of care as Servicer employs with its own information of similar importance, but in no event less that a reasonable degree of care. This Section 23.0 shall survive termination of this Agreement. "Applicable Privacy Law" means the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6827, *Interagency Guidelines Establishing Information Security Standards*, 12 C.F.R. Part 570, Appendix B, and other applicable law regarding privacy. "Confidential Information" means any non-public information of Client (or its affiliates), including information whose disclosure would violate Applicable Privacy Law. Servicer will take all of the following measures to protect the confidentiality of the Confidential Information:
(a)  Servicer will hold all of Client's Confidential Information in the strictest of confidence.
(b)  Servicer will safeguard Client's Confidential Information with the same degree of care to avoid unauthorized disclosure as it uses to protect its own Confidential Information of a similar nature, but in any event, no less than reasonable care, which necessarily includes the care required by Applicable Privacy Law.
(c)  Servicer will not disclose any of Client's Confidential Information to any other Person under any circumstances, except as required by law.
(d)  Servicer will not use (or assist or permit its any other person to use) any of the Confidential Information for any purpose other than the performance of its duties as Servicer.

Loan Account: See Addendum        9 Pages Total        Servicer initial: _____  Client initial: BF
Limited Servicing Agreement - 20170901
29
FCI • PO BOX 27370 • Anaheim • CA 92809-0112 • NMLS#4920 • BRE 01022780 • www.trustfci.com

(e)     Servicer will maintain all information subject to Applicable Privacy Law in accordance with standards required by Applicable Privacy Law, even beyond the term of this Agreement.

**24.0    Execution in Counterparts/Facsimile or Email Delivery.**  This Agreement and any addendum, exhibit or schedule hereto may be executed in any number of counterparts and by different parties hereto in separate counterparts each of which when so executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.  This Agreement may also be executed and delivered by way of facsimile or email.  Photostatic copies of this Agreement have the same force and effect as an original of this Agreement.

**25.0    Integration and Modification.**  This Agreement constitutes the entire agreement of the parties.  No other agreement, oral or written, pertaining to the work to be performed under this Agreement shall be of any force or effect unless it is in writing and signed by both parties.  Any work performed that is inconsistent with or in violation of the provisions of this Agreement shall not be compensated.  This Agreement may be modified only by a written agreement signed by each of the parties hereto.  Notwithstanding the above, amendments to this Agreement, its exhibits or schedules, may take the form of electronic communication between the Parties, as provided in the Notice provision of this Agreement.

**26.0    Severability.**  If any provision of this Agreement is held to be invalid or unenforceable under any applicable statute or rule of law, then that provision shall be curtailed and limited only to the extent necessary to bring said provision within the legal requirements and this Agreement as so modified shall continue in full force and effect.

**27.0    Headings.**  The headings of the various sections and paragraphs of this Agreement have been inserted for convenience and reference only and shall not be deemed to be part of this Agreement.

**28.0    Dissemination of Information.**  Neither the Servicer nor Client nor their representatives shall disseminate any oral or written advertisement, endorsement or other marketing material relating to each other's activities under this Agreement without the prior written approval of the other party.  No party hereto will use the name, mark or logo of the other party in any advertisement or printed solicitation without first having prior written approval of the other party.  The parties hereto shall take reasonable efforts to ensure that its vendors shall not disseminate any oral or written advertisement, endorsement or other marketing materials referencing or relating to the other party without that party's prior written approval.  In addition, the parties hereto agree that their contracts with all vendors necessary for the performance of this Agreement will include appropriate provisions to ensure compliance with the restrictions of this Section 28.0 and 23.0.  Section 28.0 and 23.0 shall survive termination of this Agreement.

**29.0    Non-Solicitation of Employees**.  During the term of this Agreement and for 2 years after any termination of this Agreement, Client will not, without the prior written consent of Servicer, either directly or indirectly, on Client's own behalf or in the service or on behalf of others, solicit or attempt to solicit, divert or hire away any person employed by Servicer.  Provided, however, that nothing in this Section shall prohibit the use of general solicitation in a publication or similar.  If Client is found to be in violation of this clause, the Client agrees to pay servicer damages in the amount of two years of Servicer's salary of such employee.

