# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

---------------------------------------------------

Jeffrey Cordtz,                          Case No. 1:21-cv-02003-MHC-LTW

**Plaintiff**

          **Versus**

Johnson Legal Offices, LLC;
FCI Lender Services, Inc.;
And Larry W. Johnson

**Defendants**
---------------------------------------------------

## Plaintiff's Response to JLO and LWJ's statement of undisputed facts

1-      On or about April 3, 2006, Plaintiff executed a Home Equity Line_of

Credit (the "Note") in the original principal credit limit amount of

$200,000 in favor of IndyMac Bank, F.S.B. ("IndyMac"). [Jeffrey D.

Cordtz  deposition  transcript ("Cordtz Depo Transcript"), pp. 23-29 and

Exhibit "A"]

**Response**- Admitted.


2-      On or about April 3, 2006, Plaintiff executed a Deed to Secure Debt

(With Future Advances Clause) (the "Security Deed") in the original

principal credit limit amount of $200,000 in favor of Indymac. (Cordtz

Depo Transcript, pp. 30-33 and Exhibit "B"; certified copy of Security

Deed in Fourth Notice of Filing).

**Response**- Admitted.


3-      On or about August 3, 2010, IndyMac assigned the Note and the Security

Deed to The Federal Deposit Insurance Corporation, as Receiver for

Indymac (Hereinafter collectively referred to as the "FDIC") pursuant to

that certain Assignment and Trans(er of Note and Security Agreement

("Assignment #1"). (Certified copy of Assignment #1 in Fourth Notice of

Filing.)

**Response**- This is immaterial. Otherwise, admitted.


4-      On or about April 11, 2018, the FDIC assigned the Note and the Security

Deed to Value Recovery Group, L.P. ("VRG") pursuant to that certain

Assignment of Security Deed ("Assignment #2"). (Certified copy of

Assignment #2 in Fourth Notice of Filing).

**Response**- This is immaterial. Otherwise, denied in Part. Admit only the

document shows an assignment of security deed but denied that the

document evidences any assignment of the note.

5-      On or about May 11, 2018, VRG assigned the Note and the Security

Deed to Aspen Properties Group, L.L.C., as Trustee ("Aspen Properties")

pursuant to that certain Assignment of Security Deed ("Assignment #3").

(Certified copy of Assignment #3 in Fourth Notice of Filing).

**Response**- This is immaterial. Otherwise, denied in Part. Admit only that

the document shows an assignment of security deed to Aspen Properties

Group, LLC as Trustee of APG Holdings Revocable Trust but denied that

the document evidences any assignment of a note.


6-      On or about January 14, 2021, Aspen Properties assigned the Note and

the Security Deed to Wilmington Savings Fund Society, F.S.B., not in its

individual capacity but solely as Owner Trustee of Aspen Holdings

("Wilmington Savings"), pursuant to that certain Assignment of Security

Deed ("Assignment #4") and Wilmington Savings is the current owner

and holder of the Note and the Security Deed and Wilmington Savings is

also currently in possession of the original Note. (Certified copy of

Assignment #4 in Fourth Notice of Filing).

**Response**- This is immaterial and not separate or concise. Otherwise,

denied. The document does not show a transfer of the note, nor does the

document show that Wilmington Savings is the current owner or holder

of the note. Admit only that that there was an assignment of security deed
to Wilmington Savings Fund Society, F.S.B., not in its individual
capacity but solely as Owner Trustee of Aspen Holdings Trust, a
Delaware Statutory Trust.

7-   Plaintiffs last payment he has made on his loan at issue here was before
September of 2012 and he has defaulted and remains in default pursuant
to the terms of the Note and the Security Deed. (Cordtz Depo Transcript,
pp. 39, 53).
**Response**- Admitted.

8-   No payment has been made on the Note by Plaintiff since 2012 and no
payments have been made since the Trust has become the owner and
holder of the Note and the Security Deed. (Cordtz Depo Transcript, pp.
39, 53)
**Response**- Admitted in Part. Denied that the Trust is owner and holder of
the Note and Security deed.

