UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

--------------------------------------------

Jeffrey Cordtz,                          Case No. 1:21-cv-02003-MHC-LTW

Plaintiff

              Versus

Johnson Legal Offices, LLC;
FCI Lender Services, Inc.;
And Larry W. Johnson

Defendants
---------------------------------------------------

Plaintiff's Opposition to Motion to Strike

        Larry W. Johnson ("LWJ") and Johnson Legal Offices, LLC ("JLO")

(collectively "The Johnson Defendants") ask that the list of documents

below attached to Plaintiff's opposition to the motion for summary

judgment should be stricken. As will be explained, the Johnson Defendants

are wrong.

        1-      Various 2017 agreements between defendant FCI Lender

        Services, Inc. ("FCI") and J Taylor Law, LLC ("J Taylor") [Doc. 74-6]

        produced by FCI. McMichael Taylor Gray, LLC ("MTG") is the law

firm that is the successor-in-interest to J Taylor such that it is subject to that contract between FCI and J Taylor. See January Taylor Deposition, Page 14, lines 17-23. MTG worked with the Johnson Defendants to collect for FCI and to commit the FDCPA violations identified in the operative complaint. The agreements are on FCI letterhead. Further, January Taylor refers to the agreements in her deposition and discusses the contents of them. See January Taylor Deposition, [Doc. 74-4, Exhibit C to Opposition to Motion for Summary Judgment] Pages 10-14, lines 16-25, 1-25, 1-25, 1-25, 1-2.

2-    A March 13, 2018, letter from Aspen Properties Group, LLC as trustee for APG Holdings Revocable Trust ("APG") claiming that it purchased Plaintiff's loan and identifying FCI as the servicer of the loan. [Doc 74-7]. This document was produced by FCI in discovery on Aspen letterhead. The Johnson Defendants would go on to violate the FDCPA by filing a lawsuit claiming falsely that APG was the owner of Plaintiff's loan and had authority to obtain a judgment against him when APG no longer owned the loan when the Johnson Defendants sued Plaintiff falsely.

3-      A February 22, 2018, welcome letter from FCI [Doc 74-8] claiming that it was the servicer of the loan for APG and listing "the amount of the debt" as $229,148.01 as required by 1692g(a)(1). This document was produced by FCI and is on FCI letterhead. The Johnson Defendant would claim in a letter on April 8, 2021, that the balance was $327,917.83. Plaintiff contends that the Johnson Defendants asked for more than $40,000 than was due in that April 2021 letter thus violating the FDCPA.

4-      A March 5, 2018, agreement between FCI and APG [Doc. 74-9] on FCI letterhead with a contractual term listed at 5.0 which shows that FCI and not APG hired MTG and the Johnson Defendants to collect Plaintiff's debt. This document was produced by FCI and is signed by both parties to the agreement and identifies Plaintiff's loan.

5-      Various monthly statements from FCI dated immediately before and immediately after April 8, 2021 [Doc. 74-15], showing the balance of Plaintiff's loan to be approximately $285,000---- $40,000 less than the Johnson Defendants sought in the April 8, 2021, letter. The statements were produced by FCI and have indicia of credibility.

The Johnson Defendants thereby violated the FDCPA by seeking to collect too much money.

6-    Over $15,000 in numerous checks [Doc. 74-16] that the Johnson Defendants were paid for collecting Plaintiff's consumer debt. These checks were produced by the Johnson Defendants themselves and by MTG. These look like real checks and they are written to the Johnson Defendants and he does not dispute their accuracy. This is among the evidence showing the Johnson defendants collection activities are not irregular.

7-    The of Counsel Agreement between Jauregui and Lindsey, LLC, ("J&L) and the Johnson Defendants [Doc. 74-19] produced by the Johnson Defendants themselves. Johnson's signature is affixed to the agreement, and he has not claimed that is a forgery. The Court previously ordered the Johnson Defendants to provide an affidavit "detailing the services performed, the amount paid, and the number of hours billed by the Johnson Defendants" on behalf of both J&L and Georgia Home Mortgage [Doc. 60]. This Order was entered in reliance on the validity of the contract between the Johnson

Defendants and J&L. The affidavits provided show an amount paid

of $144,914 from only those 2 entities of for the 36 months ending

December 1, 2021 ($105,455.31 + $39,459.460).

