UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| JEFFREY D. CORDTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| vs. | ) | |
| | ) | 1:21-CV-02003-MHC-LTW |
| JOHNSON LEGAL OFFICES, L.L.C., | ) | |
| FCI LENDER SERVICES, INC. and | ) | |
| LARRY W. JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANT JLO'S
## AND DEFENDANT LWJ'S MOTION FOR SUMMARY JUDGMENT

COME NOW JOHNSON LEGAL OFFICES, L.L.C. ("JLO") and LARRY

W. JOHNSON ("LWJ"), co-Defendants in the above-styled civil action, and file

their Brief In Support of Defendant JLO's and Defendant LWJ's Motion For

Summary Judgment and show this honorable Court in support thereof as follows:

I. <u>STATEMENT OF FACTS</u>.

This lawsuit is a case brought by Plaintiff alleging that the Defendants violated

the FDCPA, even though Defendant JLO and Defendant LWJ are not debt collectors.

Defendant JLO and Defendant LWJ incorporate herein by reference the facts and

defined terms found in Defendant JLO's and Defendant LWJ's Statement Of

Material Facts Of Which There Exists No Genuine Issue To Be Tried.

II.     ARGUMENT AND CITATIONS OF AUTHORITY.

The following will outline the argument and citations of authority in favor of Defendant JLO's and Defendant LWJ's Motion For Summary Judgment (the "Motion").

A.      The Standard Required for Granting Summary Judgment.

In order for this Court to grant a motion for summary judgment, there must be no genuine issue as to any material fact and the moving party must be entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*; Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. Id. All reasonable factual inferences and all evidence must also be viewed in the light most favorable to the non-moving party. Kragor v. Takeda Pharm. Am., Inc., 702 F. 3d 1304 (11th Cir. 2012). The substantive law will also identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

B.      Defendant JLO and Defendant LWJ are NOT Debt Collectors under the FDCPA and, Therefore, the FDCPA Does NOT Apply.

Congress enacted the "FDCPA in order to eliminate 'the use of abusive, deceptive, and unfair debt collection practices'" and provides consumers remedies when debt collectors engage in such practices. *See* 15 U.S.C. §1692(k)(a)(3) and 15 U.S.C. §1692e. The FDCPA regulates "debt collector[s]" that attempt to collect the kind of debts covered by the statute. *See* Id. § 1692a(6). The FDCPA

specifically defines those debts as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." Id. § 1692a(5) (emphasis added). The statute thus regulates only the collection of debts arising from consumer transactions. *See* Hawthorne v. Mac Adjustment, Inc., 140 F. 3d 1367, 1371 (11th Cir. 1998).

Additionally, the U.S. Supreme Court has made it clear that the FDCPA applies to attorneys "regularly" engaging in debt collection activity, including such activity in the nature of litigation. Heintz v. Jenkins, 514 U.S. 291, 299, 115 S. Ct. 1489, 131 L.Ed.2d 395 (1995). However, the U.S. Supreme Court subsequently held that a business whose principal purpose may be the enforcement of security interests via nonjudicial foreclosure proceedings is outside the scope of the definition of "debt collector" under the FDCPA. Obduskey v. McCarthy & Holthus, L.L.P., 139 S. Ct. 1029, 203 L. Ed. 2d 390 (2019). The other cases previously cited by Plaintiff all pre-date Obduskey, which case clearly found that non-judicial foreclosure work is not "debt collection" activity under the FDCPA. The plaintiff in an FDCPA action also bears the burden of proving the defendant's debt collector status. Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F. 3d 56 (2004). Factors relevant to a determination as to whether a defendant "regularly" collects consumer debt include the percentage of revenue

generated by debt collection activities, the sheer volume of debt collection activities, and whether defendants have an ongoing attorney-client relationship with a collection agency. *See, e.g.,* White v. Simonson & Cohen P.C., 23 F. Supp. 2d 273, 274 (E.D. N.Y.1998); Von Schmidt v. Kratter, 9 F. Supp. 2d 100, 102 (D. Conn. 1997); Cacace v. Lucas, 775 F. Supp. 502, 504 (D. Conn.1990). *See also* Goldstein, 374 F. 3d 56 (2004).

