UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JEFFREY D. CORDTZ, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) CIVIL ACTION FILE |
| vs. | ) |
| | ) 1:21-CV-02003-MHC-LTW |
| JOHNSON LEGAL OFFICES, L.L.C., | ) |
| FCI LENDER SERVICES, INC. and | ) |
| LARRY W. JOHNSON, | ) |
| | ) |
|    Defendants. | ) |

## <u>AFFIDAVIT OF LARRY W. JOHNSON</u>

STATE OF GEORGIA

COUNTY OF FULTON

Personally appeared before the undersigned duly authorized to administer oaths, LARRY W. JOHNSON, who, after being duly sworn, deposes and states on oath as follows:

1.

That I am the managing and sole member of Johnson Legal Offices, L.L.C. ("JLO") and sole attorney at JLO, that I based this Affidavit on my own personal knowledge and my knowledge of the accounts of JLO, that I am competent to testify

regarding those things and those accounts about which I have personal knowledge, and that I am over 18 years of age.

2.

That I am the custodian of and familiar with the business records of JLO, which include the pleadings, account statements, billings, letters and various documents of JLO.

3.

That JLO's business records were maintained by JLO at the office where I am the managing member.

4.

That the business records were made as part of the regular practice of JLO and were kept in the course of a regularly conducted business activity of JLO.

5.

That the business records were made at or near the time of the date of such documents and the entries were subsequently reviewed for accuracy and it is the regular practice of JLO to do this.

6.

That Jeffrey Cordtz originally filed a pro se Verified Complaint for Declaratory Judgment, Specific Performance, and Equitable Accounting (the "Gwinnett Complaint") against Aspen Properties Group, as Trustee ("Aspen

Properties") on or about October 10, 2019, in Civil Action File No. 19-A-10263-7 in the Superior Court of Gwinnett County, Georgia (the "Gwinnett Lawsuit" or "Gwinnett Litigation"), and a true and correct copy of the Gwinnett Complaint is attached to the Affidavit of Larry W. Johnson dated 11/29/21 (the "First LWJ Affidavit"; Doc. 53) as Exhibit "A" (Doc. 53-1) and is incorporated herein by reference.

7.

That a non-final Order (the "Gwinnett Default Order") was entered on or about July 27, 2020, granting Plaintiff's Motion for Entry of Default and a true and correct copy of the Gwinnett Default Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "B" (Doc. 53-2) and is incorporated herein by reference.

8.

That a non-final Order (the "Gwinnett Default Set Aside Order") was entered on or about September 14, 2020, granting Plaintiff's Motion for Entry of Default and a true and correct copy of the Gwinnett Default Set Aside Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "C" (Doc. 53-3) and is incorporated herein by reference.

9.

That after the entry of the Gwinnett Default Set Aside Order on or about September 14, 2020, I was retained to represent Aspen Properties (the lone defendant

in the Gwinnett Litigation at the time and who has never asserted a consumer debt collection claim against Jeffrey Cordtz) to assist in defending it in that matter.

10.

That on or about November 13, 2020, I attempted to file an Amended Motion in the Gwinnett Litigation, my first pleading to be filed in that case, which was "Rejected" (the "Gwinnett Rejection Notice") via the online Gwinnett court filing system by the Gwinnett clerk specifically indicating that "this case has been closed since 9/14/2020. This motion would be a new case & filing fee of 209.00 dp", and a true and correct copy of the Gwinnett Rejection Notice is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "D" (Doc. 53-4) and is incorporated herein by reference.

11.

That because the Gwinnett Litigation had been closed by the clerk and we could not file any further pleadings therein but had to pursue a new action, and because Jeffrey Cordtz resided in Fulton County, we filed a Complaint for Default on Note (the "First Fulton Complaint") on or about January 21, 2021, on behalf of Aspen Properties and against Jeffrey Cordtz in Civil Action File No. 21EV000424 in the State Court of Fulton County, Georgia (the "First Fulton Litigation"), and a true and correct copy of the First Fulton Complaint is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "E" (Doc. 53-5) and is incorporated herein by reference.

