# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

--------------------------------------------------

**Jeffrey Cordtz,**                                    **Case No. 1:21-cv-02003-MHC-LTW**

**Plaintiff**

                    **Versus**


**Johnson Legal Offices, LLC;**
**FCI Lender Services, Inc.;**
**And Larry W. Johnson**


**Defendants**

---------------------------------------------------

## Plaintiff's Response to the Johnson Defendants material facts

1-  On or about April 3, 2006, Plaintiff executed a Home Equity Line of Credit (the "Note") in the original principal credit limit amount of $200,000 in favor of IndyMac Bank, F.S.B. ("IndyMac"). [Jeffrey D. Cordtz deposition transcript ("Cordtz Depo Transcript"),     pp.     23-29 and Exhibit "A", (Doc. 54)] Response- Conceded.

2-  On or about April 3, 2006, Plaintiff executed a Deed to Secure Debt (With Future Advances Clause) (the "Security Deed") in the original principal credit limit amount of $200,000 in favor of Indymac. [Cordtz Depo Transcript, pp. 30-

33 and Exhibit "B"; certified copy of Security Deed in Fourth Notice of Filing, (Doc. 54)]

Response- Conceded.

3- On or about August 3, 2010, IndyMac assigned the Note and the Security Deed to The Federal Deposit Insurance Corporation, as Receiver for Indymac (Hereinafter collectively referred to as the "FDIC") pursuant to that certain Assignment and Transfer of Note and Security Agreement ("Assignment #1"). [Certified copy of Assignment #1 in Fourth Notice of Filing, (Doc. 57)]

Response- Conceded.

4- On or about April 11, 2018, the FDIC assigned the Note and the Security Deed to Value Recovery Group, L.P. ("VRG") pursuant to that certain Assignment of Security Deed ("Assignment #2"). [Certified copy of Assignment #2 in Fourth Notice of Filing, (Doc. 57)]

Response-Denied. The document only shows the Security Deed being assigned and not the note.

5- On or about May 11, 2018, VRG assigned the Note and the Security Deed to Aspen Properties Group, L.L.C., as Trustee ("Aspen Properties") pursuant to that certain      Assignment of      Security      Deed ("Assignment      #3"). [Certified      copy of Assignment #3 in Fourth Notice of Filing, (Doc. 57)].

Response- Denied. The document only shows the Security Deed being assigned.

6- On or about January 14, 2021, Aspen Properties assigned the Note and the Security Deed to Wilmington Savings Fund Society, F.S.B., not in its individual capacity but solely as Owner Trustee of Aspen Holdings ("Wilmington Savings"), pursuant to that certain Assignment of Security Deed ("Assignment #4") and Wilmington Savings is the current owner and holder of the Note and the Security Deed and Wilmington Savings is also currently in possession of the original Note. [Certified copy of Assignment #4 in Fourth Notice of Filing, (Doc. 57)]

Response: Denied. The document only shows the Security Deed being assigned.

7- Plaintiffs last payment he has made on his loan at issue here was before September of 2012 and he has defaulted and remains in default pursuant to the terms of the Note and the Security Deed. [Cordtz Depo Transcript, pp. 39, 53; (Doc. 54)].

Response- Admitted.

8-      No payment has been made on the Note by Plaintiff since 2012 and no payments have been made since the Trust has become the owner and holder of the Note and the Security Deed. [Cordtz Depo Transcript, pp. 39, 53; Doc. 54)]

Response- Denied that the Trust has become the owner and holder of the Note as there is no evidence for that. Admitted that no payments have been made since 2012.

9- Jeffrey Cordtz originally filed a pro se Verified Complaint for Declaratory Judgment, Specific Performance, and Equitable Accounting (the "Gwinnett Complaint") against Aspen Properties Group, as Trustee ("Aspen Properties") on or about October 10, 2019, in Civil Action File No. 19-A-10263-7 in the Superior Court of Gwinnett County, Georgia (the "Gwinnett Lawsuit" or "Gwinnett Litigation"), and a true and correct copy of the Gwinnett Complaint is attached to the Affidavit of Larry W. Johnson dated 11/29/21 (the "First LWJ Affidavit"; Doc. 53) as Exhibit "A" (Doc. 53-1) and is incorporated herein by reference. [Affidavit of Larry W. Johnson (the "Third LWJ Affidavit") dated March 31, 2022, para. 6].

Response- Admitted.

10- A non-final Order (the "Gwinnett Default Order") was entered on or about July 27, 2020, granting Plaintiffs Motion for Entry of Default and a true and correct copy of the Gwinnett Default Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "B" (Doc. 53-2) and is incorporated herein by reference. (Third LWJ Affidavit, para. 7).

