UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JEFFREY D. CORDTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION FILE |
| vs. | ) |
| | ) 1:21-CV-02003-MHC-LTW |
| JOHNSON LEGAL OFFICES, L.L.C., | ) |
| FCI LENDER SERVICES, INC. and | ) |
| LARRY W. JOHNSON, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT JLO'S AND DEFENDANT LWJ'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

COME NOW JOHNSON LEGAL OFFICES, L.L.C. ("JLO") and LARRY W. JOHNSON ("LWJ"), co-Defendants in the above-styled civil action, and hereby file their Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment and show this honorable Court in support thereof as follows:

A. <u>Defendant JLO and Defendant LWJ are NOT Debt Collectors under the FDCPA and, Therefore, The FDCPA Does NOT Apply</u>.

First, Plaintiff admits in response to Paragraph 57 of the Defendants Statement of Material Facts that "[c]onsumer debt collection activity is not the principal purpose of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C." Second, Plaintiff has also not disputed that the Defendants have only sought to judicially collect against a consumer a total of TWO times, one being the matters involving the Plaintiff herein. Consequently, other than

attempting to collect a debt against Mr. Cordtz, there has only been another single separate attempt to collect a consumer debt (against Selwyn Johnson) within the last FIVE YEARS by Plaintiff.

Third, Plaintiff appears to argue that the Obduskey case stands for the proposition that nonjudicial foreclosures are the collection of consumer debts citing language in Obduskey that states the above would be true ONLY if the "primary" definition of "debt collector" existed in the FDCPA. However, Obduskey then goes on to state (which Plaintiff chose to ignore) that "[t]he Act does not, however, contain only the primary definition. And the **limited-purpose definition** poses a serious, indeed an insurmountable, obstacle to subjecting McCarthy to the main coverage of the Act." (Emphasis added.) Obduskey v. McCarthy & Holthus, L.L.P., 139 S. Ct. 1029, 1037, 203 L. Ed. 2d 390 (2019). Plaintiff's argument as it relates to non-judicial foreclosures of course ignores (either intentionally or unintentionally) the very holding in Obduskey. As stated in the Defendants' initial summary judgment brief, the two Georgia cases to address this matter have also easily discarded such arguments like the Plaintiff makes herein in following the obvious holding in Obduskey, the same that requires this Court to find that any non-judicial foreclosure activity by Defendant JLO and Defendant LWJ herein are not attempts at consumer debt collection and do not make Defendant JLO and Defendant LWJ debt collectors under the FDCPA (just the same as the U.S. Supreme Court held with respect to the law firm McCarthy &

Holthus), regardless of what they might have been paid for their non-judicial foreclosure services.

Congress enacted the "FDCPA in order to eliminate 'the use of abusive, deceptive, and unfair debt collection practices'" and provides consumers remedies when debt collectors engage in such practices. *See* 15 U.S.C. §1692(k)(a)(3) and 15 U.S.C. §1692e. The FDCPA regulates "debt collector[s]" that attempt to collect the kind of debts covered by the statute. *See* Id. § 1692a(6). The FDCPA specifically defines those debts as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." Id. § 1692a(5) (emphasis added). The statute thus regulates only the collection of debts arising from consumer transactions. See Hawthorne v. Mac Adjustment, Inc., 140 F. 3d 1367, 1371 (11th Cir. 1998).

Additionally, the Supreme Court has made it clear that the FDCPA applies to attorneys "regularly" engaging in debt collection activity, including such activity in the nature of litigation. Heintz v. Jenkins, 514 U.S. 291, 299, 115 S. Ct. 1489, 131 L.Ed.2d 395 (1995). However, the Supreme Court has more recently held as already pointed out above that a business whose principal purpose may be the enforcement of security interests via nonjudicial foreclosure proceedings is outside the scope of the definition of "debt collector" under the FDCPA. Obduskey v. McCarthy & Holthus, L.L.P., 139 S. Ct. 1029, 203 L. Ed. 2d 390 (2019). The other

cases previously cited by Plaintiff all pre-date Obduskey, which clearly found that non-judicial foreclosure work is not "debt collection" activity under the FDCPA.