**30.0    Litigation Response Costs.**  Except as otherwise provided in Section 11.0, if Servicer is served with a subpoena, notice to appear at trial, arbitration, mediation, deposition or any other lawful mandatory appearance, by or through a court of competent jurisdiction or officer of such court, which requires any custodian of record, employee, officer or agent of Servicer to appear in person to introduce documents and/or give testimony concerning any legal action involving Client, Servicer shall be reimbursed for all reasonable (in its sole, subjective discretion) out of pocket costs, fees and expenses, including, but not limited to, hotel, airline, meals, car rental or any related expense (the travel expenses). In addition to the travel expenses and out of pocket costs, Client shall pay to Servicer one hundred and fifty dollars ($150) per hour for all time spent by any custodian of records, employee, officer or agent of Servicer preparing to testify, reviewing files, assembling files, data or documents, travel time, waiting time, or any related expenditure of time incident to the appearance described above. Servicer shall provide Client with a detailed invoice describing all charges to be paid by Client. Such payment is due upon receipt. Client shall not be responsible for any expenses or fees if the appearance is a result of Servicer's act or failure to act that is in violation of any material promise made by Servicer in this Agreement or if the trier of fact determines Servicer's intentional or gross negligence caused damage to plaintiff.

In case of Borrower filing a complaint against Servicer and/or Lender, Client hereby agrees to retain counsel to represent Servicer and/or Lender at Client's expense.  Servicer shall have input and approval of counsel selected by Client to defend Servicer.  If the Servicer in its sole discretion believes there is a conflict between the rights and responsibilities of Servicer and the rights and responsibilities of Client in the lawsuit, Servicer has the right to require counsel separate and apart from Client to represent its interests.  Client shall not be responsible for defending Servicer if the trier of fact in the action commenced by the Borrower's filing of the Complaint determines that Servicer's intentional or gross negligence caused damage to plaintiff.

**31.0    Client Representations.**  Client represents to Servicer that, if the Client is acting as a servicer, sub-servicer or agent of private Lenders, that Client has informed Lenders of its choice in outsourcing the servicing to Servicer and that both Client and private Lenders, if any, are jointly and severally liable for the payment of Servicer's fees only if the Client has not paid Servicer's fees in connection with the Loan or property.  Client further represents to Servicer that Clients owns a valid, existing and enforceable Loan free of any known fraud or wrongdoing by the Client.

**32.0    Limitation of Liability of Servicer.**  Except to the extent the validity of the Loan is adversely affected or caused by any act or omission of Servicer or its representatives, Servicer is not responsible to Client, its successors, assigns, Lenders, or any other third party for the validity of the Loan submitted by Client, including without limitation, (i) the Loan documents, including notes, deeds/mortgages, or assignments, (ii) whether the

Loan Account: See Addendum          9 Pages Total          Servicer initial: TCS   Client initial: _____
Limited Servicing Agreement - 20170901
30

FCI • PO BOX 27370 • Anaheim • CA 92809-0112 • NMLS#4920 • BRE 01022780 • www.trustfci.com

Loan is a valid, enforceable or existing lien on the property, (iii) the enforceability of the Loan against the Borrower of the Loan, (iv) or any regulatory compliance or violation of any other state or federal laws, including without limitation the Real Estate Settlement Practices Act and the Truth-in-Lending Act that occurred before the transfer of servicing rights and obligations to Servicer.

**33.0** <u>Notice.</u> Except as otherwise provided herein, all notices required under this Agreement shall be in writing and delivered personally or by facsimile, email or by overnight delivery service or by first class mail, postage prepaid, to each party at the address listed below. Either party may change the notice address by notifying the other party in writing. Notices shall be deemed received upon receipt, electronic confirmation of delivery as to facsimile or email notices, or 3 days after deposit in the U. S. Mail, whichever is applicable.