9-   Jeffrey Cordtz originally filed a pro se Verified Complaint for
Declaratory Judgment, Specific Performance, and Equitable Accounting

(the "Gwinnett Complaint") against Aspen Properties Group, as Trustee ("Aspen Properties") on or about October 10, 2019, in Civil Action File No. 19-A-10263-7 in the Superior Court of Gwinnett County, Georgia (the "Gwinnett Lawsuit"). [Affidavit of Larry W. Johnon (the "Johnson Affidavit"), paras. 6 & 7 and Exhibit "A").

**Response**- Admitted in part, the lawsuit was against Aspen Properties Group, LLC as Trustee of the APG Holdings Revocable Trust.

10-   A non-final Order (the "Gwinnett Default Order") was entered on or about July 27, 2020, granting Plaintiffs Motion for Entry of Default. (Johnson Affidavit, paras. 8 & 9 and Exhibit "B")

**Response**- Admitted.

11-   A non-final Order (the "Gwinnett Default Order") was entered on or about September 14, 2020, granting Plaintiffs Motion for Entry of Default. (Johnson Affidavit, paras. 10 & 11 and Exhibit "C")

**Response**- Admitted.

12    After the entry of the Gwinnett Default Set Aside Order on or about September 14, 2020, Larry W. Johnson was retained to represent Aspen

Properties, the lone defendant in the Gwinnett Litigation at the time, and to assist in defending them in that matter. (Johnson Affidavit, para. 12).

**Response**- Denied. There was nothing to defend as there had been an entry of default. In fact, Johnson was retained to collect the debt and filed a debt collection lawsuit in January 2021. See Johnson Deposition Pages 24, 25, 26; lines 24-25, 1-25, 1-2

13-     On or about November 13, 2020, Larry W. Johnson attempted to file an Amended Motion in the Gwinnett Litigation, his first pleading to be filed in that case, which was "Rejected" (the "Gwinnett Rejection Notice") via the online Gwinnett court filing system by the Gwinnett clerk specifically indicating that "this case has been closed since 9/14/2020. This motion would be a new case & filing fee of 209.00 dp". (Johnson Affidavit, paras. 13 & 14 and Exhibit "D")

**Response**- Admitted.

14-     Because the Gwinnett Litigation had been closed by the clerk and no one could file any further pleadings therein but had to pursue a new action, and because Jeffrey Cordtz resided in Fulton County, Larry W. Johnson filed a Complaint for Default on Note (the "First Fulton

Complaint") on or about January 21, 2021, on behalf of Aspen Properties and against Jeffrey Cordtz in Civil Action 21EV000424 in the State Court of Fulton County, Georgia (the "First Fulton Litigation"). (Johnson Affidavit, paras. 15 & 16 and Exhibit "E")

**Response**- This is not separate or concise. Otherwise Admitted that the events occurred but denied as to the Johnson Defendants motivations..

15-   Subsequent to filing the First Fulton Litigation, Rick Alembik as counsel for Jeffrey Cordtz advised Larry W. Johnson that his client had received notice of a transfer of the loan from Aspen Properties, and Larry W. Johnson also became aware that the Gwinnett Litigation for some reason had been reopened; consequently on or about February 12, 2021, a Motion for Continuance and to Add Defendant and Real Party in Interest (the "Gwinnett Add Party Motion") was filed along with a consent order agreed to between Larry W. Johnson and Rick Alembik adding Aspen Holdings Trust, a Delaware Statutory Trust ("Aspen Holding"). (Johnson Affidavit, paras. 17 & 18 and Exhibit "F")

**Response**- Denied. Johnson's testimony as to what Rick Alembik advised or didn't advise him is self-serving hearsay and inadmissible.

16-    Prior to filing the First Fulton Litigation, Larry W. Johnson had been
       advised that Aspen Properties was the owner of the loan at issue and had
       been provided assignments showing the same, but after being advised by
       Rick Alembik  of  a possible transfer, Larry W. Johnson contacted Aspen
       Properties and they were unaware of such transfer, but later confirmed
       that unbeknownst to them, the loan at issue had been included in a bulk
       transfer. (Johnson Affidavit, para. 19).

       **Response**- Denied. What Aspen Properties knew or didn't know prior to
       The Johnson Defendants bringing the lawsuit is self-serving hearsay and
       inadmissible. What Rick Alembik advised or didn't advise Johnson is
       self-serving hearsay and inadmissible.