"Discovery is expensive enough without adding make-work. When a

party in response to discovery requests points to a document that

appears on its face to be a business record of the producing party, the

other parties should be able to treat the document as authentic unless

someone offers some reason to think otherwise, before it is too late to

do something about it. See *McConathy v. Dr. Pepper/Seven Up Corp.*,

131 F.3d 558, 562 (5th Cir. 1998) (finding that district court did not

abuse its discretion in finding a document authenticated on the basis

that "(1) [the plaintiff] produced the document in response to a

discovery request, (2) the document bore her signature, [and] (3) she

did not claim that the document [was] not authentic or that her

signature [was] a forgery"); *McQueeney v. Wilmington Tr. Co.*, 779 F.2d

916, 929-30 (3d Cir. 1985) (finding "the fact that the copies were

produced by the plaintiff in answer to an explicit discovery request ...

while not dispositive on the issue of authentication, is surely

probative" and concluding that challenged documents were

authentic because of the "sum of ... circumstantial evidence")."

*Joseph v. Lincare, Inc.*, 989 F.3d 147 (1st Cir. 2021).

"[P]laintiffs' argument that the process of discovery provides an
implicit guarantee of authenticity is well-founded…... A party producing a
document is in a better position to know whether the document is
authentic than the party seeking it in discovery. It is disingenuous for the
producing party to dispute the document's authentication without
proffering some basis for questioning it…... taking together the content of
the letter, its appearance, the fact that it describes contemporaneous events
and opinions, and was written before litigation began, it is reasonably
probable that the letter is authentic, and it is therefore admitted." *U.S. Info.
Systems, Inc. v. IBEW Local No. 3*, 2006 WL 2136249 at *6 (S.D.N.Y. 2006)


Rule 901 of the Federal Rules of Evidence entails a two-step process

for determining authenticity. A "district court must first make a

preliminary assessment of authenticity ..., which requires a

proponent to make out a prima facie case that the proffered evidence is what it purports to be." United States v. Maritime Life Caribbean Ltd., 913 F.3d 1027, 1033 (11th Cir. 2019) (involving the authenticity of an assignment) (citation and internal quotation marks omitted). "If the proponent satisfies this 'prima facie burden,' the inquiry proceeds to a second step, in which the evidence may be admitted, and the ultimate question of authenticity is then decided by the [factfinder]." Id. (citation and internal quotation marks omitted). At the first step of the process, it is inappropriate for the district court to place on the proponent of the evidence the burden of showing authenticity by a preponderance of the evidence. See id. ("By requiring Maritime to prove authenticity by 'the greater weight of the evidence,' the district court compressed the two steps of the inquiry under Rule 901 into one and conflated the issue of authenticity with [the merits].").

*PDVSA U.S. Litigation Trust v. Lukoil Pan Americas, LLC*, 991 F.3d 1187, 1190-91 (11th Cir. 2021)

To authenticate a document, Rule 901 only requires a proponent to present "sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be." *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir.2010) (quotation omitted). "[I]t is not dispositive whether the [disputed materials] **in their current form** are admissible in evidence. At the summary judgment stage, materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.' " *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2) (emphasis added)).

"[C]ourts within the Eleventh Circuit have permitted movants to present inadmissible evidence at summary judgment if it appeared that the evidence could be reduced to admissible form at trial." *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *4 (N.D. Ga. July 22, 2016). Plaintiff may rely upon unauthenticated documents if they can be reduced to admissible form at trial. *Ibid.*

"Evidence may be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristic of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4)." *Ibid.*

The rule "does not erect a particularly high hurdle." *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir.2001) (citation and internal quotation marks omitted). It is satisfied "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir.2001) (internal quotation marks omitted). The Johnson Defendants do not dispute that each of the exhibits are what they purport to be or point to any evidence showing that the document is forged or inaccurate in any way. Ibid. The Johnson Defendants produced the checks and the of counsel agreement. MTG verified that those checks were real by producing them as well.

Evidence is admissible as authentic "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Ibid.* "'[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood.' " *United States v. Pluta,* 176 F.3d 43, 49 (2d Cir.1999) (quoting *United States v. Holmquist*, 36 F.3d 154, 168

(1st Cir.1994)). Once the court determines that the proponent of the

evidence meets the threshold, the evidence may be admitted and any

outstanding issues regarding its authenticity are to be resolved by the fact-

finder. See *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997).

## <u>CONCLUSION</u>

The Johnson Defendants' Motion to Strike should be denied.

Dated this 16th day of January, 2022.

Respectfully submitted,
By: /s/ Shimshon Wexler
GA Bar No. 436163
S Wexler LLC
2244 Henderson Mill Rd, Ste 108
Atlanta, GA 30345
(212) 760-2400
(917) 512-6132 (FAX)
swexleresq@gmail.com