The district court in Goldstein further observed that "[c]ourts have uniformly held as a matter of law that law firms for which debt collection activities constitute ... a small percentage of their revenues are not debt collectors under the FDCPA," citing a number of decisions from outside this Circuit. Id. Based on the low percentage of Hutton's revenues derived from the three-day notices, the fact that Hutton did not advertise itself as being in the business of debt collection or as maintaining a specialty in debt collection, the lack of evidence that Hutton represented traditional debt collection agencies, and its view that Hutton's volume of debt collection activity was "significantly less" than that at issue in the two cases principally relied upon by Goldstein, the district court concluded that Hutton was not a debt collector within the meaning of the FDCPA. Id. at 65. However, the circuit court focused on the "regularity" of the firm's debt collection activity. According to the court in Goldstein, the FDCPA establishes two alternative predicates for "debt collector" status - engaging in such activity as the "principal

purpose" of the entity's business and "regularly" engaging in such activity. 15 U.S.C. § 1692a(6).

To the extent that some courts confronted with the task of articulating an analytical framework for the regularity prong of the definition have suggested that such proportionality factors may alone be determinative, the facts of the particular cases often belie the implication. Id. at 61. Where debt collector status was found lacking based on revenue or workload figures, other indicia of regularity often were also lacking; where debt collector status was found, the regularity and/or principal purpose criteria would in some cases easily have been met in any event. *Compare* Schroyer v. Frankel, 197 F. 3d 1170, 1173, 1177 (6th Cir. 1999) (where firm handled 50-75 collection cases annually, constituting less than 2% of overall practice, maintained no non-attorney staff or computer aids for debt collection, and debt collection activity came from non-collection business clients and was "incidental to, and not relied upon or anticipated in," the firm's practice of law, then the firm was not debt collector); White, 23 F. Supp. 2d at 278 (lawyer who sent 35 collection letters once as favor to personal client and filed no follow-up litigation was not debt collector); Von Schmidt v. Kratter, 9 F. Supp. 2d 100, 103-04 (D. Conn. 1997) (law firm whose total three-year revenues from debt collection were less than $1,000 and had only one consumer credit client was not debt collector); *and* Nance v. Petty, Livingston, Dawson, & Devening, 881 F. Supp. 223, 225 (W.D. Va. 1994) (collection work that constituted .61% of lawyer's

personal practice and represented 1.07% of firm's cases over 18-month period did not render defendant law firm debt collector, where plaintiff provided no evidence of debt collection activity other than that complained of in that specific action); *with* <u>Scott v. Jones</u>, 964 F. 2d 314, 316-18 (4th Cir. 1992) (principal purpose and regularity prongs satisfied where lawyer and firm had regular ongoing relationship with delinquent debt division of credit card issuer, 70-80% of revenues were generated by such work over relevant period and over 4,000 "warrants" had been issued annually in connection with such work over five-year period). *See also* <u>Garrett</u>, 110 F. 3d at 317 (rejecting district court finding that collection activity was not "regular" where 639 demand letters were mailed in nine-month period, although revenues from activity were less than 0.5% of firm's total for period).

None of the above apply here. Larry W. Johnson and his solely owned law firm, Johnson Legal Offices, L.L.C., are not debt collectors under the FDCPA. Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly collect consumer debts. Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly engage in consumer debt collection activity. Consumer debt collection activity is also not the principal purpose of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. Other than the above-referenced litigation involving Jeffrey Cordtz and Selwyn Johnson, neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. have filed any other civil action attempting to collect a consumer debt

in any fashion within the five years preceding the filing of the above-styled FDCPA civil action on or about May 11, 2021, even though Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. have filed or been involved in many other civil actions during that same time frame.

Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. advertise themselves as being in the business of consumer debt collection or as maintaining a specialty in consumer debt collection. Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. represent any traditional consumer debt collection agencies. Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. maintain any attorney staff, any non-attorney staff or any computer aids for the collection of consumer debts. Any consumer debt collection activity (i.e., the above-referenced civil actions involving Jeffrey Cordtz or Selwyn Johnson) came from non-collection business clients of Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. and are incidental to, and not relied upon or anticipated in their practice of law.

Defendant JLO and Defendant LWJ also never filed any claim seeking to collect a consumer debt against Jeffrey Cordtz on behalf of Aspen Properties in the Gwinnett Lawsuit, so none of the time spent on behalf of Aspen Properties was an attempt to collect any debt whatsoever. A total of over 75% of the time has been spent defending the Gwinnett Lawsuit brought by Jeffrey Cordtz instead of pursuing any claim. Defendant JLO and Defendant LWJ were also forced to file a compulsory counterclaim on behalf of Aspen Holdings/Wilmington Savings for the debt against

Jeffrey Cordtz or risk their client potentially losing its ability to sue on the debt. The Gwinnett Lawsuit also remains pending and Defendant JLO and Defendant LWJ still represent both parties in that matter.