12.

That subsequent to our filing the First Fulton Litigation, Rick Alembik as counsel for Jeffrey Cordtz advised us that his client had received notice of a transfer of the loan from Aspen Properties, and we also became aware that the Gwinnett Litigation for some reason had been reopened; consequently, on or about February 12, 2021, we filed in the Gwinnett Lawsuit a Motion for Continuance and to Add Defendant and Real Party in Interest (the "Gwinnett Add Party Motion") along with a consent order agreed to between me and Rick Alembik adding Aspen Holdings Trust, a Delaware Statutory Trust ("Aspen Holding") as a party defendant, and a true and correct copy of the Gwinnett Add Party Motion is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "F" (Doc. 53-6) and is incorporated herein by reference.

13.

That prior to filing the First Fulton Litigation, I had been advised that representatives of Aspen Properties that Aspen Properties was the owner of the loan at issue and I had been provided assignments showing the same, but after being advised by Rick Alembik of a possible transfer, I contacted my client, the representatives of Aspen Properties, and was made to believe that they were unaware of such transfer, and they later confirmed that unbeknownst to them, the loan at issue had been included in a bulk transfer.

14.

That on or about February 17, 2021, a Consent Order Granting Leave to Plaintiff to Add Aspen Holdings as a Party Defendant (the "Gwinnett Add Party Order") was entered in the Gwinnett Litigation, and a true and correct copy of the Gwinnett Add Party Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "G" (Doc. 53-7) and is incorporated herein by reference.

15.

That on or about March 2, 2021, and after the entry of the Gwinnett Add Party Order, we filed on behalf of Aspen Properties a Voluntary Dismissal Without Prejudice (the "First Fulton Dismissal") of the First Fulton Litigation, and a true and correct copy of the First Fulton Dismissal is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "H" (Doc. 53-8) and is incorporated herein by reference.

16.

That subsequently I found out that the loan was not transferred to Aspen Holdings, but to their trustee known as Wilmington Savings Fund Society, F.S.B., not in its individual capacity but solely as Owner Trustee of Aspen Holdings (herein collectively referred to as "Wilmington Savings"), and on or about June 23, 2021, a Consent Order Granting Leave to Substitute a Party Defendant (the "Gwinnett Substitute Order") was entered in the Gwinnett Litigation, and a true and correct

copy of the Gwinnett Substitute Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "I" (Doc. 53-9) and is incorporated herein by reference.

17.

That I never filed any claim seeking to collect a consumer debt against Jeffrey Cordtz on behalf of Aspen Properties in the Gwinnett Lawsuit (or any other lawsuit), and I only filed a counterclaim against Jeffrey Cordtz on behalf of Aspen Holdings/Wilmington Savings so none of my time spent on behalf of Aspen Properties was an attempt to collect any debt whatsoever, and a total of over 75% of my time has been spent defending the Gwinnett Lawsuit brought by Jeffrey Cordtz instead of pursuing any claim, and the Gwinnett Lawsuit remains pending and I still represent both parties in that matter.

18.

That on or about June 28, 2021, I filed on behalf of Aspen Properties and Wilmington Savings Defendants' Motion for Judgment on the Pleadings (the "Gwinnett Judgment Motion") in the Gwinnett Litigation, and a true and correct copy of the Gwinnett Judgment Motion is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "J" (Doc. 53-10) and is incorporated herein by reference.

19.

That on or about June 28, 2021, I also filed on behalf of Wilmington Savings Defendant Wilmington Savings' Motion for Summary Judgment (the "Gwinnett

Summary Judgment Motion") in the Gwinnett Litigation, and a true and correct copy of the Gwinnett Summary Judgment Motion is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "K" (Doc. 53-11) and is incorporated herein by reference.

20.

That on or about November 2, 2021, an Order (the "Gwinnett Judgment Order") was entered in the Gwinnett Litigation denying the Gwinnett Judgment Motion (we believe it applies to the Gwinnett Judgment Motion even though it appears to incorrectly reference a summary judgment motion), and a true and correct copy of the Gwinnett Judgment Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "L" (Doc. 53-12) and is incorporated herein by reference.