Response- Admitted.

11-  A non-final Order (the "Gwinnett Default Set Aside Order") was entered on or about September 14, 2020, granting Plaintiffs Motion for Entry of Default and a true and correct copy of the Gwinnett Default Set Aside Order is

attached to the First LWJ Affidavit (Doc. 53) as Exhibit "C" (Doc. 53-3) and is
incorporated herein by reference. (Third LWJ Affidavit, para. 8).

Response- Denied. This document shows that the Court refused to set aside the
default.

12- After the entry of the Gwinnett Default Set Aside Order on or about
September 14, 2020, I was retained to represent Aspen Properties (the lone
defendant in the Gwinnett Litigation at the time and who has never asserted a
consumer debt collection claim against Jeffrey Cordtz) to assist in defending it in
that matter. (Third LWJ Affidavit, para. 9).

Response- Denied. The Johnson Defendants have filed numerous summary
judgment motions against Cordtz seeking to collect the debt. Cordtz was trying to
relieve himself from a debt and Johnson was hired to prevent Cordtz from doing
that by collecting the debt. Johnson filed a lawsuit in January 2021 in Fulton
County seeking to collect the debt and was not seeking any collateral or security
enforcement.

13-   On or about November 13, 2020, I attempted to file an Amended
Motion in the Gwinnett Litigation, my first pleading to be filed in that case, which
was "Rejected" (the "Gwinnett Rejection Notice") via the online Gwinnett court
filing system by the Gwinnett clerk specifically indicating that "this case has been
closed since 9/14/2020. This motion would be a new case & filing fee of 209.00

dp", and a true and correct copy of the Gwinnett Rejection Notice is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "D" (Doc. 53-4) and is incorporated herein by reference. (Third LWJ Affidavit, para. 10)

Response- Admitted.

14-    Because the Gwinnett Litigation had been closed by the clerk and we could not file any further pleadings therein but had to pursue a new action, and because Jeffrey Cordtz resided in Fulton County, we filed a Complaint for Default on Note (the "First Fulton Complaint") on or about January 21, 2021, on behalf of Aspen Properties and against Jeffrey Cordtz in Civil Action File No. 21EV000424 in the State Court of Fulton County, Georgia (the "First Fulton Litigation"), and a true and correct copy of the First Fulton Complaint is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "E" (Doc. 53-5) and is incorporated herein by reference. (Third LWJ Affidavit, para. 11).

Response- Admitted.

15- Subsequent to our filing the First Fulton Litigation, Rick Alembik as counsel for Jeffrey Cordtz advised us that his client had received notice of a transfer of the loan from Aspen Properties, and we also became aware that the Gwinnett Litigation for some reason had been reopened; consequently, on or about February 12, 2021, we filed in the Gwinnett Lawsuit a Motion for Continuance and to Add Defendant and Real Party in Interest (the "Gwinnett Add Party

Motion") along with a consent order agreed to between me and Rick Alembik adding Aspen Holdings Trust, a Delaware Statutory Trust ("Aspen Holding") as a party defendant, and a true and correct copy of the Gwinnett Add Party Motion is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "F" (Doc. 53-6) and is incorporated herein by reference. (Third LWJ Affidavit, para. 12).

Response- This is not separate or concise. There is no evidence that Rick Alembik advised Johnson of the transfer other than Johnson's affidavit which is hearsay.

16- Prior to filing the First Fulton Litigation, I had been advised that representatives of Aspen Properties that Aspen Properties was the owner of the loan at issue and I had been provided assignments showing the same, but after being advised by Rick Alembik of a possible transfer, I contacted my client, the representatives of Aspen Properties, and was made to believe that they were unaware of such transfer, and they later confirmed that unbeknownst to them, the loan at issue had been included in a bulk transfer. (Third LWJ Affidavit, para. 13)

Response- Denied. There is no evidence if the Aspen representatives advised Johnson of anything or what assignments had been provided to him or that Alembik advised him of a transfer or that Aspen was unaware of the transfer or that unbeknownst to them there was a bulk transfer. In fact, the only evidence of a transfer is the transfer document and there is no evidence of a bulk transfer or even what the meaning of "bulk transfer" is.

17-    On or about February 17, 2021, a Consent Order Granting Leave to Plaintiff to Add Aspen Holdings as a Party Defendant (the "Gwinnett Add Party Order") was entered in the Gwinnett Litigation, and a true and correct copy of the Gwinnett Add Party Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "G" (Doc. 53- 7) and is incorporated herein by reference. (Third LWJ Affidavit, para. 14)

Response- Admitted.