The plaintiff in an FDCPA action also bears the burden of proving the defendant's debt collector status. Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F. 3d 56 (2d Cir. 2004). Factors relevant to a determination as to whether a defendant "regularly" collects consumer debt include the percentage of revenue generated by debt collection activities, the sheer volume of debt collection activities, and whether defendants have an ongoing attorney-client relationship with a collection agency. *See, e.g.,* White v. Simonson & Cohen P.C., 23 F. Supp. 2d 273, 274 (E.D. N.Y.1998); Von Schmidt v. Kratter, 9 F. Supp. 2d 100, 102 (D. Conn. 1997); Cacace v. Lucas, 775 F. Supp. 502, 504 (D. Conn.1990). *See also* Goldstein, 374 F. 3d 56 (2d Cir. 2004). The district court in Goldstein further observed that "[c]ourts have uniformly held as a matter of law that law firms for which debt collection activities constitute ... a small percentage of their revenues are not debt collectors under the FDCPA," citing a number of decisions from outside this Circuit. Id.

According to the court in Goldstein, the FDCPA establishes two alternative predicates for "debt collector" status - engaging in such activity as the "principal purpose" of the entity's business (which Plaintiff has admitted such debt collection activity is NOT the "principal purpose of Defendant JLO or Defendant LWJ") and "regularly" engaging in such activity. 15 U.S.C. § 1692a(6). Consequently, this Reply with focus on the lack of "regularity". Additionally, once non-judicial

foreclosures are not considered debt collection under Obduskey, then all Plaintiff has to show "regularity" is two matters involving debt collection in the last five years, one involving Plaintiff and one involving Selwyn Johnson, which does not come anywhere close to showing regularity. *See* Schroyer v. Frankel, 197 F. 3d 1170, 1173, 1177 (6th Cir. 1999); White, 23 F. Supp. 2d at 278; Von Schmidt v. Kratter, 9 F. Supp. 2d 100, 103-04 (D. Conn. 1997); *and* Nance v. Petty, Livingston, Dawson, & Devening, 881 F. Supp. 223, 225 (W.D. Va. 1994) (where plaintiff provided no evidence of debt collection activity other than that complained of in action); Scott v. Jones, 964 F. 2d 314, 316-18 (4th Cir. 1992); and Garrett v. Derbes, 110 F. 3d 317 (5th Cir. 1997). *See also* Mertes v. Devitt, 734 F. Supp. 872 (W.D. Wis. 1990) (where the firm averaged less than two collection matters per year for the prior 10 years and that was not enough for the court to find "regularity"). Here, there are only two cases over the previous five years (or less than 0.4 cases per year), which also of course includes the case involving Mr. Cordtz as one of those cases. This Court should also find a lack of regularity in this matter as a matter of law.

Larry W. Johnson and his solely owned law firm, Johnson Legal Offices, L.L.C., do not "regularly" attempt to collect consumer debt and they are simply not "debt collectors" under the FDCPA. Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly engage in consumer debt collection activity. Consumer debt collection activity is also not the principal purpose of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. (as correctly

admitted by Plaintiff). Other than the above-referenced litigation involving Jeffrey Cordtz and the litigation involving Selwyn Johnson, neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. have filed any civil action or done anything else attempting to collect a consumer debt in any fashion within the five years preceding the filing the above-styled FDCPA civil action on or about May 11, 2021. (Doc. 53, Johnson Affidavit, para. 42; Doc. 95, Johnson Affidavit, Para. 45) The Gwinnett Litigation which is still pending was initially a lawsuit filed by Jeffrey Cordtz and the undersigned was retained to assist in defending that action with the majority of his time spent on defending such action (over 75% of his time), and the undersigned was forced to file a compulsory counterclaim for the debt against Jeffrey Cordtz or risk his client potentially losing its ability to sue on the debt. (Doc. 53, Johnson Affidavit, para. 43; Doc. 95, Johnson Affidavit, Para. 49) Other than the above-referenced litigation involving Jeffrey Cordtz and Selwyn Johnson, Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. have been involved in many other lawsuits and approximately three non-judicial foreclosure referrals in the 12 months preceding the filing the above-styled FDCPA civil action on or about May 11, 2021, including the one previously referenced by Plaintiff and his counsel involving Emmanuel Ohai. (Doc. 53, Johnson Affidavit, para. 44; Doc. 95, Johnson Affidavit, Paras. 45, 50 & 61)