**34.0** <u>General Reference and Waiver of Jury Trial.</u>

**a.** If a dispute arises out of, or relates to this Agreement, the dispute shall be decided by general reference procedures pursuant to California Code of Civil Procedure Section 638. The general reference shall be commenced by a request or a motion filed with the clerk or presiding judge of the Superior Court of the County of Orange, with a copy served on the other party, pursuant to Code of Civil Procedure Section 638. Any such request or motion shall include a copy of this Agreement. Except to the extent modified herein, the reference shall be conducted in accordance with California law including, but not limited to, the California Code of Civil Procedure and California Evidence Code. Any general reference shall be commenced within the period specified by the applicable statute of limitation for the claim(s) made. All general reference proceedings hereunder shall, unless all parties thereto otherwise agree in writing, be conducted in a mutually agreeable location in the County of Orange, State of California.

**b.** Subject to an award of fees and costs to the prevailing party in the general reference, each party shall pay one-half of the expenses of the general reference at the rate set by the Court pursuant to Code of Civil Procedure Sections 645.1 and 1023. The referee(s) shall not have the right to convene a jury to be the trier of fact of any controversy hereunder. **BOTH PARTIES HEREBY WAIVE A JURY TRIAL IN CONNECTION WITH ANY DISPUTE ARISING OUT OF THIS AGREEMENT.**

**c.** No reference arising out of or relating to this Agreement shall include, by consolidation, joinder with or in any other manner, an additional person or entity not a part to this Agreement except by written consent containing a specific reference to this Agreement by both parties hereto unless ordered by a court of competent jurisdiction. Consent to a reference involving an additional person or entity shall not constitute consent to a reference of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein.

**d.** The parties agree that the referee shall be a member of the American Arbitration Association, and be empowered to award to the prevailing party a reimbursement of costs of the general reference, including, without limitation, attorney's fees, expert fees, fees assessed by the referee and the referee's compensation.

**e.** **BY EXECUTING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THIS AGREEMENT DECIDED BY A GENERAL REFERENCE PROCEEDING, WITH A REFEREE AND NOT AN ACTIVE JUDGE, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR BEFORE A JURY. IF YOU REFUSE TO SUBMIT TO A GENERAL REFERENCE PROCEEDING AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO PARTICIPATE IN THE GENERAL REFERENCE PROCEEDING UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.**

| CLIENT'S MAILING ADDRESS: | SERVICER'S MAILING ADDRESS: |
|---|---|
| APG Holdings Revocable Trust | FCI Lender Services, Inc. |
| 1221 W 103rd St #108 | 8180 East Kaiser Blvd. |
| KANSAS CITY, MO 64114 | Anaheim Hills, CA 92808 |
| | Attn: TR Hansen |
| Fax: | Fax: (714) 282-5775 |
| Email: bob@aspenfunds net; agnotices@aspenfunds net | Email: thansen@trustfci.com |
| Phone: | Phone: (800) 931-2424 |

CLIENT:
By: _____Bob Fraser_____ (DocuSigned by: 4793B7FD6D0B4B2...) Date: 3/5/2018
Print Name: Bob Fraser

FCI LENDER SERVICES, INC.:
By: _Teri Snyder_ Date: 3/1/2018
Print Name: Teri Snyder

Servicer initial: TCS   Client initial: BF

## ADDENDUM – LOAN ACCOUNT ADDENDUM
(Addendum is attached to and made a part of: Specialty Loan Servicing Agreement)

## APG Holdings Revocable Trust

| FCI LOAN # | BORR FIRST | BORR MID | BORR LAST |
|---|---|---|---|
| ████████ | ████ | | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | █ | ████ |
| ████████ | ████ | | ████ |
| 9160032062 | Jeffrey | D | Cordtz |
| ████████ | ████ | | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | █ | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | █ | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | █ | ████ |
| ████████ | ████ | | ████ |
| ████████ | ████ | █ | ████ |

CLIENT:
By: *Bob Fraser* (DocuSigned by: 4793B7FD6D0B4B2...)    Date: 3/5/2018
Print Name: Bob Fraser

FCI LENDER SERVICES, INC.:
By: *Teri Snyder*    Date: 3/1/2018
Print Name: Teri Snyder

Loan Account: See Addendum    9 Pages Total    Servicer initial: TOS    Client initial: BF
Limited Servicing Agreement - 20170901    32
FCI • PO BOX 27370 • Anaheim • CA 92809-0112 • NMLS#4920 • BRE 01022780 • www.trustfci.com