17-    On or about February 17, 2021, a Consent Order Granting Leave to
       Plaintiff to Add Aspen Holdings as a Party Defendant (the "Gwinnett
       Add Party Order") was entered in the Gwinnett Litigation. (Johnson
       Affidavit, paras. 20 & 21 and Exhibit "G")

       **Response**- This is immaterial. Otherwise, admitted.


18-    On or about March 2, 2021, and after the entry of the Gwinnett Add Party
       Order"), Larry W. Johnson filed on behalf of Aspen Properties a

Voluntary Dismissal Without Prejudice (the "First Fulton Dismissal") of the First Fulton Litigation. (John on Affidavit, par . 1'1 & 23 md Exhibit "H")

**Response**- This is immaterial. Otherwise, admitted.

19-    Subsequently Larry W. Johnson found out that the loan was not transferred to Aspen Holdings, but to their trustee known as Wilmington Savings Fund Society, F.S.B., not in its individual capacity but solely as Owner Trustee of Aspen Holdings and on or about June 23, 2021, a Consent Order Granting Leave to Substitute a Party Defendant (the "Gwinnett Substitute Order") was entered in the Gwinnett Litigation. (Johnson Affidavit, paras. 24 & 25 and Exhibit "I")

**Response**- Admitted.

20-    On or about June 28, 2021, Larry W. Johnson filed on behalf of Aspen Properties and Wilmington Savings Defendants' Motion for Judgment on the Pleadings (the "Gwinnett Judgment Motion") in the Gwinnett Litigation. (Johnson Affidavit, paras. 26 & 27 and Exhibit "J")

**Response**- Admitted.

21-   On or about June 28, 2021, Larry W. Johnson also filed on behalf of Wilmington Savings Defendant Wilmington Savings' Motion for Summary Judgment (the "Gwinnett Summary Judgment Motion") in the Gwinnett Litigation. (Johnson Affidavit, paras. 28 & 29 and Exhibit "K")
**<u>Response</u>**- Admitted.

22-   On or about November 2, 2021, an Order (the "Gwinnett Judgment Order") was entered in the Gwinnett Litigation denying the Gwinnett Judgment Motion (Larry W. Johnson believes it applies to the Gwinnett Judgment Motion even though it incorrectly we believe references a summary judgment motion). (Johnson Affidavit, paras. 30 & 31 and Exhibit "L").
**<u>Response</u>**- Admitted.

23-   On or about November 2, 2021, an Order (the "Gwinnett Summary Judgment Order") was entered in the Gwinnett Litigation denying the Gwinnett Summary Judgment Motion. (Johnson Affidavit, paras. 32 & 33 and Exhibit "M")
**<u>Response</u>**- Admitted.

24-    As of the date of this Affidavit, the Gwinnett Litigation remains pending.
(Johnson Affidavit, para. 34)

**Response**- Admitted.


25-    On or about January 21, 2021, Larry Johnson filed a Complaint for
Damages (the "Second Fulton Complaint") against Jeffrey Cordtz,
Richard Alembik and Shimshon Wexler Jeffrey Cordtz in Civil Action
File No. 21EV003542 in the State Court of Fulton County, Georgia (the
"Second Fulton Litigation").  (Johnson Affidavit, para. 35)

**Response**- Denied. The Complaint was filed on June 11, 2021. Exhibit S
See Defamation Fulton County Lawsuit.


26-    On or about October 5, 2021, Shimshon Wexler executed under oath the
Second Declaration of Defendant Shimshon Wexler (the "Wexler
Affidavit") and on or about October 15, 2021, the Wexler Affidavit was
filed in the Second Fulton Litigation. (Johnson Affidavit, paras. 36 & 37
and Exhibit "N")

**Response**- This is immaterial. Otherwise, admitted.

27-   The Wexler Affidavit attempted to explain, among other things, his

investigation efforts prior to filing this FDCPA action, but nowhere does

he describe any efforts in attempting to determine whether Larry W.