A total of over 75% of the time has also been spent defending the Counterclaim brought by Selwyn Johnson instead of pursuing any claim against Selwyn Johnson as FFIF, the client therein, attempted to pay $2,100 Judgment amount to end that litigation, but Selwyn Johnson and his attorney decided to appeal in an attempt to increase the amount of their award on the Counterclaim causing FFIF to have to incur significant attorney's fees for more than 10 times the amount of their claim in order to defend that Counterclaim on appeal. Defendant JLO and Defendant LWJ have also been involved in approximately three non-judicial foreclosure referrals in the 12 months preceding the filing the above-styled FDCPA civil action on or about May 11, 2021, including the one previously referenced by Plaintiff and his counsel involving Emmanuel Ohai.

Any consumer debt collection activity in which Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. is involved, is a very small percentage of their revenues, the majority of which being any fees earned in the above-referenced civil actions involving Jeffrey Cordtz and Selwyn Johnson, and because of the lack of clarity as to what fees are actually for any debt collection in the above-referenced actions involving Jeffrey Cordtz and Selwyn Johnson (at least 75% of the time being spent on opposing claims brought by the debtors therein), Defendant JLO and Defendant LWJ cannot provide an actual percentage of time or revenues related

to such actions as compared to their overall work and revenues, but it is very small. The gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any legal related services has also been over $250,000 for each of the last five years, and over $1,000,000 over the last 18 months (partially due to a settlement in a slander case where Defendant LWJ represented himself through an appeal before associating co-counsel therein, and if such settlement exclusive of attorney's fees is not included, the gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any legal related services is still over $250,000 for each of the last five years).

Larry W. Johnson does have an Of Counsel Agreement with another law firm called Jauregui & Lindsey ("J&L"), who simply handles matters relating to non-judicial foreclosures when they arise and neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. handle any consumer debt collection activity with or for J&L. Again, J&L is a law firm and not a consumer debt collection agency, nor to the best of the undersigned's knowledge do they collect consumer debts at all, with or without the assistance of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C.

The undersigned represented some defendants in a pro se case brought by Emmanuel Ohai known as Civil Action File No.1:20-CV-2220-SCJ in the U.S. District Court for the Northern District of Georgia, Atlanta Division (the Ohai Litigation") and no claim or counterclaim has ever been filed in the Ohai Litigation seeking to collect a consumer debt. During the Ohai Litigation, Park Tree Investments 20, L.L.C. proceeded with a non-judicial foreclosure and Mr. Ohai

attempted to obtain an injunction to stop that foreclosure, which resulted in an Order (the "Federal Injunction Denial Order") denying his request for injunctive relief entered by the Honorable Steve C. Jones, United States District Judge, on or about April 5, 2021, and which ultimately resulted in the foreclosure of Mr. Ohai's property in accordance with Georgia law. In any event, Defendant JLO and Defendant LWJ are clearly not debt collectors and, therefore, are not subject to the FDCPA. Consequently, the FDCPA does not apply here and Larry W. Johnson and his solely owned law firm, Johnson Legal Offices, L.L.C. are entitled to a summary judgment in that regard.

      C.    <u>Defendant JLO and Defendant LWJ Are Entitled to Attorneys' Fees</u>.

15 U.S.C. §1692k(a)(3) provides that "… On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." The plaintiff nor his attorney herein ever investigated whether Defendant JLO and Defendant LWJ were "debt collectors" under the FDCPA, which of course is a threshold issue. On or about August 23, 2021, after filing the above-styled FDCPA civil action on or about May 11, 2021, Shimshon Wexler emailed the undersigned (the "Wexler Email") stating that "[i]t just occurred to me that if you are not a debt collector, I lose." (Doc. 53, Johnson Affidavit, paras. 39 & 40 and Exhibit "O") The Wexler Affidavit also attempted to explain, among other things, his investigation efforts prior to filing this FDCPA action, but nowhere does he describe any efforts in attempting to determine whether

Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA. (Doc. 53, Johnson Affidavit, para. 38) Jeffrey Cordtz also testified that he had never investigated whether Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were ever debt collectors, nor was he aware of any such investigation ever occurring. (Doc. 54, Cordtz Depo Transcript, pp. 65-66)

Plaintiff and his counsel also admitted in their Motion Under Rule 56(d) (Doc. 85) that "Cordtz only discovered this lawsuit [involving Selwyn Johnson] because of the Leave of Absence filed by the Johnson Defendants …" and that "[t]hrough investigating by way of searches of the state court systems, PeachCourt and Odyssey, whether any of those lawsuits involved debt collection, the undersigned discovered Exhibit A." PeachCourt and Odyssey are systems that were available at the time that Plaintiff filed his lawsuit in this case on or about May 11, 2021, yet Plaintiff and his counsel have never testified that they even went through such a search of the Defendant JLO and Defendant LWJ PRIOR to filing their lawsuit in this case to even attempt to ascertain whether Plaintiff had EVER filed a lawsuit or claim involving a consumer debt prior to this lawsuit, which they could have easily done at the time as Plaintiff's counsel has now indicated he has the knowledge and ability to do so. Plaintiff's counsel testified in another lawsuit via affidavit (the Wexler Affidavit, Doc. 53-14) of what he did with respect to his investigation in this FDCPA case and he never mentioned anything about searching PeachCourt or Odyssey prior to filing

this FDCPA civil action. Jeffrey Cordtz also testified that he was not aware of any such investigation ever occurring. (Doc. 54, Cordtz Depo Transcript, pp. 65-66)

Had Shimshon Wexler actually investigated whether Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA, he would have found out that neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA. Filing an FDCPA without even investigating a threshold issue is certainly "brought in bad faith and for the purpose of harassment". *See* <u>Diaz v. First Marblehead Corp.</u>, (11th Cir. 2016), a per curiam opinion attached hereto as Exhibit "C" and incorporated herein by reference from the 11th Circuit and the only 11th Circuit case the undersigned could find confirming liability based on 15 U.S.C. §1692k(a)(3) and Rule 11 where the borrower improperly sued a company who was not a "debt collector" under the FDCPA, as occurred in this case. Consequently, Defendant JLO and Defendant LWJ are entitled to "attorney's fees reasonable in relation to the work expended and costs."

III.    <u>CONCLUSION</u>.

Defendant JLO and Defendant LWJ are not "debt collectors" as defined under the FDCPA. Consequently, the FDCPA lawsuit against Defendant JLO and Defendant LWJ should be dismissed. Additionally, because neither Plaintiff nor his attorney even performed a cursory investigation as to whether Defendant JLO and Defendant LWJ are debt collectors, the court should award to Defendant JLO and

Defendant LWJ attorney's fees reasonable in relation to the work expended plus their costs.

WHEREFORE, Defendant JLO and Defendant LWJ again respectfully request that this honorable Court grant their Motion for Summary Judgment and for such other and further relief as this honorable Court deems just and proper.

Respectfully submitted this 31st day of March, 2022.

JOHNSON LEGAL OFFICES, L.L.C.

By:_____

Larry W. Johnson
Georgia Bar No. 394896
Attorney for Defendant JLO and
  Defendant LWJ

138 Hammond Drive, Suite B
Atlanta, GA 30328
Telephone: (404) 486-2361
Facsimile: (404) 393-0826
Email: LJohnson@SuretyBondsAgency.com
CordtzJLOSJBrief02

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing BRIEF IN SUPPORT OF DEFENDANT JLO'S AND DEFENDANT LWJ'S MOTION FOR SUMMARY JUDGMENT was served upon all parties electronically via the Court's system, plus the following who was also served by mailing same by United States First Class Mail in a properly addressed envelope with adequate postage affixed thereon to ensure delivery, addressed as follows:

> Shimshon Wexler, Esq.
> S WEXLER, L.L.C.
> 2244 Henderson Mill Road
> Suite 108
> Decatur, GA 30345
> Attorney for Plaintiff

This 31ST day of March, 2022.

Larry W. Johnson
Attorney for Defendant JLO and
Defendant LWJ

JOHNSON LEGAL OFFICES, L.L.C.
138 Hammond Drive, Suite B
Atlanta, GA 30328
Telephone: (404) 486-2361
Facsimile: (404) 393-0826
Email: LJohnson@SuretyBondsAgency.com