21.

That on or about November 2, 2021, an Order (the "Gwinnett Summary Judgment Order") was entered in the Gwinnett Litigation denying the Gwinnett Summary Judgment Motion, and a true and correct copy of the Gwinnett Summary Judgment Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "M" (Doc. 53-13) and is incorporated herein by reference.

22.

That as of the date of this Affidavit, the Gwinnett Litigation remains pending.

23.

That on or about January 21, 2021, I filed a Complaint for Damages (the "Second Fulton Complaint") against Jeffrey Cordtz, Richard Alembik and Shimshon Wexler in Civil Action File No. 21EV003542 in the State Court of Fulton County, Georgia (the "Second Fulton Litigation").

24.

That on or about October 5, 2021, Shimshon Wexler executed under oath the Second Declaration of Defendant Shimshon Wexler (the "Wexler Affidavit") and on or about October 15, 2021, the Wexler Affidavit was filed in the Second Fulton Litigation, and a true and correct copy of the Wexler Affidavit is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "N" (Doc. 53-14) and is incorporated herein by reference.

25.

That the Wexler Affidavit (Doc. 53-14) attempted to explain, among other things, his investigation efforts prior to filing this FDCPA action, but nowhere does he describe any efforts in attempting to determine whether Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA.

26.

That the testimony in the Wexler Affidavit (Doc. 53-14) never mentioned

anything about searching PeachCourt or Odyssey prior to filing this FDCPA civil action in order to investigate whether Defendant JLO and Defendant LWJ have previously been involved in litigation against a consumer on a consumer debt, even though Mr. Wexler has indicated to this Court his ability to do so in his Motion Under Rule 56(d) (Doc. 85).

27.

That on or about August 23, 2021, **after filing** the above-styled FDCPA civil action on or about May 11, 2021, Shimshon Wexler emailed the undersigned (the "Wexler Email") stating that "[i]t just occurred to me that if you are not a debt collector, I lose.", and a true and correct copy of the Wexler Email is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "O" (Doc. 53-15) and is incorporated herein by reference.

28.

That had Shimshon Wexler actually investigated whether Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA, he would have found out that neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA.

29.

That the undersigned represented a defendant in a pro se case brought by

Emmanuel Ohai known as Civil Action File No.1:20-CV-2220-SCJ in the U.S. District Court for the Northern District of Georgia, Atlanta Division (the "Ohai Litigation") and no claim or counterclaim has even been filed in the Ohai Litigation seeking to collect a consumer debt.

30.

That during the Ohai Litigation, Park Tree Investments 20, L.L.C. proceeded with a non-judicial foreclosure and Mr. Ohai attempted to obtain an injunction to stop that foreclosure, which resulted in an Order (the "Federal Injunction Denial Order") denying his request for injunctive relief entered by the Honorable Steve C. Jones, United States District Judge, on or about April 5, 2021, and which ultimately resulted in the foreclosure of Mr. Ohai's property in accordance with Georgia law, and a true and correct copy of the Federal Injunction Denial Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "P" (Doc. 53-16) and is incorporated herein by reference.

31.

That on or about December 29, 2017, and filed January 4, 2018, First Financial Investment Fund V, L.L.C. ("FFIF") brought a Statement of Claim (the "Complaint") against Selwyn Johnson in Civil Action File No. 18M86286 in the Magistrate Court of DeKalb County seeking the amount of $1,898.43 plus court costs, and a true and correct copy of the Complaint is attached to the Affidavit of

Larry W. Johnson dated 1/28/22 (the "Second LWJ Affidavit"; Doc. 88) as Exhibit "A" (Doc. 88-1) and is incorporated herein by reference.

32.