18-On or about March 2, 2021, and after the entry of the Gwinnett Add Party Order, we filed on behalf of Aspen Properties a Voluntary Dismissal Without Prejudice (the "First Fulton Dismissal") of the First Fulton Litigation, and a true and correct copy of the First Fulton Dismissal is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "H" (Doc. 53-8) and is incorporated herein by reference. (Third LWJ Affidavit, para. 15)

Response- Admitted.

19- Subsequently I found out that the loan was not transferred to Aspen Holdings, but to their trustee known as Wilmington Savings Fund Society, F.S.B., not in its individual capacity but solely as Owner Trustee of Aspen Holdings (herein collectively referred to as "Wilmington Savings"), and on or about June 23, 2021, a Consent Order Granting Leave to Substitute a Party Defendant (the "Gwinnett Substitute Order") was entered in the Gwinnett Litigation, and a true

and correct copy of the Gwinnett Substitute Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "I" (Doc. 53-9) and is incorporated herein by reference. (Third LWJ Affidavit, para. 16)

Response- Admitted.

20-I never filed any claim seeking to collect a consumer debt against Jeffrey Cordtz on behalf of Aspen Properties in the Gwinnett Lawsuit (or any other lawsuit), and I only filed a counterclaim against Jeffrey Cordtz on behalf of Aspen Holdings/Wilmington Savings so none of my time spent on behalf of Aspen Properties was an attempt to collect any debt whatsoever, and a total of over 75% of my time has been spent defending the Gwinnett Lawsuit brought by Jeffrey Cordtz instead of pursuing any claim, and the Gwinnett Lawsuit remains pending and I still represent both parties in that matter. (Third LWJ Affidavit, para. 17)

Response- Denied. Johnson's counterclaim specifically seeks to collect the debt. There is no evidence that Johnson was paid any money for defending the case brought by Cordtz. Moreover, any amount paid to so called "defend" the case was simply to not allow Cordtz to get away from his debt and to make him pay the debt. Further the bills that were paid only reference Cordtz indicating that they were to collect from Cordtz. Johnson also filed a lawsuit against Cordtz which was dismissed only because he could file a counterclaim.

21-On or about June 28, 2021, I filed on behalf of Aspen Properties and

Wilmington Savings Defendants'        Motion for Judgment on the Pleadings (the

"Gwinnett Judgment Motion") in the Gwinnett Litigation, and a true and correct

copy of the Gwinnett Judgment Motion is attached to the First LWJ Affidavit

(Doc. 53) as Exhibit "J" (Doc. 53-10) and is incorporated herein by reference.

(Third LWJ Affidavit, para. 18).

Response- Admitted. It is noted that this motion seeks to preclude Plaintiff from

escaping his debt and it is an attempt to collect a debt.

22- On or about June 28, 2021, I also filed on behalf of Wilmington Savings

Defendant Wilmington Savings' Motion for Summary Judgment (the "Gwinnett

Summary Judgment Motion") in the Gwinnett Litigation, and a true and correct

copy of the Gwinnett Summary Judgment Motion is attached to the First LWJ

Affidavit (Doc. 53) as Exhibit "K" (Doc. 53-11) and is incorporated herein by

reference. (Third LWJ Affidavit, para. 19).

Response- Admitted. Further it should be noted that this motion was a summary

judgment motion to collect a debt. This cannot even be disputed.

23-On or about November 2, 2021, an Order (the "Gwinnett Judgment

Order") was entered in the Gwinnett Litigation denying the Gwinnett Judgment

Motion (we believe it applies to the Gwinnett Judgment Motion even though it

appears to incorrectly reference a summary judgment motion), and a true and

correct copy of the Gwinnett Judgment Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "L" (Doc. 53-12) and is incorporated herein by reference. (Third LWJ Affidavit, para. 20).

Response- Admitted. Again, the Court was ruling on Johnson's debt collection attempt. The only defense that Johnson did was to stop Cordtz from not paying his debt.

24- On or about November 2, 2021, an Order (the "Gwinnett Summary Judgment Order") was entered in the Gwinnett Litigation denying the Gwinnett Summary Judgment Motion, and a true and correct copy of the Gwinnett Summary Judgment Order is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "M" (Doc. 53-13) and is incorporated herein by reference. (Third LWJ Affidavit, para. 21)

Response- Admitted.

25- As of the date of this Affidavit, the Gwinnett Litigation remains pending. (Third LWJ Affidavit, para. 22)

Response- Admitted.