    The gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any legal related services has been over $250,000 for each of the last five years, and specifically has been over $1,000,000 in the last 18 months preceding the date of this

Affidavit (partially due to a settlement in a slander case where Defendant LWJ represented himself through an appeal before associating co-counsel therein, and if such settlement as income to Defendant LWJ exclusive of attorney's fees is not included, then the gross income for Larry W. Johnson and Johnson Legal Offices, L.L.C. for any non-attorney fee legal related services is still over $250,000 for each of the last five years). (Doc. 53, Johnson Affidavit, para. 45; Doc. 95, Johnson Affidavit, Para. 51) Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly collect consumer debts. (Doc. 53, Johnson Affidavit, para. 46 Doc. 95, Johnson Affidavit, Para. 52) Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. regularly engage in consumer debt collection activity. (Doc. 53, Johnson Affidavit, para. 47 Doc. 95, Johnson Affidavit, Para. 53) Consumer debt collection activity is not the principal purpose (as properly admitted by Plaintiff) of Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. (Doc. 53, Johnson Affidavit, para. 48; Doc. 95, Johnson Affidavit, Para. 54) Any consumer debt collection activity in which Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. is involved, is a small percentage of their revenues, the totality of fees earned from such activity being any fees earned in the above-referenced civil actions involving Jeffrey Cordtz and Selwyn Johnson. (Doc. 53, Johnson Affidavit, para. 49; Doc. 95, Johnson Affidavit, Para. 55)

Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. advertise themselves as being in the business of consumer debt

collection or as maintaining a specialty in consumer debt collection. (Doc. 53, Johnson Affidavit, para. 50; Doc. 95, Johnson Affidavit, Para. 56) Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. represent any traditional consumer debt collection agencies. (Doc. 53, Johnson Affidavit, para. 51; Doc. 95, Johnson Affidavit, Para. 57) Neither Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. maintain any non-attorney staff or computer aids for the collection of consumer debts. (Doc. 53, Johnson Affidavit, para. 52; Doc. 95, Johnson Affidavit, Para. 58) Any consumer debt collection activity (i.e., the above-referenced civil actions involving Jeffrey Cordtz and Selwyn Johnson) came from non-collection business clients of Larry W. Johnson and his solely owned law firm Johnson Legal Offices, L.L.C. and are incidental to, and not relied upon or anticipated in their practice of law. (Doc. 53, Johnson Affidavit, para. 53; Doc. 95, Johnson Affidavit, Para. 59) All of the above is undisputed and Plaintiff has not filed any evidence to the contrary.

Larry W. Johnson Defendant LWJ also represented a defendant in a pro se case brought by Emmanual Ohai known as Civil Action File No.1:20-CV-2220-SCJ in the U.S. District Court for the Northern District of Georgia, Atlanta Division (the "Ohai Litigation") and no claim or counterclaim has ever been filed in the Ohai Litigation seeking to collect a consumer debt. (Doc. 53, Johnson Affidavit, para. 55; Doc. 95, Johnson Affidavit, Para. 29) During the Ohai Litigation, Park Tree Investments 20, L.L.C. proceeded with a non-judicial foreclosure and Mr. Ohai attempted to obtain an injunction to stop that foreclosure, which resulted in an Order

(the "Federal Injunction Denial Order") denying his request for injunctive relief entered by the Honorable Steve C. Jones, United States District Judge, on or about April 5, 2021, and which ultimately resulted in the foreclosure of Mr. Ohai's property in accordance with Georgia law. (Doc. 53, Johnson Affidavit, paras. 56 & 57 and Exhibit "P"; Doc. 95, Johnson Affidavit, Para. 30) Any correspondence sent regarding Mr. Ohai's property after the Federal Injunction Denial Order was entered was in furtherance of the non-judicial foreclosure sale, which ultimately occurred and the property was purchased by a third party. A true and correct copy of the recorded Deed Under Power is attached hereto as Exhibit "A" and is incorporated herein by reference. Simply stated, the FDCPA does not apply as Defendant LWJ and Defendant JLO are not debt collectors and Larry W. Johnson and his solely owned law firm, Johnson Legal Offices, L.L.C. are entitled to a summary judgment in that regard.