Johnson or his solely owned law firm Johnson Legal Offices, L.L.C.

were "debt collectors" as defined under the FDCPA. (Johnson Affidavit,

para. 38)

**Response**- This is immaterial not separate nor concise. Otherwise,

denied. See Wexler affidavit Paragraph 45-50. Document 53-14; Pages 5

and 6 of 17.


28-   On or about August 23, 2021, after filing the above-styled FDCPA civil

action on or about May 11, 2021, Shimshon Wexler emailed the

undersigned (the "Wexler Email") stating that "[i]t just occurred to me

that if you are not a debt collector, I lose." (Johnson Affidavit, paras. 39

& 40 and Exhibit "O")

**Response**- This is immaterial, otherwise admitted that those were the

words of the email when Plaintiff tried to convince (ultimately

unsuccessfully) Johnson to agree to a stay of discovery in this case until

the Court ruled on the pending motion to dismiss as to whether JLO and

LWJ qualify as debt collectors.

29-   Jeffrey Cordtz testified that he had never investigated whether Larry W.
      Johnson or his solely owned law firm Johnson Legal Offices, L.L.C.
      were ever debt collectors, nor was he aware of any such investigation
      ever occurring. (Cordtz Depo Transcript, pp. 65-66)

      **Response**- This is immaterial. Otherwise, denied.


30-   Had Shimshon Wexler actually investigated whether Larry W. Johnson
      or his solely owned law firm Johnson Legal Offices, L.L.C. were "debt
      collectors" as defined under the FDCPA, he would have found out that
      neither Larry W. Johnson nor his solely owned law firm Johnson Legal
      Offices, L.L.C. were "debt collectors" as defined under the FDCPA.
      (Johnson Affidavit, para. 41)

      **Response**- This is immaterial, stated as a legal conclusion and issue and
      is not concise. Further, Plaintiff still believes that LWJ and JLO are debt
      collectors. Otherwise, denied.


31-   Other than the above-referenced litigation involving Jeffrey Cordtz,
      neither Larry W. Johnson nor his solely owned law firm Johnson Legal
      Offices, L.L.C. have filed any civil action (not a single civil action)

attempting to collect a consumer debt in any fashion within the five years preceding the filing the above-styled FDCPA civil action on or about May 11, 2021. (Johnson Affidavit, para. 42).

**Response**- This is not separate or concise. This is also stated as a legal conclusion as the FDCPA defines "consumer debt" and LWJ and JLO have ascribed a definition contrary to the FDCPA. For instance, Johnson does not believe that trying to collect a debt secured by a personal home is a "consumer debt" as defined by the FDCPA even when collecting money. In addition, LWJ and JLO have not provided a single lawsuit (besides for the defamation lawsuit which was dismissed under Georgia's anti-SLAPP statute) in any area of the law other than this one that he has participated in despite being asked for it in discovery. Presumably if there were such cases, they would have been provided. Thus, LWJ and JLO may have only filed this single civil action which is a debt collection lawsuit.

32-  The Gwinnett Litigation which is still pending was initially a lawsuit filed by Jeffrey Cordtz and the undersigned was retained to assist in defending that action with the majority of his time spent on defending such action (over 75% of his time), and the undersigned was forced to

file a compulsory counterclaim for the debt against Jeffrey Cordtz or risk

his client potentially losing its ability to sue on the debt. (Johnson

Affidavit, para. 43).

**Response**- This is not separate or concise. Otherwise, Denied. Johnson

filed the Fulton lawsuit in January 2021 not as a counterclaim. Johnson

was retained to collect a debt not to defend an action. Further any

defending done by Johnson was at the very least indirect debt collection

which qualifies as debt collection under the FDCPA because LWJ and

JLO were seeking to not allow Plaintiff to settle for less than he was

demanding and to collect the full amount owed with no discount.


33-   Other than the above-referenced litigation involving Jeffrey Cordtz,

Larry W. Johnson and his solely owned law firm Johnson Legal Offices,

L.L.C. have been involved in approximately three non-judicial

foreclosure referrals in the 12 months preceding the filing the above-

styled FDCPA civil action on or about May 11, 2021, including the one

previously referenced by Plaintiff and his counsel involving Emmanuel

Ohai. (Johnson Affidavit, para. 44).