That on or about April 18, 2018, Selwyn Johnson filed an Answer to Complaint (the "Answer") and separately filed an extensive Counterclaim against FFIF in Civil Action File No. 18M86286, and a true and correct copy of the Answer is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "B" (Doc. 88-2) and a true and correct copy of the Counterclaim is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "C" (Doc. 88-3) and both are incorporated herein by reference.

33.

That after a trial and on or about June 12, 2018, the Magistrate Judge entered a Judgment against FFIF and in favor of Selwyn Johnson on his Counterclaim in Civil Action File No. 18M86286 in the amount of $2,100.00, and a true and correct copy of the Judgment is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "D" (Doc. 88-4) and is incorporated herein by reference.

34.

That on or about July 5, 2018, Selwyn Johnson (who had prevailed in the underlying case in Civil Action File No. 18M86286) filed a Notice of Appeal, even though FFIF had attempted to pay the Judgment by sending a check to counsel for Selwyn Johnson for the amount of the Judgment, and a true and correct copy of the

Notice of Appeal is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "E" (Doc. 88-5) and is incorporated herein by reference.

35.

That on or about July 14, 2018, the court clerk issued a Notice indicating the appealed magistrate court case would now be known as Civil Action File No. 18A70172 in the State Court of DeKalb County, Georgia, and a true and correct copy of the Notice is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "F" (Doc. 88-6) and is incorporated herein by reference.

36.

That on or about September 13, 2018, the undersigned attorney filed his first pleading entering an appearance in Civil Action File No. 18A70172 by filing a Motion to Dismiss Counterclaim, and a true and correct copy of the Motion to Dismiss Counterclaim is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "G" (Doc. 88-7) and is incorporated herein by reference.

37.

That the undersigned counsel was retained directly by FFIF and not by prior counsel, with whom the undersigned had no previous or subsequent relationship and who never paid the undersigned for any of his fees, and subsequently on or about October 22, 2018, a Notice of Substitution of Counsel was filed wherein the prior counsel basically withdrew from the case, and a true and correct copy of the Notice

of Substitution of Counsel is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "H" (Doc. 88-8) and is incorporated herein by reference.

38.

That it is the undersigned's understanding based on conversations with prior counsel in that case that the spouse of one of the partners had passed away and that as a result they were closing their law firm's doors and going out of business.

39.

That as FFIF's in-house counsel explained, the undersigned was retained specifically because of FFIF's concern regarding the Counterclaim and the defense thereof given that the Defendant had prevailed in the Magistrate Court below, but then appealed the ruling in his favor in an obvious attempt to significantly increase any award he might be able to obtain.

40.

That the undersigned was retained by FFIF and was paid over 10 times more than the client's underlying claim (and over 10 times more than the amount of the underlying Judgment in favor of Selwyn Johnson) in defending against the Counterclaim as well as in pursuing its Complaint because of the client's concerns as outlined above.

41.

That ultimately FFIF prevailed on the Complaint pursuant to that certain final

Order (the "Final Order") and in defense of the Counterclaim and such ruling was appealed, but the appeal was withdrawn, and a true and correct copy of the Final Order is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "I" (Doc. 88-9) and is incorporated herein by reference.

42.

That after FFIF prevailed on the Complaint and in defense of the Counterclaim, FFIF sought attorney's fees against Selwyn Johnson and his counsel in accordance with Georgia law, but Selwyn Johnson passed away before any ruling on attorney's fees as described in the Statement Noting a Party's Death (the "Death Statement") filed on or about December 27, 2019, a Motion to Stay Case Due to the Death of the Defendant (the "Death Motion") filed on or about January 23, 2020, and the Alabama Death Certificate filed thereafter (the Death Statement, the Death Motion and the Alabama Death Certificate are hereinafter sometimes referred to as the "Defendant's Death Documents") and subsequently the attorney's fee request was denied, and a true and correct copy of the Defendant's Death Documents is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "J" (Doc. 88-10) and is incorporated herein by reference.

43.

That all of the pleadings in the Jeffrey Cordtz cases and the Selwyn Johnson case have been a matter of public record since the inception of those cases, nothing

was filed under seal, and Plaintiff and his counsel have had access to such records since before filing their complaint in this civil action, including but not limited to online access via the Odyssey system.