26-On or about January 21, 2021, I filed a Complaint for Damages (the "Second Fulton Complaint") against Jeffrey Cordtz, Richard Alembik and Shimshon Wexler in Civil Action File No. 21EV003542 in the State Court of

Fulton County, Georgia (the "Second Fulton Litigation"). (Third LWJ Affidavit, para. 23)

Response- Denied. This Complaint was filed in June 2021. See attached. This Complaint was stricken under Georgia's anti-SLAPP statute. And although Johnson has appealed the ruling, his appeal concerns his liability for attorney's fees and not the merits of the decision. See Decision. Further, Johnson has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See Opposition Pages 1-5.

27- On or about October 5, 2021, Shimshon Wexler executed under oath the Second Declaration of Defendant Shimshon Wexler (the "Wexler Affidavit") and on or about October 15, 2021, the Wexler Affidavit was filed in the Second Fulton Litigation, and a true and correct copy of the Wexler Affidavit is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "N" (Doc. 53-14) and is incorporated herein by reference. (Third LWJ Affidavit, para. 24)

Response- Admitted. Johnson has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See  Opposition Pages 1-5.

28-The Wexler Affidavit (Doc. 53-14) attempted to explain, among other things, his investigation efforts prior to filing this FDCPA action, but nowhere does he describe any efforts in attempting to determine whether Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA. (Third LWJ Affidavit, para. 25).

Response- Denied, See Paragraphs 46-48, Doc. 53-14, Pages 5-6 of 17. Johnson has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See  Opposition Pages 1-5.

29-The testimony in the Wexler Affidavit (Doc. 53-14) never mentioned anything about searching PeachCourt or Odyssey prior to filing this FDCPA civil action in order to investigate whether Defendant JLO and Defendant LWJ have previously been involved in litigation against a consumer on a consumer debt, even though Mr. Wexler has indicated to this Court his ability to do so in his Motion Under Rule 56(d) (Doc. 85). (Third LWJ Affidavit, para. 26).

Response- Admitted that there is no mention of that. But to the extent this Statement of "Material" fact implies that I did not do that investigation, that is denied. Johnson has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees

expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See  Opposition Pages 1-5.

30- On or about August 23, 2021, **after filing** the above-styled FDCPA civil action on or about May 11, 2021, Shimshon Wexler emailed the undersigned (the "Wexler Email") stating that "[i]t just occurred to me that if you are not a debt collector, I lose.", and a true and correct copy of the Wexler Email is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "O" (Doc. 53-15) and is incorporated herein by reference. (Third LWJ Affidavit, para. 27)

Response- Admitted that the email has those words. However, the email merely suggested that discovery be put on hold while Johnson's motion to dismiss. This offer would have benefitted both Plaintiff and Johnson because he would not have needed to participate in further discovery and could have waited until the Court's ruling. Johnson turned down an offer to have his deposition put off until the Court decided based on the pleadings whether Johnson is a debt collector. Johnson has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See  Opposition Pages 1-5.

31- Had Shimshon Wexler actually investigated whether Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors"

as defined under the FDCPA, he would have found out that neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA. (Third LWJ Affidavit, para. 28).

Response- Denied. This is Johnson's opinion dressed up as a fact. There is no evidence supporting this "material" fact. Johnson has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See Opposition Pages 1-5.

32-The undersigned represented a defendant in a pro se case brought by Emmanuel Ohai known as Civil Action File No. 1 :20-CV-2220-SCJ in the U.S. District Court for the Northern District of Georgia, Atlanta Division (the "Ohai Litigation") and no claim or counterclaim has even been filed in the Ohai Litigation seeking to collect a consumer debt. (Third LWJ Affidavit, para. 29).

Response- Admitted. But to the extent that Johnson claims that he did not attempt to collect a debt from Ohai, that is denied. Johnson sent Ohai a debt collection letter not necessary to effectuate a non-judicial foreclosure. See

33- During the Ohai Litigation, Park Tree Investments 20, L.L.C. proceeded with a non-judicial foreclosure and Mr. Ohai attempted to obtain an injunction to stop that foreclosure, which resulted in an Order (the "Federal Injunction Denial

Order") denying his request for injunctive relief entered by the Honorable Steve

C. Jones, United States District Judge, on or about April 5, 2021, and which

ultimately resulted in the foreclosure of Mr. Ohai's property in accordance with

Georgia law, and a true and correct copy of the Federal Injunction Denial Order is

attached to the First LWJ Affidavit (Doc. 53) as Exhibit "P" (Doc. 53-16) and is

incorporated herein by reference. (Third LWJ Affidavit, para. 30)