As for the First Fulton Litigation, subsequent to the filing of the First Fulton Litigation, Rick Alembik as counsel for Jeffrey Cordtz advised that his client had received notice of a transfer of the loan from Aspen Properties, and Defendant LWJ also became aware that the Gwinnett Litigation for some reason had been reopened; consequently, on or about February 12, 2021, a Motion for Continuance and to Add Defendant and Real Party in Interest (the "Gwinnett Add Party Motion") was filed in the Gwinnett Lawsuit along with a consent order agreed to between Defendant LWJ and Rick Alembik adding Aspen Holdings Trust, a Delaware Statutory Trust ("Aspen Holding") as a party defendant, and a true and correct copy of the Gwinnett Add

Party Motion is attached to the First LWJ Affidavit (Doc. 53) as Exhibit "F" (Doc. 53-6) and is incorporated herein by reference. (Doc. 95, Johnson Affidavit, Para. 12) Prior to filing the First Fulton Litigation, the only evidence presented herein proves that Defendant JLO and Defendant LWJ had been advised by representatives of Aspen Properties that Aspen Properties was the owner of the loan at issue and Defendant LWJ had been provided assignments showing the same, but after being advised by Rick Alembik of a possible transfer, Defendant LWJ contacted his client, the representatives of Aspen Properties, and was made to believe that they were unaware of such transfer, and they later confirmed that unbeknownst to them, the loan at issue had been included in a bulk transfer. (Doc. 95, Johnson Affidavit, Para. 13) No evidence to the contrary was ever presented by Plaintiff. Consequently, there was no way for Defendant JLO or Defendant LWJ to know that Aspen Properties was not the actual holder as the last assignment transferred the loan into Aspen Properties and representatives of Aspen Properties further advised that Aspen Properties was still the holder and owner of the Cordtz loan. In fact, the representatives of Aspen Properties were not aware themselves that the Cordtz loan had been transferred until Defendant LWJ advised them of such and once the client representatives confirmed the transfer Defendant LWJ promptly dismissed the First Fulton Litigation thereafter.

The Gwinnett Litigation remains pending (Doc. 95, Johnson Affidavit, Para. 22) as admitted by Plaintiff in response to Paragraph 25 of the Statement of Material Facts. While Plaintiff's counsel directed this Court to an Affidavit of James

Maffuccio executed on or about April 30, 2021, he did not advise the Court of a subsequent Affidavit of Dan Schulte executed on or about December 20, 2021, indicating the debt owed was actually approximately $343,491.48. A true and correct copy of the Affidavit of Dan Schulte is attached hereto as Exhibit "B" and is incorporated herein by reference. Again, counsel for Plaintiff could merely have looked on PeachCourt or Odyssey to find this filing, but he apparently chose to not do so (again) and instead he chose to (either intentionally or unintentionally) mislead this Court as to filings in another case. Nevertheless and as stated above, the FDCPA does not apply and Larry W. Johnson and his solely owned law firm, Johnson Legal Offices, L.L.C. are entitled to a summary judgment in that regard.

B.  Defendant JLO and Defendant LWJ Are Entitled to Attorneys' Fees.

First, Plaintiff directs this Court to a brief filed in the Georgia Court of Appeals and states over and over that the Defendants "admit" that the FDCPA complaint herein was not a sham complaint. However, such argument is at a minimum disingenuous if not outright misleading. Page 2 of that brief states that the "Court specifically found in its Final Order that there was not a sham petition whatsoever." This is merely citing to the record in that appeal when addressing whether all of Appellant's state law claims were barred by the Appellees' Constitutional Petition Clause Immunity, or the Noerr-Pennington Doctrine, and whether all state law issues were preempted by the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), as addressed in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 139-140, 81 S.

Ct. 523, 5 L. Ed. 2d 464 (1961) and <u>United Mine Workers of America v. Pennington</u>, 381 U.S. 657, 669-670, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965). These issues raised in the appellate case referenced by Plaintiff are not even relevant to this case.