**Response**- Denied. JLO and LWJ have not provided discovery to show

the names of any of these "approximately" three case even though it was

requested. Further the Johnson Defendants earned $39,459.46 from J&L over the past 3 years. See Exhibit J- Affidavit of Tingle. The Johnson Defendants also earned $105,455.31 from State Home Mortgage over the past 3 years. Exhibit K- See Affidavit of Galloway. The Johnson Defendants earned more than $15,000 from MTG in attempting to collect money from Cordtz. Exhibit O.

34-   The gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any legal related services has been over $250,000 for each of the last five years. (Johnson Affidavit, para. 45)

**Response**- This is not relevant as the Court stated that LWJ and JLO's tax returns do not have to be provided. Plaintiff argued that they were relevant and LWJ and JLO argued they were not. Otherwise, denied. Johnson has testified that his net income is less than $100,000 and has not provided tax returns. See Exhibit B; Johnson Deposition, Page 43, lines 21-25; Page 44, lines 1-25.

35-   Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly collect consumer debts, which of course is an understatement. (Johnson Affidavit, para. 46).

**<u>Response</u>**- Denied, this is a legal conclusion and issue that Plaintiff

disputes.

36- Neither Larry W. Johnson nor his solely owned law firm Johnson Legal

Offices, L.L.C. regularly engage in consumer debt collection activity.

(Johnson Affidavit, para. 47)

**<u>Response</u>**- Denied, this is a legal conclusion and issue which Plaintiff

disputes.

37- Consumer debt collection activity is not the principal purpose of Larry

W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C.

(Johnson Affidavit, para. 48).

**<u>Response</u>**- Admitted.

38- Any consumer debt collection activity in which Larry W. Johnson or his

solely owned law firm Johnson Legal Offices, L.L.C. is involved, is a

very small percentage of their revenues, less than a half percent over the

last five taxable years and less than two percent in any individual taxable

year, the majority of which (if not the total of which) being any fees

earned in the above-referenced civil actions involving Jeffrey Cordtz.

(Johnson Affidavit, para. 49)

**Response**- This is not separate nor concise. Further JLO and LWJ have

not produced any documentation showing that any of this is true.

Presumably if it was documentation would have been produced. The

Court determined that JLO and LWJ need not produce income

information because it is not relevant so LWJ and JLO should not be able

to get this information in with an affidavit without supporting

information. Further the Johnson Defendants earned $39,459.46 from

J&L over the past 3 years. See Exhibit J- Affidavit of Tingle. The

Johnson Defendants also earned $105,455.31 from State Home Mortgage

over the past 3 years. Exhibit K- See Affidavit of Galloway. The Johnson

Defendants earned more than $15,000 from MTG in attempting to collect

money from Cordtz. Exhibit O for checks. Johnson has testified that his

net income is less than $100,000 and has not provided tax returns. See

Exhibit B; Johnson Deposition, Page 43, lines 21-25; Page 44, lines 1-25.


39-   Neither Larry W. Johnson nor his solely owned law firm Johnson Legal

Offices, L.L.C. advertise themselves as being in the business of consumer

debt collection or as maintaining a specialty in consumer debt collection.
(Johnson Affidavit, para. 50)

**Response**- Admitted in part. There is no evidence that LWJ or JLO do
any advertising at all as to any services and there is no evidence at all that
LWJ or JLO has any specialized skills in a particular area of the law. So,
this does not shine light on whether LWJ or JLO regularly collect debts.

40-   Neither Larry W. Johnson nor his solely owned law firm Johnson Legal
Offices, L.L.C. represent any traditional consumer debt collection
agencies. (Johnson Affidavit, para. 51)

**Response**- Denied in Part. The words "traditional debt collection
agencies" are undefined. LWJ and JLO represented a debt collection law
firm and 2 buyers of defaulted debt in this case.

41-   Neither Larry W. Johnson nor his solely owned law firm Johnson Legal
Offices, L.L.C. maintain any non-attorney staff or computer aids for the
collection of consumer debts. (Johnson Affidavit, para. 52)

**Response**- Admitted in part. This is irrelevant. There is no evidence that
LWJ or JLO maintain any non-attorney staff or computer aids at all so

this does not tend to show that debt collection is not a regular part of JLO

or LWJ's practice.