44.

That a total of over 75% of my time has been spent defending the Counterclaim brought by Selwyn Johnson instead of pursuing any claim against Selwyn Johnson as FFIF, the client therein, attempted to pay the $2,100 Judgment amount to end that litigation, but Selwyn Johnson and his attorney decided to reject that payment and appeal in an attempt to increase the amount of their award on the Counterclaim causing FFIF to have to incur significant attorney's fees for more than 10 times the amount of their claim in order to defend that Counterclaim on appeal.

45.

That other than the two cases already identified in the above-styled civil action involving Jeffrey Cordtz (the Plaintiff herein) and Selwyn Johnson (a total of two cases over five years), neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. have filed or been involved in any other civil action attempting to collect a consumer debt in any fashion within the five years preceding the filing of the above-styled FDCPA civil action on or about May 11, 2021, even though Larry W. Johnson and his solely owned law firm Johnson Legal Offices,

L.L.C. have filed or been involved in many other civil actions during that same time frame.

46.

That Plaintiff and his counsel also admitted in their Motion Under Rule 56(d) (Doc. 85) that "Cordtz only discovered this lawsuit [involving Selwyn Johnson] because of the Leave of Absence filed by the Johnson Defendants ..." and that "[t]hrough investigating by way of searches of the state court systems, PeachCourt and Odyssey, whether any of those lawsuits involved debt collection, the undersigned discovered Exhibit A."

47.

That PeachCourt and Odyssey are systems that were available at the time that Plaintiff filed his lawsuit in this case on or about May 11, 2021, yet Plaintiff and his counsel have never testified that they even went through such a search of the Defendants PRIOR to filing their lawsuit in this case to even attempt to ascertain whether Plaintiff had EVER filed a lawsuit or claim involving a consumer debt prior to this lawsuit, which they could have easily done at the time as Plaintiff's counsel has now indicated he has the knowledge and ability to do so.

48.

That Plaintiff's counsel testified in another lawsuit via affidavit (the Wexler Affidavit, Doc. 53-14) of what he did with respect to his investigation in this FDCPA

case and he never mentioned anything about searching PeachCourt or Odyssey prior to filing this FDCPA civil action.

49.

That the Gwinnett Litigation which is still pending was initially a lawsuit filed by Jeffrey Cordtz and the undersigned was retained to assist in defending that action with the majority of his time spent on defending such action (over 75% of his time), and the undersigned was forced to file a compulsory counterclaim for the debt against Jeffrey Cordtz or risk his client potentially losing its ability to sue on the debt.

50.

That Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. have been involved in approximately three non-judicial foreclosure referrals in the 12 months preceding the filing the above-styled FDCPA civil action on or about May 11, 2021, including the one previously referenced by Plaintiff and his counsel involving Emmanuel Ohai.

51.

That the gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any legal related services has been over $250,000 for each of the last five years, and specifically has been over $1,000,000 in the last 18 months preceding the date of this Affidavit (partially due to a settlement in a slander case where Defendant LWJ represented himself through an appeal before associating co-counsel therein,

and if such settlement exclusive of attorney's fees is not included, the gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any non-attorney fee legal related services is still over $250,000 for each of the last five years).

52.

That neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly collect consumer debts.

53.

That neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly engage in consumer debt collection activity.

54.

That consumer debt collection activity is not the principal purpose of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C.

55.

That any consumer debt collection activity in which Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. is involved, is a very small percentage of their revenues, the majority of which being any fees earned in the above-referenced civil actions involving Jeffrey Cordtz and Selwyn Johnson, and because of the lack of clarity as to what fees are actually for any debt collection (versus defending claims) in the above-referenced actions involving Jeffrey Cordtz and Selwyn Johnson, I cannot provide an actual percentage of time or revenues

related to such actions as compared to my overall work and revenues, but it is very small.

56.

That neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. advertise themselves as being in the business of consumer debt collection or as maintaining a specialty in consumer debt collection.