Response- Admitted

34-On or about December 29, 2017, and filed January 4, 2018, First

Financial Investment Fund V, L.L.C. ("FFIF") brought a Statement of Claim (the

"Complaint") against Selwyn Johnson in Civil Action File No. 18M86286 in the

Magistrate Court of DeKalb County seeking the amount of $1,898.43 plus court

costs, and a true and correct copy of the Complaint is attached to the Affidavit of

Larry W. Johnson dated 1/28/22 (the "Second LWJ Affidavit"; Doc. 88) as Exhibit

"A" (Doc. 88-1) and is incorporated herein by reference. (Third LWJ Affidavit,

para. 31)

Response- Admitted.

35-On or about April 18, 2018, Selwyn Johnson filed an Answer to

Complaint (the "Answer") and separately filed an extensive Counterclaim against

FFIF in Civil Action File No. 18M86286, and a true and correct copy of the

Answer is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "B" (Doc.

88-2) and a true and correct copy of the Counterclaim is attached to the Second

LWJ Affidavit

(Doc. 88) as Exhibit "C" (Doc. 88-3) and both are incorporated herein by

reference. (Third LWJ Affidavit, para. 32)

Response- Admitted

     36-After a trial and on or about June 12, 2018, the Magistrate Judge entered

a Judgment against FFIF and in favor of Selwyn Johnson on his Counterclaim in

Civil Action File No. 18M86286 in the amount of $2,100.00, and a true and correct

copy of the Judgment is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit

"D" (Doc. 88-4) and is incorporated herein by reference. (Third LWJ Affidavit,

para. 33)

Response- Denied. Plaintiff cannot read the judgment, but it appears to show the

sum of $1,100 and interest of $1,100. This is not a material fact.

     37- On or about July 5, 2018, Selwyn Johnson (who had prevailed in the

underlying case in Civil Action File No. 18M86286) filed a Notice of Appeal,

even though FFIF had attempted to pay the Judgment by sending a check to

counsel for Selwyn Johnson for the amount of the Judgment, and a true and correct

copy of the Notice of Appeal is attached to the Second L WJ Affidavit (Doc. 88)

as Exhibit "E" (Doc. 88-5) and is incorporated herein by reference. (Third LWJ

Affidavit, para. 34)

Response- There is no evidence of the attempt to pay the judgment. Otherwise, admitted.

38-On or about July 14, 2018, the court clerk issued a Notice indicating the appealed magistrate court case would now be known as Civil Action File No. 18A70172 in the State Court of DeKalb County, Georgia, and a true and correct copy of the Notice is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "F" (Doc. 88-6) and is incorporated herein by reference. (Third LWJ Affidavit, para. 35)

Response- Admitted

39- On or about September 13, 2018, the undersigned attorney filed his first pleading entering an appearance in Civil Action File No. 18A70172 by filing a Motion to Dismiss Counterclaim, and a true and correct copy of the Motion to Dismiss Counterclaim is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "G" (Doc. 88-7) and is incorporated herein by reference. (Third L WJ Affidavit, para. 36)

Response- Admitted- This is a 2-page motion.

40-The undersigned counsel was retained directly by FFIF and not by prior counsel, with whom the undersigned had no previous or subsequent relationship and who never paid the undersigned for any of his fees, and subsequently on or about October 22, 2018, a Notice of Substitution of Counsel was filed wherein the

prior counsel basically withdrew from the case, and a true and correct copy of the Notice of Substitution of Counsel is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "H" (Doc. 88-8) and is incorporated herein by reference. (Third LWJ Affidavit, para. 37)

Response- Admitted.

41- It 1s the undersigned's understanding based on conversations with prior counsel in that case that the spouse of one of the partners had passed away and that as a result they were closing their law firm's doors and going out of business. (Third LWJ Affidavit, para. 38)

Response- Admitted.

42-As FFIF's in-house counsel explained, the undersigned was retained specifically because of FFIF's concern regarding the Counterclaim and the defense thereof given that the Defendant had prevailed in the Magistrate Court below, but then appealed the ruling in his favor in an obvious attempt to significantly increase any award he might be able to obtain. (Third LWJ Affidavit, para. 39).

Response- Denied. Johnson may not testify as to what FFIF's in-house counsel explained or thought or what his motivations are. That is the province of the jury.