Second, 15 U.S.C. §1692k(a)(3) provides that "… [o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." The test is whether there was "bad faith" and not whether the petition was a "sham". The Plaintiff nor his attorney herein ever investigated whether Defendant JLO and Defendant LWJ were "debt collectors" under the FDCPA prior to filing their lawsuit, which of course is a threshold issue. On or about August 23, 2021, over two months after filing the above-styled FDCPA civil action on or about May 11, 2021, Shimshon Wexler emailed the undersigned (the "Wexler Email") stating that "[i]t just occurred to me that if you are not a debt collector, I lose." (Doc. 53, Johnson Affidavit, paras. 39 & 40 and Exhibit "O"; Doc. 95, Johnson Affidavit, Para. 27) Because it only "just occurred" to him that he loses if Defendant LWJ and Defendant JLO are not debt collectors, then it did not occur to him prior to filing this FDCPA lawsuit, which explains why he never investigated whether or not the Defendants were debt collectors in the first place. The Wexler Affidavit did attempt to explain, among other things, his investigation efforts prior to filing this FDCPA action, but nowhere does he describe any efforts in attempting to determine whether Larry W. Johnson or his

solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA. (Doc. 53, Johnson Affidavit, para. 38, 39 & 40 and Exhibit "O"; Doc. 95, Johnson Affidavit, Para. 27 & 28) Maybe next time he will realize this threshold issue BEFORE filing an FDCPA lawsuit, but he clearly did not investigate this threshold issue before filing this case. Jeffrey Cordtz further testified that he had never investigated whether Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were ever debt collectors, **nor was he aware of any such investigation ever occurring**. (Doc. 54, Cordtz Depo Transcript, pp. 65-66)

Third, had Shimshon Wexler (or the Plaintiff herein) actually investigated whether Larry W. Johnson or his solely owned law firm Johnson Legal Offices, L.L.C. were "debt collectors" as defined under the FDCPA, they could have easily filed an affidavit stating so, but they have not done that. If Plaintiff's counsel had done a "good faith" investigation, then he would have found out that Larry W. Johnson nor his solely owned law firm Johnson Legal Offices, L.L.C. had only been involved in one other case (the Selwyn Johnson case) in the last five years and, therefore, were not "debt collectors" as defined under the FDCPA. (Doc. 53, Johnson Affidavit, para. 41; Doc. 95, Johnson Affidavit, Para. 28) Filing an FDCPA without even investigating a threshold issue is certainly "brought in bad faith and for the purpose of harassment". See Diaz v. First Marblehead Corp., (11th Cir. 2016), a per curiam opinion previously filed herein (attached as Exhibit "C" to the summary judgment brief filed herein) from the 11th Circuit and the only 11th Circuit case the

undersigned could find confirming liability based on 15 U.S.C. §1692k(a)(3) and Rule 11 where the borrower improperly sued a company who was not a "debt collector" under the FDCPA, as has occurred in this case. Consequently, Defendant JLO and Defendant LWJ are entitled to "attorney's fees reasonable in relation to the work expended and costs."

WHEREFORE, Defendant JLO and Defendant LWJ again request that this honorable Court grant their Motion for Summary Judgment.

Respectfully submitted this 4TH day of May, 2022.

JOHNSON LEGAL OFFICES, L.L.C.

By:_____
Larry W. Johnson
Georgia Bar No. 394896
Attorney for Defendant JLO and
  Defendant LWJ

138 Hammond Drive, Suite B
Atlanta, GA 30328
Telephone: (404) 486-2361
Facsimile: (404) 393-0826
Email: LJohnson@SuretyBondsAgency.com
CordtzJLOSJMotion02Reply

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing DEFENDANT JLO'S AND DEFENDANT LWJ'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT was served upon all parties electronically via the Court's system, plus the following who was also served by mailing same by United States First Class Mail in a properly addressed envelope with adequate postage affixed thereon to ensure delivery, addressed as follows:

> Shimshon Wexler, Esq.
> S WEXLER, L.L.C.
> 2244 Henderson Mill Road
> Suite 108
> Decatur, GA 30345
> Attorney for Plaintiff

This 4TH day of May, 2022.

_____
Larry W. Johnson
Attorney for Defendant JLO and
Defendant LWJ

JOHNSON LEGAL OFFICES, L.L.C.
138 Hammond Drive, Suite B
Atlanta, GA 30328
Telephone: (404) 486-2361
Facsimile: (404) 393-0826
Email: LJohnson@SuretyBondsAgency.com