42- Any consumer debt collection activity (i.e. the above-referenced civil

actions involving Jeffrey Cordtz) came from non-collection business

clients of Larry W. Johnson and his solely owned law firm Johnson Legal

Offices, L.L.C. and are incidental to, and not relied upon or anticipated in

their practice of law. (Johnson Affidavit, para. 53).

**Response**- Admitted in Part. This is stated as a legal conclusion.

Otherwise, denied that debt collection is incidental, unanticipated, and

unreliable for JLO's law practice considering the ongoing client

relationships he has, his experience in the debt collection industry and the

amount of money he has earned in the last year and the last 3 years. The

Johnson Defendants earned $39,459.46 from J&L over the past 3 years.

See Exhibit J- Affidavit of Tingle. The Johnson Defendants also earned

$105,455.31 from State Home Mortgage over the past 3 years. Exhibit K-

See Affidavit of Galloway. The Johnson Defendants earned more than

$15,000 from MTG in attempting to collect money from Cordtz. Exhibit

O for checks. Johnson has testified that his net income is less than

$100,000 and has not provided tax returns. See Exhibit B; Johnson

Deposition, Page 43, lines 21-25; Page 44, lines 1-25.


43-    Larry W. Johnson does have an Of Counsel Agreement with another law

firm called Jauregui & Lindsey ("J&L"), who simply handles matters

relating to non- judicial foreclosures when they arise and neither Larry

W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C.

handle any consumer debt collection activity with or for J&L, which

again is a law firm and not a  consumer  debt collection agency, nor to

the best of the undersigned's knowledge do the collect consumer debts

with or without the assistance of Larry W. Johnson or his solely owned

law firm Johnson Legal Offices, L.L.C. (Johnson Affidavit, para. 54)

**Response**- This is not separate nor concise. This contains legal

conclusions such as non- judicial foreclosure is not a form of consumer

debt collection as defined by the FDCPA. Further this statement is

hearsay as to what J&L does or doesn't do. Lastly, the Court has ordered

JLO and LWJ to produce an affidavit from J&L as to its relationship with

JLO and LWJ.

44-   The undersigned represented a defendant m a pro se case brought  by

Emmanual Ohai known as Civil Action File No. I :20-CV-2220-SCJ in

the U.S. District Court for the Northern District of Georgia, Atlanta

Division (the Ohai Litigation") and no claim or counterclaim has even

been filed in the Ohai Litigation seeking to collect a consumer debt.

(Johnson Affidavit, para. 55)

**Response**- Denied in part. Plaintiff searched through this PACER file

and was able to locate a letter LWJ and JLO seeking to collect a

consumer debt from Ohai. JLO and LWJ admit that there were at least 20

other consumer debt collection letters sent. Admitted there was no claim

or counterclaim asserted against Ohai. Johnson Deposition Pages 24, 25,

26; lines 24-25, 1-25, 1-2


45-   During the Ohai Litigation, Park Tree Investments 20, L.L.C. proceeded

with a non-judicial foreclosure and Mr. Ohai attempted to obtain an

injunction to stop that foreclosure, which resulted in an Order (the

"Federal Injunction Denial Order") denying his request for injunctive

relief entered by the Honorable Steve C. Jones, United States District

Judge, on or about April 5, 2021, and which ultimately resulted in the

foreclosure of Mr. Ohai's property in accordance with Georgia law.
(Johnson Affidavit, paras. 56 & 57 and Exhibit "P")

**Response**- This is entirely irrelevant. Further, this is not separate nor
concise.

46-    Larry W. Johnson has handled numerous lawsuits throughout his 31-year
plus legal career, both offensively and defensively, including but not
limited to lawsuits involving FDCPA claims, plus Larry W. Johnson has
filed numerous motions and conducted numerous hearings, and that Larry
W. Johnson is competent to testify regarding the reasonableness of
attorney's fees in this case. (Johnson Affidavit, para. 58)