57.

That neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. represent any traditional consumer debt collection agencies.

58.

That neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. maintain any attorney staff, any non-attorney staff or any computer aids for the collection of consumer debts.

59.

That any consumer debt collection activity (i.e., the above-referenced civil actions involving Jeffrey Cordtz and Selwyn Johnson) came from non-collection business clients of Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. and are incidental to, and not relied upon or anticipated in their practice of law.

60.

That Larry W. Johnson does have an Of Counsel Agreement with another law firm called Jauregui & Lindsey ("J&L"), which simply handles matters relating to non-judicial foreclosures when they arise and neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. handle any consumer debt collection activity with or for J&L, which again is a law firm and not a consumer debt collection agency, nor to the best of the undersigned's knowledge does J&L collect consumer debts at all, with or without the assistance of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C.

61.

That I have handled numerous lawsuits throughout my 31-year plus legal career, both offensively and defensively, including but not limited to lawsuits involving FDCPA claims, plus I have filed numerous motions and conducted numerous hearings, and that I am competent to testify regarding the reasonableness of attorney's fees in this case.

62.

That I have spent 164.90 hours through the date of this affidavit in defending myself and my firm in this civil action, drafting and filing numerous pleadings, attempting to negotiate numerous issues, attending hearings, and following up on this matter and that my billable rate is $300.00 per hour.

63.

That the amount for fees incurred by myself and my firm in this civil action in defending this civil action through the date of this affidavit is $49,470.00.

64.

That the costs incurred by myself and my firm in this civil action in defending this civil action as of the date of this affidavit is as follows: (i) $2,157.32 for deposition costs (with the deposition cost for last week being undetermined at this time); (ii) $52.22 for a postage; (iii) $220.00 for copies at $0.10 per page; for a total in currently known costs of $2,429.54.

65.

That the total amount incurred by myself and my firm in this civil action in defending this civil action as of the date of this affidavit, therefore, is $51,899.54.

66.

That in my opinion, the time spent, the billable rate, and the total amount incurred as outlined above in attorney's fees and costs are all reasonable.

67.

That I was present at the deposition of Jeffrey D. Cordtz conducted on or about October 21, 2021, in the federal case known as Cordtz v. Johnson Legal et. al, Civil Action File No. 1:21-CV-02003-MHC-LTW (the "FDCPA Case"),

including Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G and Exhibit 1 and the resulting transcript of Jeffrey D. Cordtz's testimony (the "Cordtz Depo Transcript") at that deposition and previously filed herein (Docs. 54, 55 and 56) is a true and correct representation of the statements made at such deposition by Jeffrey D. Cordtz and the others who were identified therein.

68.

That this Affidavit is made in support of Defendant JLO's and Defendant LWJ's Motion for Summary Judgment.

FURTHER AFFIANT SAITH NOT.

LARRY W. JOHNSON

Sworn to and subscribed before me
this 31st day of March, 2022.

Notary Public

(Notarial Seal)

My commission expires on:
1-26-25

CordtzJLOSJAff05

Shawana Gail Trammell
NOTARY PUBLIC
Cobb County, GEORGIA
My Commission Expires 01/26/2025

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing AFFIDAVIT OF LARRY W. JOHNSON was served on all parties electronically via the Court's system, and the following who was served by mailing same by United States First Class Mail in a properly addressed envelope with adequate postage affixed thereon to ensure delivery, addressed as follows:

> Shimshon Wexler, Esq.
> S WEXLER, L.L.C.
> 2244 Henderson Mill Road
> Suite 108
> Decatur, GA 30345
> Attorney for Plaintiff

This 31st day of March, 2022.

Larry W. Johnson
Attorney for Defendants JLO and
Defendant LWJ

JOHNSON LEGAL OFFICES, L.L.C.
138 Hammond Drive, Suite B
Atlanta, GA 30328
Telephone: (404) 486-2361
Facsimile: (404) 393-0826
Email: LJohnson@SuretyBondsAgency.com