43-The undersigned was retained by FFIF and was paid over 10 times more than the client's underlying claim (and over 10 times more than the amount of the underlying Judgment in favor of Selwyn Johnson) in defending against the

Counterclaim as well as in pursuing its Complaint because of the client's concerns as outlined above. (Third LWJ Affidavit, para. 40).

Response- Denied. Johnson has produced no admissible evidence that he was paid for anything other than to collect the debt. To the extent that Johnson was paid to defend that action, which Johnson has not provided any evidence of, that is simply part of the debt collection process where consumers make claims against the creditor and the debt collector is tasked with both collecting the debt and warding off claims by the debtor. That would be indirect debt collection.

44-Ultimately FFIF prevailed on the Complaint pursuant to that certain final Order (the "Final Order") and in defense of the Counterclaim and such ruling was appealed, but the appeal was withdrawn, and a true and correct copy of the Final Order is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "I" (Doc. 88-9) and is incorporated herein by reference. (Third LWJ Affidavit, para. 41)

Response- Admitted.

45- After FFIF prevailed on the Complaint and in defense of the Counterclaim, FFIF sought attorney's fees against Selwyn Johnson and his counsel in accordance with Georgia law, but Selwyn Johnson passed away before any ruling on attorney's fees as described in the Statement Noting a Party's Death (the "Death Statement") filed on or about December 27, 2019, a Motion to Stay Case Due to the Death of the Defendant (the "Death Motion") filed on or about January

23, 2020, and the Alabama Death Certificate filed thereafter (the Death Statement, the Death Motion and the Alabama Death Certificate are hereinafter sometimes referred to as the "Defendant's Death Documents") and subsequently the attorney's fee request was denied, and a true and correct copy of the Defendant's Death Documents is attached to the Second LWJ Affidavit (Doc. 88) as Exhibit "J" (Doc. 88-10) and is incorporated herein by reference. (Third LWJ Affidavit, para. 42)

Response- Admitted

46-All of the pleadings in the Jeffrey Cordtz cases and the Selwyn Johnson case have been a matter of public record since the inception of those cases, nothing was filed under seal, and Plaintiff and his counsel have had access to such records since before filing their complaint in this civil action, including but not limited to online access via the Odyssey system. (Third LWJ Affidavit, para. 43)

Response- Admitted.

47-A total of over 75% of my time has been spent defending the Counterclaim brought by Selwyn Johnson instead of pursuing any claim against Selwyn Johnson as FFIF, the client therein, attempted to pay the $2,100 Judgment amount to end that litigation, but Selwyn Johnson and his attorney decided to reject that payment and appeal in an attempt to increase the amount of their award on the Counterclaim causing FFIF to have to incur significant attorney's fees for

more than 10 times the amount of their claim in order to defend that Counterclaim on appeal. (Third LWJ Affidavit, para. 44).

Response- Denied. There are no facts or documents supporting this assertion regarding time spent 3 years ago particularly considering Johnson's total lack of memory as to any detail regarding a debt collection letter with his name on it to Ohai and the source of his income. See Johnson Second Deposition Pages 15-33. The law is that "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); see also Corwin v. Walt Disney World Co., 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge." (quotation omitted)). See also Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment.").

48- Other than the two cases already identified in the above-styled civil action involving Jeffrey Cordtz (the Plaintiff herein) and Selwyn Johnson (a total of two cases over five years), neither Larry W. Johnson nor his solely owned law

firm Johnson Legal Offices, L.L.C. have filed or been involved in any other civil action attempting to collect a consumer debt in any fashion within the five years preceding the filing of the above-styled FDCPA civil action on or about May 11, 2021, even though Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. have filed or been involved in many other civil actions during that same time frame. (Third LWJ Affidavit, para. 45)

Response- Denied that Johnson has filed or been involved in many other civil actions during that same time frame. Johnson appears to have been involved in only 10 or so civil actions over the last year although his memory is poor when it comes to that. See Johnson Second Deposition Pages 10-12, 38-54.

49-Plaintiff and his counsel also admitted in their Motion Under Rule 56(d) (Doc. 85) that "Cordtz only discovered this lawsuit [involving Selwyn Johnson] because of the Leave of Absence filed by the Johnson Defendants ... " and that "[t]hrough investigating by way of searches of the state court systems, PeachCourt and Odyssey, whether any of those lawsuits involved debt collection, the undersigned discovered Exhibit A." (Third LWJ Affidavit, para. 46).

Response- Admitted. Johnson has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See Opposition Pages 1-5.