**Response**- This is not relevant, concise nor separate. LWJ's competence
to testify regarding the reasonableness of attorney's fees is entirely
irrelevant at this stage of the case. Johnson's claim based on the
FDCPA's provision for fees for bad faith and harassment contemplates a
post-trial proceeding following a determination on the merits of a
plaintiff's complaint. Philogene v. Aldridge Connors, LLC, 2013 WL
12382318 at *10 (N.D. Ga. 2013 May 13, 2013) and the cases cited
therein. Further, a pro se litigant who also is a lawyer cannot be awarded
fees for his own services. Ray v. U.S. Dep't of Justice, 87 F.3d 1250

(11th Cir. 1996) citing *Kay v. Ehrler, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991).*

47-   Larry W. Johnson has spent 100.4 hours through the date of this affidavit in defending himself and his firm in this civil action, drafting and filing numerous pleadings, attempting to negotiate numerous issues, attending hearings, and following up on this matter and that his billable rate is $300.00 per hour. (Johnson Affidavit, para. 59)

**Response**- LWJ and JLO's attorney's fees are entirely irrelevant at this stage of the case. Johnson's claim based on the FDCPA's provision for fees for bad faith and harassment contemplates a post-trial proceeding following a determination on the merits of a plaintiff's complaint. Philogene v. Aldridge Connors, LLC, 2013 WL 12382318 at *10 (N.D. Ga. 2013 May 13, 2013) and the cases cited therein. Further, a pro se litigant who also is a lawyer cannot be awarded fees for his own services. Ray v. U.S. Dep't of Justice, 87 F.3d 1250 (11th Cir. 1996) citing Kay v. Ehrler, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991).

48-    The amount for fees incurred by Larry W. Johnson and his firm in this

civil action in defending this civil action is $30,120.00. (Johnson

Affidavit, para. 60)

**Response**- LWJ and JLO's attorney's fees are entirely irrelevant at this

stage of the case. Johnson's claim based on the FDCPA's provision for

fees for bad faith and harassment contemplates a post-trial proceeding

following a determination on the merits of a plaintiff's complaint.

Philogene v. Aldridge Connors, LLC, 2013 WL 12382318 at *10 (N.D.

Ga. 2013 May 13, 2013) and the cases cited therein. Further, a pro se

litigant who also is a lawyer cannot be awarded fees for his own services.

Ray v. U.S. Dep't of Justice, 87 F.3d 1250 (11th Cir. 1996) citing Kay v.

Ehrler, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991).


49-    The costs incurred by Larry W. Johnson and his firm in this civil action

in defending this civil action as of the date of this affidavit is as follows:

(i) $1,844.62 for deposition costs; (ii) $20.17 for a postage; and (iii)

$78.00 for copies at $0.10 per page; for a total in costs of $1,942.79.

(Johnson Affidavit, para. 61).

**Response**- Denied. Johnson has produced no documentation for these expenses; and they are not at issue until there has been a judgment. See FRCP 54.

50-    The total amount incurred by Larry W. Johnson and his firm in this civil action in defending this civil action is $32,062.79. (Johnson Affidavit, para. 62)

**Response**- LWJ and JLO's fees are entirely irrelevant at this stage of the case. Johnson's claim based on the FDCPA's provision for fees for bad faith and harassment contemplates a post-trial proceeding following a determination on the merits of a plaintiff's complaint. Philogene v. Aldridge Connors, LLC, 2013 WL 12382318 at *10 (N.D. Ga. 2013 May 13, 2013) and the cases cited therein. Otherwise, denied.

51-    In Larry W. Johnson's opinion, the time spent, the billable rate, and the total amount incurred as outlined above in attorney's fees and costs are all reasonable. (Johnson Affidavit, para. 63).

**Response**- LWJ and JLO's attorney's fees are entirely irrelevant at this stage of the case. Johnson's claim based on the FDCPA's provision for fees for bad faith and harassment contemplates a post-trial proceeding

following a determination on the merits of a plaintiff's complaint.

Philogene v. Aldridge Connors, LLC, 2013 WL 12382318 at *10 (N.D.

Ga. 2013 May 13, 2013) and the cases cited therein.

Dated this 29th day of December 2021.

Respectfully submitted,
By: /s/ Shimshon Wexler
GA Bar No. 436163
S Wexler LLC
2244 Henderson Mill Rd, Ste 108
Atlanta, GA 30345
(212) 760-2400
(917) 512-6132 (FAX)
swexleresq@gmail.com