50-PeachCourt and Odyssey are systems that were available at the time that Plaintiff filed his lawsuit in this case on or about May 11, 2021, yet Plaintiff and his counsel have never testified that they even went through such a search of the Defendants PRIOR to filing their lawsuit in this case to even attempt to ascertain whether Plaintiff had EVER filed a lawsuit or claim involving a consumer debt prior to this lawsuit, which they could have easily done at the time as Plaintiff's counsel has now indicated he has the knowledge and ability to do so. (Third LWJ Affidavit, para. 47).

Response- This is not a material fact. Admitted that Plaintiff and his counsel never testified to that but denied that an investigation never occurred. Johnson has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See  Opposition Pages 1-5.

51- Plaintiffs counsel testified  in another  lawsuit via affidavit (the Wexler Affidavit, Doc. 53-14) of what he did with respect to his investigation in this FDCPA case and he never mentioned anything about searching PeachCourt or Odyssey prior to filing this FDCPA civil action. (Third LWJ Affidavit, para. 48)

Response- This is not a material fact. Admitted that Plaintiff never mentioned it but denied that Plaintiff did not conduct a proper investigation. Further, Johnson

has admitted in papers submitted to the Georgia Court of Appeals in his opposition to the motion to hold him accountable for attorney's fees expended on appeal that this FDCPA Complaint was not a sham complaint, and the litigation activity was genuine. See  Opposition Pages 1-5.

52-The Gwinnett Litigation which is still pending was initially a lawsuit filed by Jeffrey Cordtz and the undersigned was retained to assist in defending that action with the majority of his time spent on defending such action (over 75% of his time), and the undersigned was forced to file a compulsory counterclaim for the debt against Jeffrey Cordtz or risk his client potentially losing its ability to sue on the debt. (Third LWJ Affidavit, para. 49)

52- Denied. Johnson filed a plain debt collection lawsuit, not a counterclaim in Fulton County seeking to collect the debt. There is no evidence of the time spent by Johnson on the counterclaim. Further, defending Cordtz's claim is indirect debt collection because the animating purpose of defending the claim was so that he could collect the debt.

53-Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. have been involved in approximately three non-judicial foreclosure referrals  in the 12 months preceding the filing the above-styled FDCPA civil action on or about May 11, 2021, including the one previously referenced by

Plaintiff and his counsel involving Emmanuel Ohai. (Third LWJ Affidavit, para. 50).

Response- This fact is not based on personal knowledge. Plaintiff is unsure what a non-judicial foreclosure referral is. Johnson should have records as to the number of non-judicial foreclosure referrals and not have to approximate the number. Further, Johnson has denied that he received the Ohai referral and in any event that was in the 12 months preceding May 11, 2011 so Johnson is giving confusing testimony.

54-The gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any legal related services has been over $250,000 for each of the last five years, and specifically has been over $1,000,000 in the last 18 months preceding the date of this Affidavit (partially due to a settlement in a slander case where Defendant LWJ represented himself through an appeal before associating co-counsel therein, and if such settlement exclusive of attorney's fees is not included, the gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any non-attorney fee legal related services is still over $250,000 for each of the last five years). (Third LWJ Affidavit, para. 51).

Response- Denied. This is not based on any evidence of documents or facts but is instead based on opinions. Johnson does not base this testimony on anything but his opinions. See Johnson second deposition pages 76-86.

55-Neither Larry W. Johnson nor his solely owned law finn Johnson Legal Offices, L.L.C. regularly collect consumer debts. (Third LWJ Affidavit, para. 52)

Response- Denied. This is a legal conclusion and opinion.

56- Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly engage in consumer debt collection activity. (Third LWJ Affidavit, para. 53)

Response- Denied This is a legal conclusion and an opinion.

57- Consumer debt collection activity is not the principal purpose of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. (Third LWJ Affidavit, para. 54)

Response- Admitted.

58 Any consumer debt collection activity in which Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. is involved, is a very small percentage of their revenues, the majority of which being any fees earned in the above- referenced civil actions involving Jeffrey Cordtz and Selwyn Johnson, and because of the lack of clarity as to what fees are actually for any debt collection (versus defending claims) in the above-referenced actions involving Jeffrey Cordtz and Selwyn Johnson, I cannot provide an actual percentage of time or revenues related to such actions as compared to my overall work and revenues, but it is very small. (Third LWJ Affidavit, para. 55)

Response- Denied. This is not made on personal knowledge and not based on facts but is a conclusion. This is not separate or concise. This contains opinions, does not explain what causes the "lack of clarity", this assumes that non-judicial foreclosure is not debt collection which is false and is not based on documents.

59-Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. advertise themselves as being in the business of consumer debt collection or as maintaining a specialty in consumer debt collection. (Third LWJ Affidavit, para. 56)

Response- Admitted but Johnson does not do any advertising for any of his services, so it is not surprising that he doesn't advertise debt collection services. See Johnson 2nd Deposition.

60- Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. represent any traditional consumer debt collection agencies. (Third LWJ Affidavit, para. 57).

Response- Admitted but Johnson does work with a mortgage servicer and a foreclosure firm and takes any litigation clients including debt collection litigation clients.

61- Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. maintain any attorney staff, any non-attorney staff or any computer aids for the collection of consumer debts. (Third LWJ Affidavit, para. 58)

Response- Admitted.

62- Any consumer debt collection activity (i.e., the above-referenced civil actions involving Jeffrey Cordtz and Selwyn Johnson) came from non-collection business clients of Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. and are incidental to, and not relied upon or anticipated in their practice of law. (Third LWJ Affidavit, para. 59)

Response- Denied. Johnson testified that he does litigation and that's what he relies upon and anticipates for his law business.

63-Larry W. Johnson does have an Of Counsel Agreement with another law firm called Jauregui & Lindsey ("J&L"), which simply handles matters relating to non-judicial foreclosures when they arise and neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. handle any consumer debt collection activity with or for J&L, which again is a law firm and not a consumer debt collection agency, nor to the best of the undersigned's knowledge does J&L collect consumer debts at all, with or without the assistance of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. (Third LWJ Affidavit, para. 60)

Response- This is not separate or concise. Denied that J&L does not do consumer debt collection. J&L is a foreclosure debt collection law firm and pursues delinquent debtors on behalf of creditors.

64- Defendant LWJ has handled numerous lawsuits throughout his 31-year plus legal career, both offensively and defensively, including but not limited to lawsuits involving FDCPA claims, plus he has filed numerous motions and conducted numerous hearings, and that he is competent to testify regarding the reasonableness of attorney's fees in this case. (Third LWJ Affidavit, para. 61)

Response- Denied. This is not sufficient basis to show that Johnson is competent to testify to this "material" fact.

65-Defendant LWJ has spent 164.9 hours through the date of this affidavit in defending himself and his firm in this civil action, drafting and filing numerous pleadings, attempting to negotiate numerous issues, attending hearings, and following up on this matter and that his billable rate is $300.00 per hour. (Third LWJ Affidavit, para. 62)

Response- Denied. NDGA LR provides for a method for making a motion for attorney's fees and including it within a statement of material fact is not one of them. Johnson fails to provide the documents that he relies on and therefore this is hearsay.

66- The amount for fees incurred by himself and his firm in this civil action in defending this civil action through the date of this affidavit is $49,470.00. (Third LWJ Affidavit, para. 63).

Response- See Response to 65.

67- The costs incurred by Defendant LWJ and his firm in this civil action in defending this civil action as of the date of this affidavit is as follows: (i) $2,157.32 for deposition costs (with the deposition cost for last week being undetermined at this time); (ii) $52.22 for a postage; (iii) $220.00 for copies at $0.10 per page; for a total in costs of $2,429.54. (Third LWJ Affidavit, para. 64).

Response: See Response to 65.

68- The total amount incurred by Defendant LWJ and his firm in this civil action in defending this civil action as of the date of this affidavit, therefore, is $51,899.54. (Third LWJ Affidavit, para. 65)

Response- See Response to 65.

69- In Defendant LWJ's opinion, the time spent, the billable rate, and the total amount incurred as outlined above in attorney's fees and costs are all reasonable. (Third LWJ Affidavit, para. 66)

Response- Admitted.

70- Defendant LWJ was present at the deposition of Jeffrey D. Cordtz conducted on or about October 21, 2021, in the federal case known as Cordtz v. Johnson Legal et. al, Civil Action File No. 1:21-CV-02003-MHC-LTW (the "FDCPA Case"), including Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G and Exhibit 1 and the resulting transcript of Jeffrey D. Cordtz's

testimony (the "Cordtz Depo Transcript") at that deposition and previously filed herein (Docs. 54, 55 and 56) is a true and correct representation of the statements made at such deposition by Jeffrey D. Cordtz and the others who were identified therein. (Third LWJ Affidavit, para. 67)

Response- Admitted.

Dated this 28th day of April 2022.

Respectfully submitted,
By: /s/ Shimshon Wexler
GA Bar No. 436163
S Wexler LLC
2244 Henderson Mill Rd, Ste 108
Atlanta, GA 30345
(212) 760-2400
(917) 512-6132 (FAX)
swexleresq@gmail.com